1   Guy Ruttenberg, Bar No. 207937
    guy@ruttenbergiplaw.com
2   Bassil Madanat, Bar No. 285280
    bassil@ruttenbergiplaw.com
3   RUTTENBERG IP LAW, A PROFESSIONAL CORPORATION
    1801 Century Park East, Suite 1920
4   Los Angeles, CA 90067
    Telephone: (310) 627-2270
5   Facsimile: (310) 627-2260
    *Attorneys for Plaintiffs*

6

7

8               **UNITED STATES DISTRICT COURT**

9               **CENTRAL DISTRICT OF CALIFORNIA**

10

11  j2 CLOUD SERVICES, INC., AND          CASE NO.: 13-cv-05353-DDP (AJWx)
    ADVANCED MESSAGING
12  TECHNOLOGIES, INC.                    **FIRST AMENDED AND
                                          SUPPLEMENTAL COMPLAINT
13               Plaintiffs,              FOR: (1) BREACH OF
                                          CONTRACT; (2) BREACH OF
14          v.                            IMPLIED COVENANT OF GOOD
                                          FAITH & FAIR DEALING; (3)
15  FAX87, FARJAD FANI, MATT              PROMISSORY FRAUD; (4)
    JOHNSON FINANCE, INC., ELNAZ          INFRINGEMENT OF U.S. PATENT
16  FANI, ONE VOIX, MIRALUNA              NO. 6,208,638; (5) INFRINGEMENT
    CABERTE YARDAN, STEVEN                OF U.S. PATENT NO. 8,310,699; (6)
17  THONG WAY SEN, ROBERT                 INFRINGEMENT OF U.S. PATENT
    BEAULIEU, CHARLES                     NO. 8,675,220; (7) TRADEMARK
18  MONTGOMERY, ONLINEFAXES,              INFRINGEMENT; (8) UNFAIR
    SOLIDFAX, FAXVISION,                  COMPETITION UNDER LANHAM
19  EFAX4LESS, MYPHONEFAX,                ACT; (9) UNFAIR COMPETITION
    RESELLFAX, AND DOES 1-10              UNDER CAL. BUS. AND PROF.
20                                        CODE § 17200; AND (10) PETITION
                 Defendants.             TO COLLECT CLAIM FROM
21                                        INACTIVE CORPORATION**

22

23                                        JURY TRIAL DEMANDED

24

25

26

27

28
_____
            FIRST AMENDED AND SUPPLEMENTAL COMPLAINT

## COMPLAINT

Plaintiffs j2 Cloud Services, Inc. (formerly known as j2 Global, Inc. and, before that, j2 Global Communications, Inc.) ("j2") and Advanced Messaging Technologies, Inc. ("AMT") (together, "Plaintiffs") by and through their undersigned attorneys, complain as follows:

### Nature of Action

1.     This is an action for breach of a Settlement Agreement and License Agreement, breach of the implied covenant of good faith and fair dealing, promissory fraud and conspiracy to commit fraud, patent infringement, trademark infringement, and federal and state unfair competition, and to compel a purported inactive corporation to collect any amounts owing to it by directors or shareholders for purposes of applying the collections toward payment of the Plaintiffs' claims.

### Parties

2.     Plaintiff j2 Cloud Services, Inc. is a corporation organized under the laws of the State of Delaware with its principal place of business at 6922 Hollywood Boulevard, Suite 500, Los Angeles, California 90028.  j2 and its affiliates provide messaging and communications services to millions of customers.

3.     Plaintiff Advanced Messaging Technologies, Inc. is a Delaware corporation with its principal place of business at 6922 Hollywood Boulevard, Suite 500, Los Angeles, California 90028, and is a wholly owned subsidiary of j2.  The term "j2" shall be used herein to mean either j2 Cloud Services, Inc. or j2 Cloud Services, Inc. and AMT collectively, as the context warrants.

4.     Defendant Matt Johnson Finance, Inc. ("MJF") is a corporation that was organized under the laws of the State of Washington.  The principal place of business of MJF is or was 155 108th Avenue NE, Suite 703, Bellevue, Washington 98004.  During the term of the contracts at issue in this case, MJF was doing business as Fax87 and/or Fax87.com.  On information and belief, MJF is and/or was the alter ego of Defendants Fax87 and Farjad Fani.  Since the filing of this lawsuit, the corporation was involuntarily

dissolved by the Washington Secretary of State for failure to file an annual list of officers/license renewal.

5.     Defendant Farjad Fani is and/or was the sole officer of Matt Johnson Finance, Inc. and purports to be the founder of Fax87.  Plaintiffs are informed and believe, and on that basis allege, that individual Farjad Fani, also known as Matt Farjad Fani or Matt Johnson, is an alter ego of Defendants MJF and Fax87.  At the outset of this litigation, Mr. Fani resided in the state of Washington.  During the pendency of this case, Mr. Fani reported that he left the United States.  On information and belief, Mr. Fani has spent much of the past two years in Malaysia, India and/or Indonesia.  In late 2015 or early 2016, Mr. Fani returned to the United States.  On information and belief, Mr. Fani is currently once again a resident of the state of Washington.

6.     On information and belief, Defendant Fax87 is an unincorporated business association with its principal places of business in the state of Washington and the Republic of the Philippines.  Defendant Fax87 is also an alias and alter ego of Defendants Farjad Fani and MJF.  Defendant Fax87 provides Internet facsimile messaging services to customers across the United States, including through the websites fax87.com and enterprise.fax87.com.  Defendant Fax87 solicits and has customers in this District and offers telephone numbers in this District for use by its customers.  Defendant Fax87 is sometimes known as Fax87.com.

7.     On information and belief, Defendant OnlineFaxes is an unincorporated business association with its principal places of business in the state of Washington, the state of Colorado and/or the Republic of the Philippines.  On information and belief, Defendant OnlineFaxes is an affiliate and/or alter ego of Defendant Fax87.  Defendant OnlineFaxes provides Internet facsimile messaging services to customers across the United States, including through the website onlinefaxes.com.  Defendant OnlineFaxes solicits and has customers in this District and offers telephone numbers in this District for use by its customers.  Defendant OnlineFaxes is sometimes known as OnlineFaxes.com.

8.     On information and belief, Defendant SolidFax is an unincorporated business association with its principal places of business in the state of Washington, the state of Colorado and/or the Republic of the Philippines.   On information and belief, Defendant SolidFax is an affiliate and/or alter ego of Defendants Fax87 and OnlineFaxes. Defendant SolidFax provides Internet facsimile messaging services to customers across the United States, including through the website solidfax.com.   Defendant SolidFax solicits and has customers in this District and offers telephone numbers in this District for use by its customers.   Defendant SolidFax is sometimes known as SolidFax.com.

9.     On information and belief, Defendant FaxVision is an unincorporated business association with its principal places of business in the state of Washington, the state of Colorado and/or the Republic of the Philippines.   On information and belief, Defendant FaxVision is an affiliate and/or alter ego of Defendants Fax87, OnlineFaxes and SolidFax.   Defendant FaxVision provides Internet facsimile messaging services to customers across the United States, including through the websites faxvision.com and efax4less.com.   Defendant FaxVision solicits and has customers in this District and offers telephone numbers in this District for use by its customers.   Defendant FaxVision is sometimes known as FaxVision.com.

10.     On information and belief, Defendant eFax4less is an unincorporated business association with its principal places of business in the state of Texas, the state of Washington, the state of Colorado and/or the Republic of the Philippines.   On information and belief, Defendant eFax4less is an affiliate and/or alter ego of Defendants Fax87, OnlineFaxes, SolidFax and FaxVision.   Defendant eFax4less provides Internet facsimile messaging services to customers across the United States, including through the websites faxvision.com and efax4less.com.   The efax4less.com website appears to mirror the faxvision.com website.   Defendant eFax4less solicits and has customers in this District and offers telephone numbers in this District for use by its customers.   Defendant eFax4less is sometimes known as eFax4less.com.

---

FIRST AMENDED AND SUPPLEMENTAL COMPLAINT

3

11.   On information and belief, Defendant MyPhoneFax is an unincorporated business association with its principal places of business in the state of Washington, the state of Colorado and/or the Republic of the Philippines.  On information and belief, Defendant MyPhoneFax is an affiliate and/or alter ego of Defendants Fax87, OnlineFaxes, SolidFax, FaxVision and eFax4less.  Defendant MyPhoneFax previously operated the website myphonefax.com directing and soliciting potential customers of Internet facsimile messaging services for the websites of Defendants Fax87, OnlineFaxes, SolidFax and FaxVision.  On information and belief, Defendant MyPhoneFax is also involved in operating and directing Defendants Fax87, OnlineFaxes, SolidFax and FaxVision, including for the solicitation of customers in this District.  Defendant MyPhoneFax is sometimes known as MyPhoneFax.com.

12.   On information and belief, Defendant ResellFax is an unincorporated business association with its principal places of business in the state of Washington, the state of Colorado and/or the Republic of the Philippines.  On information and belief, Defendant ResellFax is an affiliate and/or alter ego of Defendants Fax87, OnlineFaxes, SolidFax, FaxVision, eFax4less and MyPhoneFax.  Defendant ResellFax enables third-party resellers to solicit and sell the Internet facsimile messaging services of Defendants Fax87, OnlineFaxes, SolidFax and FaxVision, to customers across the United States, including through the website resellfax.com.  Defendant ResellFax solicits and has customers in this District and offers telephone numbers in this District for use by the resellers' customers.  Defendant ResellFax is sometimes known as ResellFax.com.

13.   On information and belief, Defendant Elnaz Fani is a resident of Kirkland, Washington.  On information and belief, Ms. Fani is the sister of Defendant Farjad Fani.  On information and belief, Ms. Elnaz Fani has been involved with marketing and operating Defendant Fax87 and its alter egos since 2011.

14.   On information and belief, Defendant One Voix is a Philippines company with its principal place of business in Ayala Alabang, Muntinlupa, Metro Manila, Republic of the Philippines.  On information and belief, One Voix provides material

support and assistance for operating the Fax87, OnlineFaxes, SolidFax, FaxVision, eFax4less, MyPhoneFax and ResellFax services.  On information and belief, Defendant One Voix is an affiliate or alter ego of One Voix Job Referral Consultancy Services.

15.    Defendant Miraluna (Mira) Caberte Yardan ("Ms. Yardan") is an individual associated with or affiliated with Defendants Fax87, OnlineFaxes, SolidFax, FaxVision, eFax4less, MyPhoneFax, ResellFax, One Voix and One Voix Job Referral Consultancy Services.  On information and belief, Ms. Yardan also uses aliases such as Mia Ardan and Mira Noryi to mask her identity.  On information and belief, Ms. Yardan currently resides in Santa Rosa, Laguna, in the Republic of the Philippines.  On information and belief, Ms. Yardan is also a close friend and associate of Defendant Mr. Farjad Fani.

16.    Defendant Steven Thong Way Sen ("Mr. Thong") is an individual associated with or affiliated with Defendants Fax87, OnlineFaxes, SolidFax, FaxVision, eFax4less, MyPhoneFax and ResellFax.  On information and belief, Mr. Thong also uses aliases such as Steven Arasu to mask his identity.  On information and belief, Mr. Thong currently resides in or near Englewood, Colorado.

17.    Defendant Charles Montgomery ("Mr. Montgomery") is an individual associated with or affiliated with Defendants Fax87, OnlineFaxes, SolidFax, FaxVision, eFax4less, MyPhoneFax and ResellFax.  On information and belief, Mr. Montgomery also uses aliases such as Charles Newson and Brian Mitchel to mask his identity.  On information and belief, Mr. Montgomery currently resides in or near Mobile, Alabama.

18.    Defendant Robert Beaulieu ("Mr. Beaulieu") is an individual associated with or affiliated with Defendants Fax87, OnlineFaxes, SolidFax, FaxVision, eFax4less, MyPhoneFax and ResellFax.  Mr. Beaulieu currently resides in Cedar Park, Texas.

19.    The true names and capacities, whether individual, corporate or otherwise, of defendants DOES 1-10 are unknown to Plaintiffs, who therefore sue such defendants by fictitious names.  Plaintiffs may seek leave to amend this First Amended and Supplemental Complaint to allege the true names, identities and capacities of such defendants if and when they have been ascertained.  On information and belief, these

defendants are responsible in some manner for the acts and events alleged herein, including supporting the operations of the alleged infringing Internet fax services in this District, facilitating and soliciting sales of infringing Internet fax products and/or services in this District, offering associated telephone numbers in this District for use by their customers, and facilitating the concealment of the Defendants' identities and whereabouts for the purpose of helping them evade liability.

## Jurisdiction and Venue

20.    This Court has subject matter jurisdiction for this action pursuant to 28 U.S.C. §§ 1331, 1332 and 1338, as well as 15 U.S.C. §§ 1114 and 1125.  The amount in controversy exceeds $75,000.00.  This Court also has supplemental jurisdiction over the related state-law claims under 28 U.S.C. § 1367.

21.    This Court has personal jurisdiction over Defendants Fax87, Farjad Fani and MJF because, among other things, each of them has subjected itself or himself to personal jurisdiction in this District as part of a 2012 Settlement Agreement.  Defendants Fax87 and MJF also expressly consented to personal jurisdiction in this District as part of a 2012 License Agreement, and Defendant Fani is an alter ego of Fax87 and MJF.  Further, Defendants Fax87, Farjad Fani and MJF all negotiated and executed these agreements in connection with prior litigation pending in this District, the Agreements were intended to be performed at least in part in California, and the agreements are governed by California law.

22.    The Court also has personal jurisdiction over Defendants OnlineFaxes, SolidFax, FaxVision, eFax4less, MyPhoneFax and ResellFax because each is also an alter ego of Defendants Fax87 and MJF.

23.    The Court also has personal jurisdiction over each defendant because each defendant transacts business by facilitating sales of the infringing Internet fax services to California residents in the State of California.  Further, each defendant has willfully infringed, either directly or indirectly, the patents-in-suit owned and/or exclusively

---

licensed by Plaintiffs, both of which reside in the State of California, thereby intentionally directing harm to California residents.

24.     Venue is proper under 28 U.S.C. §§ 1391(b) and (c) and 1400(b) because, among other things, Defendants Fax87, Farjad Fani and MJF each consented to venue in this District as part of the 2012 Settlement Agreement, Defendants Fax87 and MJF consented to venue jurisdiction in this District as part of the 2012 License Agreement, and Defendant Fani is an alter ego of Defendants Fax87 and MJF.   Defendants OnlineFaxes, SolidFax, FaxVision, eFax4less, MyPhoneFax, and ResellFax are also each an alter ego of Defendants Fax87 and MJF.  Further, each defendant transacts business within this District, facilitates offers for sale of infringing products and/or services in this District, and/or facilitates infringing uses of the accused products and/or services in this District.

## Factual Background

### The Patents at Issue

25.     On March 27, 2001, the United States Patent and Trademark Office (the "PTO") duly and legally issued U.S. Patent No. 6,208,638, entitled "Method and Apparatus for Transmission and Retrieval of Facsimile and Audio Messages over a Circuit or Packet Switched Network," to named inventors Jack Rieley and Jaye Muller. A true and correct copy of U.S. Patent No. 6,208,638 is attached hereto as Exhibit 1.

26.     On December 9, 2008, the PTO issued a Reexamination Certificate for U.S. Patent No. 6,208,638 (as reexamined, the "'638 Patent"), which confirmed the patentability of claims 1 and 13, as amended, and claims 2-12 and 14-22, dependent on amended claims.  The Reexamination Certificate also added new claims 23-40.  A true and correct copy of the Reexamination Certificate for the '638 Patent is attached hereto as Exhibit 2.

27.     The '638 Patent was initially assigned to j2.  This was also true when Plaintiffs filed the original Complaint in this case.

28.     In July 2014, j2 assigned the '638 Patent to AMT.  Under the assignment agreement, j2 retained an exclusive license to the '638 Patent, which includes the right to sue for past, present and future claims of infringement, and seek and collect past, present and future damages.

29.     On February 26, 2002, the PTO duly and legally issued U.S. Patent No. 6,350,066, entitled "Systems and Methods for Storing, Delivering, and Managing Messages," to Charles R. Bobo, II.  A true and correct copy of U.S. Patent No. 6,350,066 is attached hereto as Exhibit 3.

30.     On April 15, 2009, the PTO issued a Reexamination Certificate for U.S. Patent No. 6.350,066 (as reexamined, the "'066 Patent"), which canceled claims 1-35 and added new claims 36-57.  A true and correct copy of the Reexamination Certificate for the '066 Patent is attached hereto as Exhibit 4.

31.     On November 13, 2012, the PTO duly and legally issued U.S. Patent No. 8,310,699 ("the'699 Patent"), entitled "System and Method for Measuring a Fax Converted into Electronic Format," to named inventors Tom Mulligan and Nicola Fawle.  A true and correct copy of the '699 Patent is attached hereto as Exhibit 5.

32.     When it issued, the '699 Patent was originally assigned to j2 Global Ireland Ltd.  On or about June 23, 2014, j2 Global Ireland Ltd. assigned the '699 Patent to AMT.  AMT is currently the owner, by assignment, of the '699 Patent.  j2 is also the implied exclusive licensee of the '699 Patent and operates as such.

33.     On March 18, 2014, the PTO duly and legally issued U.S. Patent No. 8,675,220 (the '220 Patent), entitled "Internet Fax Message Searching and Fax Content Delivery Using Keyword Detection," to named inventors Mark Edward Meyers and Matthew Curtis Mabry.  A true and correct copy of the '220 Patent is attached hereto as Exhibit 6.

34.     When it issued, the '220 Patent was assigned to AMT and remains assigned to AMT currently.   j2 is also the implied exclusive licensee of the '220 Patent and operates as such.

---

FIRST AMENDED AND SUPPLEMENTAL COMPLAINT

**The Trademarks at Issue**

35.     Since at least as early as 1989, j2 (and its predecessors-in-interest) has continuously used the trademark eFax® to market and sell its Internet fax services throughout the United States and the world.

36.     j2 has devoted substantial time, effort and resources to the development and extensive promotion of the eFax® mark and the products and services offered thereunder. As a result of j2's efforts, the public has come to recognize and rely upon the eFax® mark as an indication of the high quality associated with j2's Internet faxing services.

37.     j2 is the owner of U.S. Trademark Registration No. 3,930,343 for registration of "EFAX" on the Principal Register for "electronic transmission of facsimile communications and data; wireless facsimile mail services; facsimile transmission and retrieval services; providing on-line electronic bulletin boards for transmission of messages among users concerning facsimile responses," in international class 38 (U.S. CLS. 100, 101 and 104). A true and correct copy of the registration is attached hereto as Exhibit 7.

38.     j2 is also the owner of U.S. Trademark Registration No. 3,930,341 for registration of "E-FAX" on the Principal Register for "electronic information receipt and distribution services, electronic transmission services in the nature of a facsimile mail service, a facsimile broadcasting service, a facsimile response bulletin board, and a public facsimile network," in international class 38 (U.S. CLS. 100, 101 and 104). A true and correct copy of the registration is attached hereto as Exhibit 8.

39.     j2 is also the owner of U.S. Trademark Registration No. 4,284,294 for registration of "EFAX" on the Principal Register for "Computer software development tools and kits consisting primarily of computer software and user manuals sold as a unit therewith for use in facilitating the integration, transmission, retrieval and storage of documents, audio text and/or images," in international class 9, "Document management services, namely, document indexing for others of business records and documents" in international class 35, "Storage services for documents, audio text, images and other

electronic data" in international class 39, and "Conversion of data or documents from physical to electronic media; and data conversion of electronic information" in international class 42 (U.S. CLS. 21, 23, 26, 36 and 38).  A true and correct copy of the registration is attached as Exhibit 9.

40.    j2 is also the owner of U.S. Trademark Registration No. 1,786,350 for the mark "E-FAX" for "electronic information receipt and distribution services, electronic transmission services in the nature of a facsimile mail service, a facsimile broadcasting service, a facsimile response bulletin board and a public facsimile network," registered on the Supplemental Register since August 3, 1993.  A true and correct copy of the registration is attached as Exhibit 10.

41.    j2 is also the owner of a family of marks registered for Internet fax and related services that incorporate the mark eFax®, such as U.S. Trademark Registration Nos. 2,682,802; 2,644,821; 2,530,979; and 2,728,333 for "EFAX PLUS," "EFAX CORPORATE," "EFAX MESSENGER," and "EFAX FREE," respectively. True and correct copies of these Registrations are attached as Exhibits 11, 12, 13 and 14, respectively.  Related eFax® logo marks are also registered with the USPTO.

42.    In addition to its own advertising efforts, j2 has been the subject of many unsolicited stories in national and local publications such as Business Week, CNN Money Magazine, USAToday.com, Computerworld and the San Francisco Chronicle, highlighting the quality and popularity of eFax® Internet faxing services.

43.    Further, the PTO has designated at least "EFAX" and "E-FAX" (Registration Nos. 3,930,343 and 3,930,341, respectively) as having "acquired distinctiveness in whole."

44.    As a result of j2's long-term and widespread use of the eFax® mark in the United States via the Internet, print, radio and television advertising, and unsolicited media coverage, the eFax® trademark has reached a high degree of consumer recognition.

**Prior Litigation and Resulting**

**Settlement Agreement and License Agreement**

45.   On March 29, 2011, j2 and AMT sued Defendants Fax87, Farjad Fani and Matt Johnson Finance, Inc. in the United States District Court for the Central District of California for infringement of the '638 Patent and '066 Patent.

46.   In April 2012, in an effort to resolve the litigation, j2 and AMT entered into a Settlement Agreement with Mr. Fani, MJF and Fax87 (the "Settlement Agreement"). As part of the Settlement Agreement, Mr. Fani characterized MFJ and Fax87 as "Matt Johnson Finance, Inc. d/b/a Fax87.com."   Fani was a signatory to the Settlement Agreement both in his individual capacity and as CEO of MJF d/b/a Fax87.com.  A true and correct copy of the Settlement Agreement is attached hereto as Exhibit 15.

47.   As part of the settlement, j2 and AMT also entered into a patent license agreement with MJF d/b/a Fax87.com, which became effective on April 9, 2012 (the "License Agreement").   A true and correct copy of the License Agreement is attached hereto as Exhibit 16.

48.   The Settlement Agreement specifically incorporates and includes the terms of the License Agreement.  Section 3.2 states: "This Agreement, including the attached [License Agreement] which is incorporated by reference herein, constitute[s] the entire agreement between the Parties . . . ."

49.   Pursuant to the License Agreement, MJF d/b/a Fax87.com received a worldwide, non-exclusive, non-divisible license to Plaintiffs' patents, including the '638 and '066 Patents, in exchange for a lump sum payment and a running royalty, to be paid quarterly.

50.   Under Section 3.1 of the License Agreement, the running royalty is equal to the greater of the "Applicable Fixed Amount . . . per month per Fax Customer" or 10% of Licensee's Revenues from each Fax Customer, based upon a formula described in the License Agreement.

---

51.     According to Section 1 of the License Agreement, "Fax Products" include "all products and services offered by or through Licensee that enable a user to (a) receive or access documents via email, a Web browser or otherwise through the use of the Internet or other packet-switched data network, which documents are, at some point in their transmission, in a format capable of being received by a fax machine over a public switched telephone network, and (b) send documents to a recipient via email, a Web browser or otherwise through the use of the Internet or other packet-switched data network, which documents are, at some point in their transmission, in a format capable of being received by a fax machine over a public switched telephone network."

52.     Section 3.3 of the License Agreement also requires MJF d/b/a/ Fax87.com to provide j2 with quarterly royalty reports, which must include "(i) the number of Fax Customers broken down by each Licensed Product as of the first day of each month; (ii) the number of new Fax Customers of each Licensed Product added during each month; and (iii) Revenues for each month."

53.     Further, under Section 3.4 of the License Agreement, MJF d/b/a/ Fax87.com was also required to "keep full, clear and accurate records . . . reflecting the number of Fax Customers of each Licensed Product and Revenues for a period of at least three years following any royalty report and payment."

54.     Under Section 2 of the License Agreement, no sub-license may be granted for use to offer a service that is sold or otherwise made available to third parties.  Rather, "each sub-license shall be strictly limited to the Personal Use or re-sale for Personal Use of Licensed Products."

55.     Under Section 7.4 of the License Agreement, MJF was obligated to "permanently mark the user manuals and materials associated with the Licensed Products, including but not limited to its Websites, in the manner required by 35 U.S.C. § 287, with the numbers of the Licensed Patents."

56.     Section 8.1 of the License Agreement provides that MJF d/b/a/ Fax87.com may not assign or transfer any of its rights or obligations granted under the License

Agreement, except in accordance with the "change of control" provisions of Section 8.2. Further, Section 8.4 requires MJF d/b/a/ Fax87.com to notify j2 of any "change of control event" no later than fourteen days after the effective date of any such event.  In the event of a change in control, the License Agreement contemplated that the terms would continue to apply to the Internet fax business and websites affiliated with MJF d/b/a Fax87.com.

57.    Section 10.2 of the License Agreement states that "[i]n the event of any litigation between Licensors and Licensee arising out of or relating to this Agreement, the prevailing party shall be entitled to an award of reasonable attorneys' fees and expenses." A similar provision is also included in the Settlement Agreement.

58.    Under Section 10.8 of the License Agreement, the parties were also obligated to "do any and all acts and things reasonably necessary in connection with the performance of their obligations . . . to carry out the intent of the parties."

59.    Under Section 9 of the License Agreement, MJF d/b/a Fax87.com also agreed that they would "not directly or indirectly use, register or bid on the following j2 Global trademarks, or any variant or extension thereof, whether individually or together with other trademarked or nontrademarked terms of j2 Global, as a trademark or key word on any Internet or other search engine: efax, e-fax . . . ."  The parties further acknowledged "that j2 Global owns all rights in the marks E-FAX and EFAX, and that such marks are not generic and identify j2 Global as the source of the goods and services recited in Trademark Number 3930343."

60.    The parties to the 2011 litigation stipulated to a dismissal of the case on April 20, 2012, following execution of both the Settlement Agreement and License Agreement.

61.    On or about July 31, 2012, Defendant Farjad Fani—acting on behalf of himself and MJF d/b/a Fax87.com—sent j2 a royalty report for 2012Q2.  For May 2012, Mr. Fani reported 19,311 Fax Customers and $130,922.90 in Aggregate Revenues.  For June 2012, Mr. Fani reported 19,311 Fax Customers and $134,783.08 in Aggregate

Revenues.  Using the Applicable Fixed Amount of $0.75 per Fax Customer per month, Mr. Fani reported "Total Royalties Due and Payment" in the amount of $28,966.50 for 2012Q2.

62.     On or about November 1, 2012, Defendant Farjad Fani—acting on behalf of himself and MJF d/b/a Fax87.com—sent j2 a royalty report for 2012Q3.  For July 2012, Mr. Fani reported 17,176 Fax Customers and $103,074.09 in Aggregate Revenues.  For August 2012, Mr. Fani reported 17,176 Fax Customers and $90,597.09 in Aggregate Revenues.   For September 2012, Mr. Fani reported 17,176 Fax Customers and $92,017.23 in Aggregate Revenues.  Using the Applicable Fixed Amount of $0.75 per Fax Customer per month, Mr. Fani reported "Total Royalties Due and Payment" in the amount of $38,646 for 2012Q3.

63.     On or about January 29, 2013, Defendant Farjad Fani—acting on behalf of himself and MJF d/b/a Fax87.com—sent j2 a royalty report for 2012Q4.  For October 2012, Mr. Fani reported 17,998 Fax Customers and $111,248.21 in Aggregate Revenues. For November 2012, Mr. Fani reported 17,998 Fax Customers and $141,988.89 in Aggregate Revenues.  For December 2012, Mr. Fani reported 17,998 Fax Customers and $138,851.12 in Aggregate Revenues.  Using the Applicable Fixed Amount of $0.75 per Fax Customer per month, Mr. Fani reported "Total Royalties Due and Payment" in the amount of $40,495.50 for 2012Q4.

**Defendants' Breaches of the**

**Settlement Agreement and License Agreement**

64.     The fax87.com website remains in operation and continues to offer Internet fax services.

65.     Despite courtesy reminders and notices from j2, Defendants Mr. Fani, MJF and Fax87 failed to make any royalty payments after January 2013, for the 4th quarter of 2012.

66.     On April 4, 2013, Teruko Furuya from j2 sent a notification email to mattjohnson@farfani.com (the email used for communications between MJF and j2),

FIRST AMENDED AND SUPPLEMENTAL COMPLAINT

14

reminding Mr. Fani, MJF and Fax87 that the 2013 Q1 Royalty Payment was due on April 30, 2013.

67.    On May 3, 2013, not having received any payment or reports from Mr. Fani, MJF or Fax87, Ms. Furuya further notified them that the payment was now late.

68.    On May 7, 2013, Mr. Fani sent a letter to j2, contending that Matt Johnson Finance, Inc. "no longer engages in the business of offering electronic facsimile services and no longer does business as 'Fax87.com.'"  Obviously, however, the fax87.com website continued to (and continues) to offer the same Internet fax services.

69.    Accordingly, on May 21, 2013, j2 contacted Mr. Fani (and MJF / Fax87) to again request the overdue royalty report and payment.

70.    In an emailed response sent the same day, Mr. Fani (and MJF / Fax87) claimed that they stopped making royalty payments because they allegedly "sold Fax87.com on December 31, 2012 and have nothing to do with Fax87.com since then." Mr. Fani (and MJF / Fax87), however, refused to disclose the identity of the entity or individual to whom it purportedly sold the business.  Mr. Fani (and MJF / Fax87) also refused to provide any information or documentation regarding the purported sale.

71.    In a declaration executed in December 2013, Mr. Fani further averred that MJF "sold its assets related to the electronic fax services business, namely, customer accounts and the Fax87.com domain name and website to a third party company." Despite repeated requests, Mr. Fani, MJF and/or Fax87 have still not identified this "third party company" to j2.  Mr. Fani, MJF and Fax87 also did not provide notice to j2 of the purported sale when it allegedly occurred.

72.    Despite further reminders and notices from j2, Mr. Fani, MJF and Fax87 have not made any royalty payments or submitted any royalty reports for 2013, 2014 or 2015.  They also failed to make required late-payment fees for the same time periods, in breach of Sections 3.1, 3.2, 3.3 and 3.5 of the License Agreement.

FIRST AMENDED AND SUPPLEMENTAL COMPLAINT

15

73.     To the extent Mr. Fani (and MJF/ Fax87) sold the Fax87 business, they also breached Section 8.4 of the License Agreement by failing to notify j2 of the event within 14 days and failing to provide information regarding the acquirer.

74.     No successor or assignee of the Fax87 business has made royalty payments or late fees or submitted royalty reports required under the License Agreement.

75.     Mr. Fani, MJF and Fax87 (and any purported successor/assignee) have also failed to permanently mark their website, user manuals and associated materials with the corresponding licensed patent numbers, in breach of Section 7.4 of the License Agreement.

76.     On or around September 17, 2015, Plaintiffs requested an audit under Section 10.6 of the License Agreement.   Plaintiffs sent the request to the address specified in Section 10.6 of the License Agreement.  Plaintiffs also sent the request to Mr. Fani's prior counsel, Erick C. Howard, and to an alternate address associated with Mr. Fani.  A true and correct copy of the request for audit is attached hereto as Exhibit 17.

77.     As of the date of this filing, Mr. Fani, MJF and Fax87 have not responded or even acknowledged Plaintiffs' request for audit, in breach of Section 3.4 of the License Agreement.  Their purported successors or assignees have also not responded.

78.     Pursuant to Section 3.2 of the Settlement Agreement, Mr. Fani, MFJ and Fax87's breaches of the License Agreement constitute a breach of the entire agreement, which includes the Settlement Agreement.

79.     On or around September 17, 2015, Plaintiffs also sent another notice of default to Mr. Fani, MFJ and Fax87 to the address specified in Section 10.6 of the License Agreement.  Plaintiffs also sent the notice to Mr. Fani's prior counsel, Erick C. Howard, and to an alternate address associated with Mr. Fani.  A true and correct copy of the notice of default is attached hereto as Exhibit 18.

80.     As of the date of this filing, Mr. Fani, MJF and Fax87 have not cured any of the breaches raised by j2, let alone acknowledged the notice of default.  Their purported successors or assignees have also not cured or acknowledged these breaches.

FIRST AMENDED AND SUPPLEMENTAL COMPLAINT

**Defendants' Alter Ego Relationships**

81. Defendants Mr. Fani, MJF and Fax87 are alter egos of one another. On information and belief, Defendants OnlineFaxes, SolidFax, FaxVision, eFax4less, MyPhoneFax, ResellFax and possibly other similar electronic fax companies are also alter egos and/or affiliates of one another, as well as of Mr. Fani, MJF and Fax87.

82. There has been a unity of interest and ownership between Mr. Fani, MJF and Fax87, such that separate personalities of the corporation and the individual do not exist.

83. On information and belief, Mr. Fani has had full control over MJF and Fax87 at all relevant time periods.

84. On information and belief, Mr. Fani has used MJF and Fax87 as mere shells, instrumentalities and conduits for the business of Mr. Fani himself and to improperly shield him from liability.

85. The name "Matt Johnson" is itself an alias for Defendant Farjad Fani. Indeed, his Facebook page (which is publicly available at www.facebook.com/farjadfani) identifies Mr. Fani as "Matt Johnson (Farjad Fani)."

86. Defendant Farjad Fani has re-shuffled the operations of Fax87 several times over the years. He has operated Fax87 outside the corporate form of MJF, and he continued to operate Fax87 after MJF became inactive under Washington law.

87. According to documents filed with this Court in the 2011 litigation, Mr. Fani contends that he initially offered Internet fax services through a corporation called Sevo Technologies, Inc. ("Sevo"), which (according to Mr. Fani) was operating under the d/b/a "Listing Moves." Defendant Farjad Fani incorporated Sevo as a Nevada corporation on or about May 13, 2008. Defendant Farjad Fani was the President, Treasurer and Secretary of Sevo. On information and belief, the Nevada Secretary of State revoked Sevo's corporate charter in 2009 for failure to file an annual statement and comply with corporate formalities.

88. According to Defendant Farjad Fani, he transferred the Internet fax services business to Fax87 in or about August 2010. On information and belief, in 2010 and

FIRST AMENDED AND SUPPLEMENTAL COMPLAINT

2011, Mr. Fani operated the Fax87 business as a d/b/a of himself, without any corporate form.

89.     On information and belief, Mr. Fani started using Fax87.com as a d/b/a affiliated with MJF sometime in 2011. The License Agreement and Settlement Agreement specifically characterize Fax87.com as a "d/b/a" of Defendant MJF.

90.     Mr. Fani, MJF and Fax87 did not maintain any practical or legal separation between themselves.

91.     MFJ and/or Fax87 did not maintain proper corporate records.

92.     MFJ and/or Fax87 did not file annual reports with the Washington Secretary of State or any other government agency.

93.     MFJ and/or Fax87 have not paid state or federal taxes.

94.     MFJ and/or Fax87 did not issue any corporate stock.

95.     Aside from Mr. Fani, MFJ and/or Fax87 had no directors or board members. Further, MJF and/or Fax87 had no employees.  MFJ and/or Fax87 also did not conduct meetings of shareholders, officers and/or directors.

96.     MFJ and/or Fax87 did not maintain audited financial statements, profit and loss statements, balance sheets, or accounting procedures.

97.     On information and belief, Mr. Fani used office space leased for MFJ and/or Fax87 as his own personal address for matters unrelated to the business, and vice versa.

98.     On information and belief, Mr. Fani co-mingled his personal finances with the finances of MJF and/or Fax87.

99.     Mr. Fani used the corporate form to violate and then evade his legal obligations.

100.    Within less than one year of executing the Settlement Agreement and License Agreement, at the control and direction of Mr. Fani, Defendants MJF and Fax87 ceased performing their obligations.

101.    In 2014—while this litigation was pending—Mr. Fani allowed MFJ to become an inactive corporation.  Specifically, the corporation was involuntarily dissolved

by the Washington Secretary of State for failure to file an annual list of officers/license renewal.

102.   Even so, Mr. Fani continued and continues to operate the Fax87 business and fax87.com website.  The Fax87 business and fax87.com website continue to operate today, without any corporate structure.

103.   A recent picture posted to the Facebook account of "Matt Johnson (Farjad Fani)" on December 29, 2015 shows Defendant Farjad Fani dining with representatives of FaxCore, Inc. ("FaxCore"), a company providing Internet fax services.



On information and belief, the individuals pictured are (from left to right) Defendant Farjad Fani, Mr. Daniel Thong (V.P. of Sales & Marketing, Asia Pacific, at Faxcore), Defendant Steven Thong and two additional individuals wearing polo-style shirts with a FaxCore insignia.

104. To avoid the reporting and payment obligations under the License Agreement, Mr. Fani fled the country once this litigation was filed. Mr. Fani has moved from country to country over the past two and a half years for the purpose of evading service and avoiding liability. Mr. Fani has refused to provide information required under the License Agreement.

105. To evade the payment and reporting obligations under the License Agreement, Mr. Fani, in collaboration with others, also began offering the Fax87 services through other websites, including onlinesfaxes.com, solidfax.com, faxvision.com, efax4less.com, resellfax.com and others.

106. During this time period, Mr. Fani has continued to amass extensive wealth through the operation of the Fax87 business and the alter ego businesses, including Onlinefaxes, Solidfax, FaxVision, eFax4less, ResellFax and others. Using that ill-gotten wealth, Mr. Fani stayed in luxury hotels in Asia while evading service in the United States. Recently, he returned to the United States, and he acquired a luxury automobile (a Maserati) in Kirkland, Washington.

107. If MJF and/or Fax87's acts are treated as separate from Mr. Fani's, an inequitable result would follow.

**Other Defendants Affiliated with Fax87's Operations**

108. The wrongful conduct alleged herein has been aided and abetted by other individuals and entities operating in collaboration with Defendants Mr. Fani, MJF and Fax87.

109. Defendant Mira Yardan is a principal with Defendant One Voix.

110. One Voix provides services for operating and supporting the fax87.com, onlineFaxes.com, solidfax.com, faxvision.com, efax4less.com and resellfax.com websites and business operations. Among other things, One Voix provides technical support for customers of Fax87, OnlineFaxes, SolidFax, FaxVision, eFax4less and ResellFax services in the United States—including in this District. On information and belief, the support telephone numbers available on the websites Fax87.com, OnlineFaxes.com,

FIRST AMENDED AND SUPPLEMENTAL COMPLAINT

SolidFax.com, Faxvision.com, eFax4less.com and ResellFax.com are all directed to the same group of support staff working for Defendants OneVoix and Ms. Yardan in the Philippines.

111.   Fax87.com and the other websites noted above make use of the same or similar language and—in some instances—nearly identical testimonials, which appear to be falsified.

112.   For example, the fax87.com website includes the following testimonial from an individual named "Sara K.": "I'm simply at awe at the value that I have received from Fax87. Truely an unbelievable online fax service." (Exhibit 19).

113.   An October 2015 cached version of the onlinefaxes.com website includes the following testimonial from an individual named Matthew Miller: "I'm simply at awe at the value that I have received from OnlineFaxes. Truly an unbelievable online fax service." (Exhibit 20).

114.   The fax87.com website also includes a different testimonial by an individual coincidentally named "Matthew Miller." (Exhibit 19).

115.   Up through July 2015, Ms. Yardan was identified as the Chief Operating Office (COO) on the onlinefaxes.com website.  On or about July 25, 2015, the name "Mira Yardan" was deleted as the COO.  On the same day, the name "Mia Ardan" was added to the Onlinefaxes.com website as the COO.  Later that day, the name "Mia Ardan" was removed and, instead, the name "Mira Noryi" was added as the name of the COO.

116.   According to an October 10, 2015 cached version of the onlinefaxes.com website, Ms. Yardan a/k/a Ms. Mira Noryi's role was described as follows:

**Chief Operating Officer**

Mira Noryi serves as the Chief Operating Officer of OnlineFaxes and is responsible for the day-to-day leadership and general management of the company. In this role, Mrs. Noryi has helped establish OnlineFaxes as a respected, award-

winning fax provider, both nationally and worldwide. Under her management, OnlineFaxes consistently achieves year-over-year growth, expanding its customer base by 100 percent or more each year.

Prior to being COO of OnlineFaxes, Mrs. Noryi served as Executive Customer Service Manager and spearheaded International expansion, where she helped OnlineFaxes position itself as the #1 online fax provider growing globally for the past seven years. Mrs. Noryi's responsibilities and influence extended throughout all areas of the organization including strategic planning and execution, corporate management, product development, technology deployment, and customer and network operations. OnlineFaxes has been well recognized under Mrs. Noryi's leadership, receiving notable awards such as "Fax Product of the Year" and the "Enterpriser Award for World Class Talent" from the Eastern Technology Council in 2010.

Mrs. Noryi was recognized in 2012 by the New World Business Journal as one of the top regional business leaders with its prestigious "Cloud IT Leadership" award. She also resides on the boards for various organizations, schools, non-profits, and agencies. Mrs. Noryi currently participates in various Executive Leadership and Management programs.

(Exhibit 21).

117.    That information has since been removed from the website.  Instead, the website describes Ms. Yardan a/k/a Ms. Noryi as follows:

Under the guiding hand of Mira Noryi, Chief Operating Officer, Onlinefaxes.com has grown its customer base consistently by more than 100 percent with each passing year. . . .  Since its inception, Onlinefaxes.com has regularly been recognized as the "Fax Product of the Year" and Mira Noryi herself has been recognized with the coveted "Enterprise Award for World Class Talent" from the Eastern Technology Council.

(The OnlineFaxes.com Story, www.onlinefaxes.com/About (last visited March 17, 2016).)

118.    The current onlinefaxes.com page also includes a picture of Mira Noryi:

FIRST AMENDED AND SUPPLEMENTAL COMPLAINT

22



119.   The person appears to be the same woman pictured on social media websites including, Youtube and Facebook, as Mira Yardan or Miraluna Yardan.  (Exhibits 22 and 23).   Miraluna Yardan even has a "Fax87 songs" playlist on her Youtube account. (Exhibit 24).

120.   A LinkedIn profile also identifies a "Mira Yardan" as "Technical Support Manager/Trainer at Tekram Technology Incorporated" in the "Greater Seattle Area." (Exhibit 25).  This is the same region where Defendants Mr. Fani, MJF and Fax87 were located at the outset of this litigation.  This is also the same region where Defendant Ms. Elnaz Fani still resides.

121.   Further, a LinkedIn profile for "Matt Johnson" indicates he is the "owner" of Tekram Technology.  As explained above, Matt Johnson is an alias for Defendant Farjad Fani.   Plaintiffs   have   previously   corresponded   with   Mr.   Fani   via   an "@tekramtechnology.com" email extension.

122.   On information and belief, Tekram Technology is an alias for another Farjad Fani company, Sevo d/b/a/ Listing Moves.  The LinkedIn profile for an individual named Ni Xu indicates that he was a Software Development Engineer between January 2009 – April 2010 in the Greater Seattle Area for a company known as "Listingmoves.com (Tekram Technology)."  In pleadings filed with this Court in the 2011 litigation, Mr. Fani indicated that he operated the Fax87 business through Sevo a/k/a Listing Moves during this time period.

---

FIRST AMENDED AND SUPPLEMENTAL COMPLAINT

23

123.   Another LinkedIn profile identifies a "Miraluna Yardan" in the "Internet" industry in Englewood, Colorado from 2009 until the present.  (Exhibit 26).  This is the same city where Defendant Mr. Thong lives and works.

124.   A recent picture posted to the Facebook account of "Matt Johnson (Farjad Fani)" on December 29, 2015 shows Defendant Farjad Fani dining with Defendant Miraluna Yardan.



On information and belief, the individuals in the photograph are (from left to right) Defendant Farjad Fani, a close relative of Mr. Fani, Defendant Mira Yardan, and Ms. Yardan's husband (Vladimir Yardan).  None of the individuals are "tagged" in the Facebook picture.

125.   On information and belief, Defendant Mr. Thong also provides operational support for Fax87, OnlineFaxes, SolidFax, FaxVision, eFax4less, Myphonefax and ResellFax.

126.   Up through July 2015, Mr. Thong was identified as the Chief Technology Officer (CTO) on the onlinefaxes.com website.  On or about July 25, 2015, the name "Steven Thong" was deleted as the CTO.  On the same day, the name "Steven Arasu" was added to the onlinefaxes.com website as the CTO.

127.   According to an October 10, 2015 cached version of the onlinefaxes.com website, Mr. Thong a/k/a Mr. Steve Arasu's role was described as follows:

**Chief Technology Officer**

Steven Arasu serves as the Chief Technology Officer of OnlineFaxes and is directly responsible for innovation while ensuring overall scalability and availability. His accomplishments include the development of a fax communications software that is used by more than 5 million users worldwide.

Mr. Arasu is widely regarded as a leading expert in fax and joined the OnlineFaxes team in October of 2012. Previously, Mr. Arasu has successfully launched three start-up companies related to the fax industry with various products and services being offered.

(Exhibit 21).

128.   The name and information concerning Mr. Thong a/k/a/ Mr. Arasu has since been removed from the website, as well.

129.   A LinkedIn page for Steven Thong identifies him as CTO at MyPhoneFax, in Englewood, Colorado.  (Exhibit 27).

130.   On information and belief, Defendant Mr. Montgomery also provides operational support for Fax87, OnlineFaxes, SolidFax, FaxVision, eFax4less, Myphonefax and ResellFax.

131.   Up through July 2015, "Charles Montgomery" was identified as the Chief Marketing Officer (CMO) on the onlinefaxes.com website.  On or about July 25, 2015, the name "Charles Montgomery" was deleted as the CMO.  On the same day, the name "Charles Newsom" was added to the onlinefaxes.com website as the CMO.  On the same day, the name "Mike Mitchel" was also inserted and deleted as CMO.

132.   According to an October 10, 2015 cached version of the onlinefaxes.com website, Mr. Montgomery a/k/a Mr. Charles Newsom's role was described as follows:

**Director of Marketing**

Charles Newsom's current role as a Director of Marketing, allows him the opportunity to work hands on with SEO, PPC, Feed management, and all Digital Marketplaces. With 8 years experience in Digital Marketing and a heavy focus on Organic Search, Mr. Newsom understand the true impact SEO has on the entire suite of marketing channels, regardless of medium.

His true passion is teaching others. Having the opportunity to hire and train new recruits who do not even know what SEO stands for, then watch them turn into top level producers has been very rewarding.

(Exhibit 21).

133.   The name and information concerning Mr. Montgomery a/k/a/ Mr. Newsom has since been removed from the website, as well.

134.   Consistent with the description of his role on the cached onlinefaxes.com website, a LinkedIn profile for Charles Montgomery of Mobile, Alabama describes him as "Freelance SEO & Contract SEO for Hire."  (Exhibit 28).

135.   On information and belief, Defendant Ms. Elnaz Fani also provides operational support for Fax87, OnlineFaxes, SolidFax, FaxVision, eFax4less, MyPhoneFax and ResellFax.

136.   According to her LinkedIn profile, Ms. Elnaz Fani has been a "Marketing and Branding Specialist" for "Fax87" from January 2011 to the present.  Ms. Elnaz Fani is also the sister of Mr. Farjad Fani.

**Inter-Related Domain Names**

137.   Website registration information for the various defendant websites further confirms that each the defendants are interconnected and likely affiliates and/or alter egos of one another.

138.   At the outset of this litigation, the domain name for fax87.com was registered to Defendant MJF.  Sometime in 2013, the registrant was changed to Domains by Proxy, LLC, which is a proxy service through which website owners may conceal

their identities.  According to information received from Domains by Proxy, LLC, the true registrant for Fax87.com at the time (through Domains by Proxy, LLC) was actually Defendant Mira Yardan, with an address in the Cook Islands, from the company "MyPhoneFax.com," using the email address "mira@myphonefax.com."  On information and belief, on or about September 1, 2014, the domain registrant for fax87.com was formally changed to Miraluna Caberte Yardan of One Voix Job Referral Consultancy Services.  On information and belief, on or about September 11, 2014, the registrant organization was changed again to Privacy Protection Service, Inc.  Like Domains by Proxy, Privacy Protection Services, Inc. is a proxy service through which website owners may conceal their identities.

139.  On information and belief, the domain name and website for onlinefaxes.com are operated by the same individuals and/or entities that operate the fax87.com website.  On information and belief, Defendant OnlineFaxes offers the same or substantially the same products and services as Fax87, using substantially the same equipment, staff, vendors, tooling, real estate and operations.   The onlinefaxes.com domain name was at one time registered to Domains by Proxy, LLC.  According to information received from Domains by Proxy, LLC, the true registrant for onlinefaxes.com (through Domains by Proxy, LLC) at the time was actually Defendant Mira Yardan, with an address in the Cook Islands, from the company "MyPhoneFax.com," using the email address "mira@myphonefax.com."  The formal registrant was changed to Miraluna Caberte Yardan of One Voix Job Referral Consultancy Services on or about August 31, 2014.  Later, the formal registrant organization was changed again on or about September 10, 2014, to Privacy Protection Service, Inc.

140.  On information and belief, the domain name and website for solidfax.com are operated by the same individuals and/or entities that operate the fax87.com and onlinefaxes.com websites.  On information and belief, Defendant SolidFax offers the same or substantially the same products and services as Fax87 and OnlineFaxes, using

substantially the same equipment, staff, vendors, tooling, real estate and operations.  The solidfax.com domain name is registered to Domains by Proxy, LLC.  According to information received from Domains by Proxy, LLC, the true registrant for solidfax.com (through Domains by Proxy, LLC) is Defendant Mira Yardan, with an address in the Cook Islands, from the company "MyPhoneFax.com," using the email address "mira@myphonefax.com."

141.   On information and belief, the domain name and website for FaxVision.com are operated by the same individuals and/or entities that operate the fax87.com, onlinefaxes.com and solidfax.com websites.  On information and belief, Defendant FaxVision offers the same or substantially the same products and services as Fax87, OnlineFaxes and SolidFax, using substantially the same equipment, staff, vendors, tooling, real estate and operations.  The faxvision.com domain name is registered to Domains by Proxy, LLC.  According to information received from Domains by Proxy, LLC, the true registrant for faxvision.com (through Domains by Proxy, LLC) is Defendant Mira Yardan, with an address in the Cook Islands, from the company "MyPhoneFax.com," using the email address "mira@myphonefax.com."

142.   On information and belief, the domain name and website for efax4less.com is operated by the same individuals and/or entities that operate the fax87.com, onlinefaxes.com, solidfax.com and faxvision.com websites.  On information and belief, Defendant eFax4less offers the same or substantially the same products and services as Fax87, OnlineFaxes and SolidFax, using substantially the same equipment, staff, vendors, tooling, real estate and operations.   The efax4less.com domain name is registered to Defendant Mr. Beaulieu.

143.   On information and belief, Defendant MyPhoneFax is operated by the same individuals and/or entities that operate the fax87.com, onlinefaxes.com, solidfax.com, faxvision.com and efax4less.com websites.   The myphonefax.com domain name is registered to Domains by Proxy, LLC.  According to information received from Domains by Proxy, LLC, the true registrant for myphonefax.com (through Domains by Proxy,

LLC) is Defendant Mira Yardan, with an address in the Cook Islands, from the company "MyPhoneFax.com," using the email address "mira@myphonefax.com."

144.   On information and belief, the domain name and website for resellfax.com are operated by the same individuals and/or entities that operate the fax87.com, onlinefaxes.com, solidfax.com, faxvision.com and efax4less.com websites.   On information and belief, Defendant ResellFax offers the same or substantially the same products and services as Fax87, OnlineFaxes, SolidFax, Faxvision and eFax4less, using substantially the same equipment, staff, vendors, tooling, real estate and operations. The ResellFax.com domain name is registered to Domains by Proxy, LLC.   According to information received Domains by Proxy, LLC, the Registrant for resellfax.com as of 2014 was Defendant Farjad Fani, with an address in Bellevue, Washington, with the email address "farjadfani@farjadfani.com."

145.   Other websites, such as wiredfax.com, faxeightyseven.com, fax87.net, enterprise.fax87.com, and phonefax87.com, route a user directly to fax87.com and are therefore also commonly owned and operated.

146.   Indeed, on August 27, 2013, Fax87 announced that it had acquired Wiredfax, issuing a press release that reads as follows:

> LOS ANGELES, CA--(Marketwired - Aug 27, 2013) - Fax87, a growing provider of online faxing services with an emphasis on low cost and exceptional customer experience, announced today that it has acquired WiredFax, an online fax service provider operating since 2008.
>
> WiredFax's existing user base will migrate to the Fax87 platform in order to take advantage of a more intuitive faxing service, as well as a pricing package that is cheaper with a higher number of total monthly inbound and outbound faxes. They will now have access to live customer support around the clock.
>
> Visitors to WiredFax.com will be forwarded automatically to Fax87.com and existing WiredFax users will be able to log into their accounts with their credentials.

FIRST AMENDED AND SUPPLEMENTAL COMPLAINT

1

**Continuing Breach of License Agreement**

2      147.   Defendants Mr. Fani, MJF and Fax87 are continuing to breach their

3  obligations under the License Agreement.

4      148.   Defendants Mr. Fani, MJF and Fax87 are offering products and services that

5  enable a user to (a) receive or access documents via email, a Web browser or otherwise

6  through the use of the Internet or other packet-switched data network, which documents

7  are, at some point in their transmission, in a format capable of being received by a fax

8  machine over a public switched telephone network, and (b) send documents to a recipient

9  via email, a Web browser or otherwise through the use of the Internet or other packet-

10  switched data network, which documents are, at some point in their transmission, in a

11  format capable of being received by a fax machine over a public switched telephone

12  network.

13      149.   Defendants Mr. Fani, MJF and Fax87 are offering such products and

14  services through various websites including fax87.com, onlinefaxes.com, solidfax.com,

15  faxvision.com, efax4less.com, resellfax.com, wiredfax.com, faxeightyseven.com,

16  fax87.net, enterprise.fax87.com and phonefax87.com.

17      150.   Fax87 also offers additional Internet fax features through its

18  enterprise.fax87.com website.

19      151.   Defendants have not provided royalty reports or payments for 2013Q1 or

20  any subsequent royalty period.

21      152.   In contravention of the License Agreement, Defendants also enabled third

22  parties to re-sell Licensed Products.

23      153.   The fax87.com website includes an icon labeled "Resell Fax."  Clicking on

24  the link re-directs the user to a website using the domain name resellfax.com, which

25  enables third-parties to become resellers or affiliates of the products and services covered

26  by Plaintiffs' patents.

27      154.   Under the tab, "Making money as a Reseller," Defendants boast as follows:

28

Making money as a reseller is simple. Upon sign up you will be logged into your reseller dashboard. You may then set up your account and automated billing or choose to create and bill your customers manually. Once that is done... well, that's it! Then you can get to marketing and selling your online fax service!

You are free to market and sell your online fax service as you wish. You are not restrained in any way and you are given full control over your pricing, packages, billing, branding, and more. Sell this as an entrepreneur or sell this as a division or add-on to your existing business. You are even encouraged to make use of the Success Blog to find new creative and simple marketing and sales strategies to boost your business.

Essentially, ResellFax only makes money when you make money. That is why the company is so adamant on helping you achieve your ResellFax goals. You will be charged $1.00 per DID and only $0.03 per inbound/outbound page. You can then price your service as you wish to create your own margins and profits. Choose your profits, get more customers, and make your money!

155.   Under the tab, "Making money as an Affiliate," Defendants boast:

Making money as an affiliate is simple. Upon sign up you will be logged into your affiliate dashboard. You may then access your personal URL collection. Once that is done... well, that's it! Then you can get to marketing and selling your online fax service!

The ResellFax Affiliate Program provides you with a personal URL that you are to use to direct traffic to online fax provider's websites. For every successful referral you will be given a commission. This commission depends on which website and company you have chosen to direct traffic to. Upon signing up you will see collection of URL's that you are able to choose from - each one having it's [sic] own correlating commission amount. These options are provided to you so that you are able to choose the online fax service that best suits your business or audience.

As mentioned, there are no up front costs, no commitment, and no hidden fees. ResellFax simply sends your commission, for whatever URL and coresponding commission amount you have chosen, to your PayPal account. Simple and easy. Sign up as an affiliate today!

156.   The solidfax.com website also includes a "Resell Fax" link that directs the user to resellfax.com, *i.e.*, the same page that resolves from clicking on the "Resell Fax" tab on Fax87.com.

157.   The Onlinefaxes.com website has a similar link labeled "Resell Fax Program." Clicking on that link re-directs the user to a subdirectory on the Resellfax.com

domain.  Specifically, it re-directs to <www.resellfax.com/fax-affiliate-program>, which further provides instructions for becoming an affiliate and/or reseller.  Defendants also boast that their system has "over 200k users" and a "100k+ pool of customers each month."

158.   On information and belief, Defendants Farjad Fani, MJF and Fax87 have enabled resellers and affiliates to sell and provide services that are covered by Plaintiffs' patents and the License Agreement.  On information and belief, Defendants' resellers and affiliates are offering products and services that enable a user to (a) receive or access documents via email, a Web browser or otherwise through the use of the Internet or other packet-switched data network, which documents are, at some point in their transmission, in a format capable of being received by a fax machine over a public switched telephone network, and (b) send documents to a recipient via email, a Web browser or otherwise through the use of the Internet or other packet-switched data network, which documents are, at some point in their transmission, in a format capable of being received by a fax machine over a public switched telephone network.

### Infringement of the '638 Patent

159.   Defendants have infringed, either directly or indirectly, j2's '638 Patent by their sale and/or offers for sale of Internet facsimile messaging services through the fax87.com, onlinefaxes.com, solidfax.com, faxvision.com, efax4less.com, resellfax.com, wiredfax.com, faxeightyseven.com, fax87.net, enterprise.fax87.com,  phonefax87.com and related websites.

160.   Claim 13 of the '638 Patent, as amended, recites the following limitations:

A method comprising:

receiving a first incoming call signal destined for a first communications server for processing of an audio message into a digital representation;

determining if a first condition has occurred;

redirecting the first incoming call signal from the first communications server to a second communications server based on the determining of the first condition, wherein the first

incoming call signal includes a particular inbound address uniquely associated with a user account and at least one destination address on a packet switched network, and wherein the particular inbound address remains unchanged during the redirecting;

extracting the particular inbound address;

determining, based on the particular inbound address, a user account status and the at least one destination address on the packet switched network; and,

sending the digital representation to the at least one destination address, wherein the particular inbound address is uniquely assigned to the user account and the at least one destination address comprises at least one email address.

161.   On information and belief, Defendants began marketing and selling Internet fax services, including those services infringing the '638 Patent, as early as 2010.

162.   Defendants provide services, including through their various websites, whereby subscribers send and receive faxes by email using computers, smartphones or other mobile devices.

163.   Defendants utilize a virtual fax board that enables subscribers to receive faxes via email using the Internet.  All faxes are received and then identified based upon the subscriber-unique 10-digit fax number that is called.  The fax is then transmitted via a hyper-text transfer protocol (HTTP) daemon to the subscriber's server.  Assuming the fax transmission is successful, faxes sent through the Defendants' portals are processed into pdf documents for the recipient.

164.   Defendants then have faxes sent to the subscriber's email address on file with a pdf attachment.  The faxes are kept under the subscriber's account online so that he or she can manage them at any future date or in case the subscriber does not have access to email at that time.

### Infringement of the '699 Patent

165.   Defendants have infringed, either directly or indirectly, the '699 Patent by their sale and/or offers for sale of Internet facsimile messaging services through the fax87.com, onlinefaxes.com, solidfax.com, faxvision.com, efax4less.com, resellfax.com,

---

wiredfax.com, faxeightyseven.com, fax87.net, enterprise.fax87.com, phonefax87.com and related websites.

166.   Claim 11 of the '699 Patent recites the following limitations:

A method of determining a measure of the number of pages transmitted by fax to or from a plurality of users, comprising:

converting the transmitted pages into a format that can be output electronically rather than in hardcopy;

counting the number of pages within an individual fax transmission;

associating said fax transmission with a respective one of said plurality of users;

determining a measure of the total number of pages transmitted by fax to or from each of said plurality of users; and

allocating at least one such measure, associated with one of said plurality of users, to each of a plurality of groups of said users.

167.   On information and belief, Defendants began marketing and selling Internet facsimile services, including those services infringing the '699 Patent, as early as 2010.

168.   Defendants provide services, including through their various websites, whereby subscribers send and receive faxes by email using computers, smartphones or other mobile devices.  As part of these services, Defendants also determine the number of pages transmitted by each fax to any particular recipient(s).

169.   Defendants utilize a virtual fax board that enables subscribers to receive faxes via email using the Internet.  All faxes are received and then identified based upon the subscriber-unique 10-digit fax number that is called.  The fax is then transmitted via a hyper-text transfer protocol (HTTP) daemon to the subscriber's server.  Assuming the fax transmission is successful, faxes sent through the Defendants' portals are processed into pdf documents for the recipient.

170.   Defendants then have faxes sent to the subscriber's email address on file with a pdf attachment.  The faxes are kept under the subscriber's account online so that he or she can manage them at any future date or in case the subscriber does not have access to email at that time.

---

FIRST AMENDED AND SUPPLEMENTAL COMPLAINT

34

171.   Defendants offer multiple pricing plans for subscribers, including plans for 50 incoming/outgoing pages per month, 1000 incoming/outgoing pages per month, or 2000 incoming/outgoing pages per month.  On information and belief, Defendants count the number of pages within an individual fax transmission or multiple fax transmissions. Defendants also enable subscribers to send multiple documents within a single fax transmission, in multiple document types, and allow subscribers to send multiple faxes at one time.  Accordingly, Defendants' websites are able to link various fax transmissions and documents with the corresponding recipient(s).

### Infringement of the '220 Patent

172.   Defendants have infringed, either directly or indirectly, the '220 Patent by their sale and/or offers for sale of Internet facsimile messaging services through the fax87.com, onlinefaxes.com, solidfax.com, faxvision.com, efax4less.com, resellfax.com, wiredfax.com, faxeightyseven.com, fax87.net, enterprise.fax87.com, phonefax87.com and related websites.

173.   Claim 1 of the '220 Patent recites the following limitations:

A machine-implemented method for providing an Internet fax service, comprising:

(a) receiving messages through fax transmissions on a plurality of direct inward dialing (DID) lines assigned to a plurality of users of the service, respectively, and storing raw fax documents derived from the received fax transmissions, respectively;

(b) retrieving the users' account information to determine each of the users' subscriber status or subscriber classification including whether or not the user is subscribed to the Internet service;

(c) making the received messages available to the users, respectively, over an Internet and in accordance with the users' account information;

(d) performing the following on a per user basis according to the user's subscriber status or classification,

    (i) processing the raw fax documents using digital character recognition to extract text therefrom,

---

FIRST AMENDED AND SUPPLEMENTAL COMPLAINT

(ii) scanning the extracted text to find one or more specified keywords therein, wherein the found keywords are a subset of the extracted text,

(iii) storing the found keywords in association with their raw fax documents in a database;

(e) receiving a plurality of requests for message searches, from two or more of said plurality of users, respectively, in accordance with each user's account information;

(f) processing each one of the plurality of requests by searching amongst the found keywords that are stored in the database to find ones that satisfy search criteria designated by each one of the plurality of requests; and

(g) making results of the searching available over the Internet to said two or more of the plurality of users, respectively, in accordance with each user's account information.

174.   On information and belief, Defendants have been marketing and selling Internet fax services, including those services infringing the '220 Patent, as early as the date of issuance in 2014.

175.   Defendants provide services, including through their various websites, whereby subscribers send and receive faxes by email using computers, smartphones or other mobile devices.

176.   In the services offered by Defendants, faxes are received and identified based upon the fax number that was called.   Once received, the faxes are stored on a server.   Defendants retrieve the users' account information, such as whether the users are subscribed to the service and a determination of the destination addresses on file for such users.   Faxes are then sent to the subscribers' email address(es) on file, which can be accessed via the Internet.   Further, certain details can be extracted from the processed fax image.   For example, using optical character recognition (OCR), the Fax87 server can query a network resource (in response to users' requests/search criteria) to extract certain information on the fax message, including certain keywords or queries, which can then be stored as fax history that is visible on the Internet to subscribers of the service.   This process can accommodate multiple users' requests.

177.   Plaintiffs will suffer and are suffering irreparable harm from Defendants' continued infringement of the '638, '699 and '220 Patents. Plaintiffs have no adequate remedy at law and are entitled to an injunction against Defendants' continuing infringement of the '638, '699 and '220 Patents. Unless enjoined, Defendants will continue their infringing conduct.

## COUNT 1

### Breach of Contract

### (Against Farjad Fani, MJF, Fax87, OnlineFaxes, SolidFax, FaxVision, eFax4less, MyPhoneFax and ResellFax)

178.   Plaintiffs restate and incorporate by reference their previous allegations above, as if fully set forth herein.

179.   Plaintiffs j2 and AMT (on the one hand) and Defendants MJF and Fax87 (on the other hand) are parties to the License Agreement, which is valid, enforceable and supported by adequate consideration.

180.   Plaintiffs j2 and AMT (on the one hand) and Defendants Mr. Fani, MJF and Fax87 (on the other hand) are parties to the Settlement Agreement, which is valid, enforceable and supported by adequate consideration.

181.   Plaintiffs substantially complied with their obligations under the License Agreement and Settlement Agreement.

182.   Any and all conditions required for Mr. Fani, MJF and Fax87's performance under the License Agreement and Settlement Agreement occurred and/or were satisfied.

183.   Mr. Fani, MJF and Fax87 breached the License Agreement at least by failing to make any quarterly royalty payments to j2 after January 2013, in violation of Section 3.1 of the License Agreement.

184.   Mr. Fani, MJF and Fax87 breached the License Agreement at least by failing to submit any royalty reports to j2 after January 2013, in violation of Section 3.3 of the License Agreement.

---

FIRST AMENDED AND SUPPLEMENTAL COMPLAINT

185.   Mr. Fani, MJF and Fax87 breached the License Agreement at least by failing to make any required late-payment fees to j2 between 2013 and 2015, in violation of Section 3.5 of the License Agreement.

186.   Mr. Fani, MJF and Fax87 breached the License Agreement at least by failing to mark the website, user manuals and materials associated with the Licensed Products with the corresponding licensed patent numbers, in violation of Section. 7.4 of the License Agreement.

187.   Mr. Fani, MJF and Fax87 breached at least Sections 8.1, 8.2 and 8.4 of the License Agreement through their purported sale of the Fax87 business to a third party without the required notice to Plaintiffs.

188.   Mr. Fani, MJF and Fax87 breached the License Agreement at least by failing to allow Plaintiffs' requested audit, in violation of Section 3.4 of the License Agreement.

189.   Mr. Fani, MJF and Fax87 breached the License Agreement at least by failing to notify j2 of any change of address related to their business location, in violation of Section 10.6 of the License Agreement.

190.   Mr. Fani, MJF and Fax87 breached the License Agreement at least by failing to do any and all acts and things reasonably necessary in connection with the performance of their obligations and to carry out the intent of the parties, in violation of Section 10.8 of the License Agreement.

191.   Mr. Fani, MJF and Fax87 breached the License Agreement at least by enabling third parties to re-sell products and services, in violation of Section 2 of the License Agreement.

192.   Mr. Fani, MJF and Fax87 breached the License Agreement at least by using the mark "efax" in connection with their products and services, in violation of Section 9 of the License Agreement.

193.   Pursuant to Section 3.2 of the Settlement Agreement, the breaches of the License Agreement also constitute a breach by Defendants Farjad Fani, MJF and Fax87 of the Settlement Agreement.

194.   Each of the above-referenced breaches of the License Agreement and Settlement Agreement was material.

195.   On information and belief, each of the above-referenced breaches of the License Agreement and Settlement Agreement was done willfully and deliberately.

196.   As a direct and proximate result of each of the above-referenced breaches, Plaintiffs have suffered and will continue to suffer significant damages.

197.   Under Section 10.2 of the License Agreement and Section 3.10 of the Settlement Agreement, Plaintiffs are also entitled to an award of reasonable attorneys' fees, costs and expenses.

198.   Defendant Farjad Fani is liable as an alter ego of Defendants MJF and Fax87 for each breach of the License Agreement.

199.   Defendants OnlineFaxes, SolidFax, FaxVision, eFax4less, MyPhoneFax and ResellFax are alter egos, affiliates, successors and/or assigns of Defendants MJF and Fax87.  These other Defendants also committed each breach recited above, and they are therefore liable for the same.

### COUNT 2
### Breach of the Implied Covenant of Good Faith and Fair Dealing
### (Against Farjad Fani, MJF, Fax87, OnlineFaxes,
### SolidFax, FaxVision, eFax4less, MyPhoneFax and ResellFax)

200.   Plaintiffs restate and incorporate by reference their previous allegations above, as if fully set forth herein.

201.   Plaintiffs j2 and AMT (on the one hand) and Defendants MJF and Fax87 (on the other hand) are parties to the License Agreement, which is valid, enforceable and supported by adequate consideration.

202.   Plaintiffs j2 and AMT (on the one hand) and Defendants Fani Farjad, MJF and Fax87 (on the other hand) are parties to the Settlement Agreement, which is valid, enforceable and supported by adequate consideration.

---

FIRST AMENDED AND SUPPLEMENTAL COMPLAINT

203.   Plaintiffs substantially complied with their obligations under the License Agreement and Settlement Agreement.

204.   Any and all conditions required for Mr. Fani's, MJF's and Fax87's performance under the License Agreement and Settlement Agreement occurred and/or were satisfied.

205.   Plaintiffs further expected that they could avert further litigation (including associated costs) by entering into the Settlement Agreement and License Agreement.

206.   As part of the Settlement Agreement and License Agreement, Plaintiffs expected to receive accurate quarterly royalty reports and royalty payments, and Plaintiffs expected to be able to audit Defendants' records, in order to avoid the necessity of proving such amounts and seeking to recover such payments through litigation.

207.   Plaintiffs further expected that Defendants would require any purchaser of the Fax87 business to comply with the License Agreement, expected that Defendants would notify j2 of any change of address, expected that Defendants would not enable third parties to re-sell licensed products and services, and expected that Defendants would respect Plaintiffs' trademark rights.

208.   Plaintiffs also expected that Defendants would permanently mark their user website, manuals and other materials with the licensed patent numbers.

209.   Defendants Mr. Fani, MJF and Fax87 have unfairly interfered with j2's right to secure the benefits of the License Agreement.

210.   Among other things, Defendants Farjad Fani, MJF and Fax87 have failed to make quarterly royalty payments, failed to submit quarterly royalty reports, failed to allow j2 to conduct an audit, and failed to provide j2 with material information concerning purported third-party acquirers of the Fax87 business, thereby requiring a new litigation.

211.   Defendants have evaded service and evaded their obligations under the License Agreement and Settlement Agreement.  Defendants have tried to mask their sales of licensed services by selling through other websites under various aliases.  Defendants

have led Plaintiffs on a multi-year wild goose chase to track down Mr. Fani and the other infringing websites.

212.   To evade the payment and reporting obligations under the License Agreement, Mr. Fani, MJF and Fax87—in collaboration with others—offer the Fax87 services through other websites, including onlinesfaxes.com, solidfax.com, faxvision.com, efax4less.com and resellfax.com.

213.   To avoid the reporting and payment obligations under the License Agreement, Mr. Fani failed to maintain the corporate form for MJF and fled the country once this litigation was filed.   On information and belief, Mr. Fani has moved from country to country over the past two and a half years for the purpose of evading service and avoiding liability.   Mr. Fani has refused to provide information required under the License Agreement.

214.   During this time period, Mr. Fani has continued to amass extensive wealth through the operation of Fax87 and alter ego businesses.

215.   Defendants have also enabled third-party re-sellers to sell the licensed products and services (without paying royalties), and Defendants are using the eFax® mark in connection with their products and services.

216.   Defendants Mr. Fani, MJF and Fax87's conduct violates the implied covenant of good faith and fair dealing, which is present in every binding contract in California.   Indeed, such conduct violates the spirit of the agreements and hinders the intent of the parties as contemplated by the agreements at issue.

217.   As a direct and proximate result of the defendants' breaches of the implied covenant of good faith and fair dealing, Plaintiffs have suffered and will continue to suffer significant damages.

218.   Defendant Farjad Fani is also liable as an alter ego of Defendants MJF and Fax87 for their breach of the covenant of good faith and fair dealing.

219.   Defendants OnlineFaxes, SolidFax, FaxVision, eFax4less, MyPhoneFax and ResellFax are alter egos, affiliates, successors and/or assigns of Defendants MJF and

Fax87.  These other Defendants also committed each breach recited above, and they are therefore liable for the same.

**COUNT 3**

**Promissory Fraud**

**(Against All Defendants)**

220.   Plaintiffs restate and incorporate by reference their previous allegations above, as if fully set forth herein.

221.   On or about April 10, 2012, Defendants Mr. Fani, MJF and Fax87 promised to perform their obligations and abide by the terms of the Settlement Agreement and License Agreement.

222.   Among other things, Mr. Fani, MJF and Fax87 promised to make quarterly royalty payments for their Internet fax products and services, to submit quarterly royalty reports for their Internet fax products services, to make late-payment fees if their payments are late, to permanently mark with the licensed patent numbers, to notify j2 of any "Change of Control" event within 14 days, to allow j2 to conduct an audit of their records, to notify j2 of any change of address related to MJF's or Fax87's business location, to do any and all acts and things reasonably necessary in connection with the performance of their obligations, to refrain from selling the licensed services to third-party re-sellers, and to refraining from using the eFax® mark in connection with their products and services.

223.   Each of these promises was important to the settlement of the previous litigation, including the execution of the Settlement Agreement and License Agreement.

224.   When Mr. Fani, MJF and Fax87 made these promises and represented that they would abide by the terms of the Settlement Agreement and License Agreement, they did not intend to perform.

225.   Mr. Fani, MJF and Fax87 made these promises with the intention of inducing reliance by Plaintiffs j2 and AMT for the purpose of obtaining a dismissal and settlement of the previous litigation.

FIRST AMENDED AND SUPPLEMENTAL COMPLAINT

42

226.   On information and belief, and unbeknownst to Plaintiffs, when Defendants made these promises, Mr. Fani intended to eliminate MJF as a corporation, flee the country to evade future service of process, and operate Fax87 from untraceable locations abroad.

227.   To further evade the obligations under the Settlement Agreement and License Agreement, Mr. Fani also intended to disguise the licensed services by offering them through other websites.

228.   Plaintiffs reasonably relied on each of the promises of Mr. Fani, MJF and Fax87 to Plaintiffs' detriment.

229.   In reliance on these promises, Plaintiffs executed the Settlement Agreement, which (among other things) granted certain releases to Mr. Fani, MJF and Fax87.

230.   In reliance on these promises, Plaintiffs agreed to dismiss—and did dismiss—their earlier litigation against Mr. Fani, MJF and Fax87.

231.   In reliance on these promises, Plaintiffs executed the License Agreement granting Defendants MJF d/b/a Fax87.com a license to their patents under the conditions specified in the License Agreement.

232.   Mr. Fani, MJF and Fax87 failed to perform each of these promises.

233.   Plaintiffs j2 and AMT were substantially and materially harmed and prejudiced by their reliance on these promises, and by Mr. Fani, MJF and Fax87's failure to perform these promises.

234.   Among other things, in reliance on these promises, Plaintiffs j2 and AMT released their earlier claims for patent infringement and willful patent infringement against Defendants Mr. Fani, MJF and Fax87, dismissed the earlier litigation and granted a license.  Further, Plaintiffs j2 and AMT have had to spend additional time, money and effort filing a new litigation, tracking down Defendants and their various alter egos, and identifying and locating their new accomplices.

235.   Plaintiffs j2 and AMT's reliance was based substantially on these false promises and was a substantial factor in causing their harm.

236.   Defendant Farjad Fani is also liable as an alter ego of Defendants MJF and Fax87 for their fraud.

237.   Defendants OnlineFaxes, SolidFax, FaxVision, eFax4less, MyPhoneFax and ResellFax are also liable as alter egos of Defendants MJF and Fax87 for their fraud.

238.   Further, all Defendants are liable for the aforementioned fraud based on their conspiracy to commit such fraud and through their aiding and abetting the fraud.

239.   Defendants all committed acts in furtherance of the overall fraudulent scheme orchestrated by Defendant Farjad Fani.

240.   On information and belief, Defendants worked together and agreed, implicitly and/or explicitly, by coordinating their actions and otherwise acting in concert with one another.

241.   As described above, Defendants devised and executed an extensive scheme to (i) circumvent legal obligations owed pursuant to an enforceable Settlement Agreement and License Agreement; (ii) facilitate the lapsing of Matt Johnson Finance, Inc. and nominally transferring Fax87's business operations to undisclosed individuals and/or entities; (iii) flee the United States in an effort to evade service of process and conceal the operations of infringing Internet fax services; (iv) conceal the identities of those individuals or entities operating and/or supporting the operations of infringing Internet fax services, including by using proxy services through which website owners may conceal their identities; and (v) repeatedly change the names (as represented on archived online information concerning the defendant website entities) of those individuals involved in the operations of the infringing Internet fax services.

242.   Some or all of the Defendants aided and abetted and/or otherwise knowingly engaged in multiple acts in furtherance of this conspiracy, including (i) allowing Matt Johnson Finance, Inc. to lapse due to failure to file an annual list of officers/license renewal; (ii) actually fleeing the United States to Asia and evading service of process; (iii) offering services covered by the License Agreement, while collaborating to circumvent and evade the obligations of the Settlement Agreement and License

Agreement, as described above; (iv) establishing and operating multiple alter ego websites that offer substantially the same infringing services as Fax87; (v) contending that Fax87's business was sold to a "third party"—without disclosing that "third party"— in an effort to circumvent Mr. Fani's, MJF's and Fax87's legal obligations under the Settlement Agreement and License Agreement; (vi) actually concealing the identities of those individuals or entities operating and/or supporting the operations of infringing Internet fax services, including by using proxy services such as Domains By Proxy and Privacy Protection Service, through which website owners may conceal their identities; and (vii) repeatedly changing the names (as represented on archived online information concerning the defendant website entities) of those individuals involved in the operations of the infringing Internet fax services, including the names of Defendants Mira Yardan, Steven Thong and Charles Montgomery.

243.   Plaintiffs have been and are still being harmed by said conspiracy to commit fraud, and have suffered damages in an amount to be determined at trial.

244.   Each of the Defendants acted with malice, oppression, and fraud, justifying an award of punitive damages.

## COUNT 4

### Infringement of U.S. Patent Number 6,208,638

### (Against All Defendants)

245.   Plaintiffs restate and incorporate by reference their previous allegations above, as if fully set forth herein.

246.   AMT is the owner by assignment of the '638 Patent.  j2 is the exclusive licensee of the '638 Patent.

247.   Defendants Fax87, OnlineFaxes, SolidFax, FaxVision, eFax4less and ResellFax sell and offer for sale Internet fax services that are covered literally and/or under the doctrine of equivalents by at least claim 13 of the '638 Patent.

248.   All of the Defendants collaborated to sell and/or offer for sale Internet fax products and services through websites including fax87.com, onlinefaxes.com,

solidfax.com,    faxvision.com,    efax4less.com,    resellfax.com,    wiredfax.com,
faxeightyseven.com, fax87.net, enterprise.fax87.com, myphonefax.com, phonefax87.com
and through other sites.

249.   On information and belief, 99% of the Defendants' Internet fax products and
services are sold in the United States.

250.   Defendants Farjad Fani, MJF and Fax87 are alter egos of one another.  On
information and belief, Defendants Farjad Fani, MJF and Fax87 direct the operation of
fax87.com, onlinefaxes.com, solidfax.com, faxvision.com, efax4less.com, resellfax.com,
wiredfax.com, faxeightyseven.com, fax87.net, enterprise.fax87.com, myphonefax.com,
phonefax87.com and other sites for the sale of infringing Internet fax services.

251.   On information and belief, Defendant Elnaz Fani sells, offers for sale and/or
otherwise provides support for the sales of infringing Internet fax services at least
through the Fax87.com website.  Among other things, beginning in January 2011,
Defendant Elnaz Fani has assisted with marketing and advertising the infringing Internet
fax services, has directly serviced customers of the infringing Internet fax services, and
has analyzed web data relating to the Internet fax services. Defendant Elnaz Fani interacts
with customers on a daily basis via social media accounts and email.

252.   Defendants One Voix, Ms. Yardan, Mr. Thong, Mr. Montgomery and Mr.
Beaulieu also make, sell, offer for sale and/or otherwise provide support for the
infringing Internet fax services through the websites fax87.com, onlinefaxes.com,
solidfax.com,    faxvision.com,    efax4less.com,    resellfax.com,    wiredfax.com,
faxeightyseven.com, fax87.net, enterprise.fax87.com, myphonefax.com, phonefax87.com
and other sites.

253.   According to information provided on the website fax87.com, sales and
support for Fax87 can be accessed by calling (866) 698-4068 from the United States,
including from this District.   According to information provided on the website
onlinefaxes.com, sales and support for OnlineFaxes can be accessed by calling (888) 201-
4170 from the United States, including from this District.   According to information

provided on the website solidfax.com, sales and support for SolidFax can be accessed by calling (866) 637-1840 from the United States, including from this District.  All three numbers are directed to the same call center in the Philippines operated by Defendants One Voix and Mira Yardan.  The operating hours for the call center are tailored and customized to the business hours of customers in the United States.  Through these telephone numbers, Defendants One Voix and Ms. Yardan sell, offer for sale and otherwise support the sales of infringing Internet fax services in the United States.

254.   Each of the fax87.com, onlinefaxes.com and solidfax.com websites also include a link for "Live Chat."  On information and belief, Defendants One Voix and Ms. Yardan operate the "Live Chats" for each of these services through facilities in the Philippines.  Through these "Live Chat" sessions, Defendants One Voix and Ms. Yardan sell, offer for sale and otherwise support the sales of infringing Internet fax services.

255.   The websites wiredfax.com, faxeightyseven.com, fax87.net, enterprise.fax87.com and phonefax87.com also re-direct to the website fax87.com and, thus, are also involved in Defendants' scheme to sell or offer for sale infringing Internet fax services.

256.   On information and belief, Defendant Ms. Yardan also directly sells and/or offers for sale infringing Internet fax services at least through the fax87.com website.  Based upon reports of customer interactions through the Better Business Bureau, Defendant Mira Yardan interacts directly with customers through the email address mira@fax87.com.

257.   On information and belief, Defendants Mr. Thong, Mr. Montgomery and Mr. Beaulieu also assist with selling, offering for sale, operating and/or supporting infringing Internet fax products and services, including through the websites fax87.com, onlinefaxes.com, solidfax.com, faxvision.com, efax4less.com, resellfax.com, wiredfax.com, faxeightyseven.com, fax87.net, enterprise.fax87.com, myphonefax.com, phonefax87.com and other sites.

---

FIRST AMENDED AND SUPPLEMENTAL COMPLAINT

47

258.   The Internet fax products and services offered by Defendants Fax87, Onlinefaxes, Solidfax, FaxVision, eFax4less and ResellFax are substantially the same. Each of these products and services operate by receiving a first incoming call signal destined for a first communications server for processing of an audio message into a digital representation; determining if a first condition has occurred; redirecting the first incoming call signal from the first communications server to a second communications server based on the determining of the first condition, wherein the incoming call signal includes an inbound address; extracting the inbound address; determining, based on the inbound address, a user account status and a destination on a packet switched network; and, sending the digital representation to the destination, wherein the inbound address is assigned to the user account and the destination comprises at least one email address, as recited in claim 13 of the '638 patent.

259.   The infringement of the'638 Patent by each Defendant was and continues to be willful.   Each of the defendants has acted intentionally and recklessly, despite their knowledge that their conduct constitutes infringement of the '638 Patent.

260.   Each of the defendants had actual knowledge of the '638 Patent before this litigation.   Each of the defendants was aware that the accused products and services are covered by the '638 Patent before this litigation.

261.   Defendants Mr, Fani, MJF and Fax87 had such knowledge because they were sued for infringing the '638 Patent in 2011.   Further, Defendants Onlinefaxes, Solidfax, FaxVision, eFax4less, ResellFax and MyPhoneFax are alter egos of Fax87 and, thus, have had the same knowledge of the '638 Patent.

262.   Defendant Elnaz Fani is the sister of Mr. Fani and close business associate and was therefore likely aware of the prior litigation against Mr. Fani wherein Plaintiffs asserted the '638 Patent against the accused products and services.

263.   On information and belief, Defendants One Voix, Ms. Yardan, Mr. Thong, Mr. Montgomery, Mr. Beaulieu and DOES 1-10 are close associates of the other

Defendants and were aware of the prior lawsuit, the '638 Patent, and the acts of infringement.

264.   Defendants' infringements have been both direct and indirect, including contributory and inducement of infringement.   Defendants' infringing activities violate 35 U.S.C. §§ 271(a) through (c).

265.   On information and belief, Defendants Mr. Fani, MJF, Fax87, Ms. Yardan and One Voix also induced others to infringe.   Defendants Mr. Fani, MJF, Fax87, Ms. Yardan and One Voix knew or should have known that their actions would induce actual infringement.

266.   On information and belief, Defendants Mr. Fani, MJF, Fax87, Ms. Yardan, and One Voix contributorily infringed at least claim 13 of the '638 Patent.   Defendants Mr. Fani, MJF, Fax87, Ms. Yardan and One Voix provided and supported services that, when sold and offered for sale by the other defendants in the United States, directly infringe at least claim 13 of the '638 Patent.   Defendants Mr. Fani, MJF, Fax87, Ms. Yardan and One Voix know that their Internet fax products and services are used for practicing the methods covered by the '638 Patent.   The infringing products and services embody a material part of the claimed invention of the '638 Patent, and Defendants know that these products and services are especially designed and/or adapted for such uses that infringe the '638 Patent.   The accused Internet fax products and services, including those offered by Fax87, Onlinefaxes, Solidfax, FaxVision, eFax4less and ResellFax, are not suitable for substantial non-infringing uses.   Defendants intend that the accused products and services be used in a manner that infringes the '638 Patent.   Further, on information and belief, Defendants Mr. Fani, MJF, Fax87, Ms. Yardan and One Voix provided components constituting a material part of the infringing products and services in the United States.

267.   Plaintiffs j2 and AMT have been damaged by Defendants' direct and indirect infringement in an amount to be determined at trial but no less than the

reasonable royalty and late payments that would be due to Plaintiffs under the License Agreement.

268.   This is an exceptional case under 35 U.S.C. § 285.  Plaintiffs are entitled to an award of treble damages and attorney's fees for Defendants' willful infringement.

269.   In light of the shell games and disappearance of Defendants, Plaintiffs are now, and will continue to be, irreparably harmed by the defendants' aforementioned acts of infringement, and Plaintiffs will continue to suffer irreparable harm absent an injunction.  Plaintiffs have no adequate remedy at law.  Accordingly, Plaintiffs seek a preliminary and permanent injunction barring future infringement.

## COUNT 5

## Infringement of U.S. Patent Number 8,310,699

## (Against All Defendants)

270.   Plaintiffs restate and incorporate by reference their previous allegations above, as if fully set forth herein.

271.   AMT is the owner by assignment of the '699 Patent.  j2 is also the implied exclusive licensee of the '699 Patent and operates as such.

272.   Defendants Fax87, OnlineFaxes, SolidFax, FaxVision, eFax4less ResellFax sell and offer for sale Internet fax services that are covered literally and/or under the doctrine of equivalents by at least claim 11 of the '699 Patent.

273.   All of the Defendants collaborated to sell and/or offer for sale Internet fax products and services through websites including fax87.com, onlinefaxes.com, solidfax.com, faxvision.com, efax4less.com, resellfax.com, wiredfax.com, faxeightyseven.com, fax87.net, enterprise.fax87.com, myphonefax.com, phonefax87.com and through other sites.

274.   On information and belief, 99% of the Defendants' Internet fax products and services are sold in the United States.

275.  Defendants Mr. Fani, MJF and Fax87 are alter egos of one another. Defendants Mr. Fani, MJF and Fax87 direct the operation of fax87.com,

onlinefaxes.com, solidfax.com, faxvision.com, efax4less.com, resellfax.com, wiredfax.com, faxeightyseven.com, fax87.net, enterprise.fax87.com, myphonefax.com, phonefax87.com and other sites for the sale of infringing Internet fax services.

276.   On information and belief, Defendant Elnaz Fani sells, offers for sale and/or otherwise provides support for the sales of infringing Internet fax services at least through the fax87.com website.   Among other things, beginning in January 2011, Defendant Elnaz Fani has assisted with marketing and advertising the infringing Internet fax services, has directly serviced customers of the infringing Internet fax services, and has analyzed web data relating to the Internet fax services. Defendant Elnaz Fani interacts with customers on a daily basis via social media accounts and email.

277.   Defendants One Voix, Ms. Yardan, Mr. Thong, Mr. Montgomery and Mr. Beaulieu make, sell, offer for sale and/or otherwise provide support for the infringing Internet fax services through the websites fax87.com, onlinefaxes.com, solidfax.com, faxvision.com, efax4less.com, resellfax.com, wiredfax.com, faxeightyseven.com, fax87.net, enterprise.fax87.com, myphonefax.com, phonefax87.com and other sites.

278.   According to information provided on the website fax87.com, sales and support for Fax87 can be accessed by calling (866) 698-4068 from the United States, including from this District.   According to information provided on the website onlinefaxes.com, sales and support for OnlineFaxes can be accessed by calling (888) 201-4170 from the United States, including from this District.   According to information provided on the website solidfax.com, sales and support for SolidFax can be accessed by calling (866) 637-1840 from the United States, including from this District.   All three numbers are directed to the same call center in the Philippines operated by Defendants One Voix and Ms. Yardan.   The operating hours for the call center are tailored and customized to the business hours of customers in the United States.   Through these telephone numbers, Defendants One Voix and Mira Yardan sell, offer for sale and otherwise support the sales of infringing Internet fax services in the United States.

279.   The websites fax87.com, onlinefaxes.com and solidfax.com also include a link for "Live Chat."  On information and belief, Defendants One Voix and Mira Yardan operate the "Live Chats" for each of these services through facilities in the Philippines. Through these "Live Chat" sessions, Defendants One Voix and Mira Yardan sell, offer for sale and otherwise support the sales of infringing Internet fax services.

280.   The websites wiredfax.com, faxeightyseven.com, fax87.net, enterprise.fax87.com and phonefax87.com also re-direct to the website fax87.com and, thus, are also involved in Defendants' scheme to sell or offer for sale infringing Internet fax services.

281.   On information and belief, Defendant Mira Yardan also directly sells and/or offers for sale infringing Internet fax services at least through the fax87.com website. Based upon reports of customer interactions through the Better Business Bureau, Defendant Mira Yardan interacts directly with customers through the email address mira@fax87.com.

282.   On information and belief, Defendants Mr. Thong, Mr. Montgomery and Mr. Beaulieu also assist with selling, offering for sale, operating and supporting infringing Internet fax products and services, including through the websites fax87.com, onlinefaxes.com, solidfax.com, faxvision.com, efax4less.com, resellfax.com, wiredfax.com, faxeightyseven.com, fax87.net, enterprise.fax87.com, myphonefax.com, phonefax87.com and other sites.

283.   The Internet fax products and services offered through Defendants Fax87, Onlinefaxes, Solidfax, FaxVision, eFax4less and ResellFax are substantially the same. Each of these products and services allows for a fax to be converted into an electronic format, and operates by determining a measure of the number of pages  transmitted by fax to or from a plurality of users, comprising: converting the transmitted pages into a format that can be output electronically rather than in hardcopy; counting the number of pages within an individual fax transmission; associating said fax transmission with a respective one of said plurality of users; determining a measure of the total number of

pages transmitted by fax to or from each of said plurality of users; and allocating at least one such measure, associated with one of said plurality of users, to each of a plurality of groups of said users, as recited in claim 11 of the '699 patent.

284.   The infringement of the '699 Patent by each Defendant was and continues to be willful.  Each of the defendants has acted intentionally and recklessly, despite their knowledge that their conduct constitutes infringement of the '699 Patent.

285.   On information and belief, each of the defendants had actual knowledge of the '699 Patent before this litigation.  On information and belief, each of the Defendants was aware that the accused products and services are covered by the '699 Patent before this litigation.

286.   Defendants' infringements have been both direct and indirect, including contributory and inducement of infringement.  Defendants' infringing activities violate 35 U.S.C. §§ 271(a) through (c).

287.   On information and belief, Defendants Mr. Fani, MJF, Fax87, Ms. Yardan and One Voix also induced others to infringe.  Defendants Mr. Fani, MJF, Fax87, Ms. Yardan and One Voix knew or should have known that their actions would induce actual infringement.

288.   On information and belief, Defendants Mr. Fani, MJF, Fax87, Ms. Yardan and One Voix contributorily infringed at least claim 11 of the '699 Patent.  Defendants Mr. Fani, MJF, Fax87, Ms. Yardan and One Voix provided and supported services that, when sold and offered for sale by the other defendants in the United States, directly infringe at least claim 11 of the '699 Patent.  Defendants Mr. Fani, MJF, Fax87, Ms. Yardan and One Voix know that their Internet fax products and services are used for practicing the methods covered by the '699 Patent.  The infringing products and services embody a material part of the claimed invention of the '699 Patent, and Defendants know that these products and services are especially designed and/or adapted for such uses that infringe the '699 Patent.  The accused Internet fax products and services, including those offered by Fax87, Onlinefaxes, Solidfax, FaxVision, eFax4less and ResellFax, are not

suitable for substantial non-infringing uses.  Defendants intend that the accused products and services be used in a manner that infringes the '699 Patent.  Further, on information and belief, Defendants Mr. Fani, MJF, Fax87, Ms. Yardan, and One Voix provided components constituting a material part of the infringing products and services in the United States.

289.   Plaintiffs have been damaged by Defendants' direct and indirect infringement in an amount to be determined at trial but no less than the reasonable royalty and late payments that would be due to Plaintiffs under the License Agreement.

290.   This is an exceptional case under 35 U.S.C. § 285.  Plaintiffs are entitled to an award of treble damages and attorneys' fees for Defendants' willful infringement.

291.   In light of the shell games and disappearance of Defendants, Plaintiffs are now, and will continue to be, irreparably harmed by the Defendants' aforementioned acts of infringement, and Plaintiffs will continue to suffer irreparable harm absent an injunction.  Plaintiffs have no adequate remedy at law.  Accordingly, Plaintiffs seek a preliminary and permanent injunction barring future infringement.

## COUNT 6

### Infringement of U.S. Patent Number 8,675,220

### (Against All Defendants)

292.   Plaintiffs restate and incorporate by reference their previous allegations above, as if fully set forth herein.

293.   AMT is the owner by assignment of the '220 Patent.  j2 is also the implied exclusive licensee of the '220 Patent and operates as such.

294.   Defendants Fax87, OnlineFaxes, SolidFax, FaxVision, eFax4less ResellFax sell and offer for sale Internet fax services that are covered literally and/or under the doctrine of equivalents by at least claim 11 of the '220 Patent.

295.   All of the Defendants collaborated to sell and/or offer for sale Internet fax products and services through websites including fax87.com, onlinefaxes.com, solidfax.com,      faxvision.com,      efax4less.com,      resellfax.com,      wiredfax.com,

FIRST AMENDED AND SUPPLEMENTAL COMPLAINT

faxeightyseven.com, fax87.net, enterprise.fax87.com, myphonefax.com, phonefax87.com and through other sites.

296.   On information and belief, 99% of the Defendants' Internet fax products and services are sold in the United States.

297.   Defendants Mr. Fani, MJF and Fax87 are alter egos of one another. Defendants Mr. Fani, MJF and Fax87 direct the operation of fax87.com, onlinefaxes.com, solidfax.com, faxvision.com, efax4less.com, resellfax.com, wiredfax.com, faxeightyseven.com, fax87.net, enterprise.fax87.com, myphonefax.com, phonefax87.com and other sites for the sale of infringing Internet fax services.

298.   On information and belief, Defendant Elnaz Fani sells, offers for sale and/or otherwise provides support for the sales of infringing Internet fax services at least through the fax87.com website.   Among other things, beginning in January 2011, Defendant Elnaz Fani has assisted with marketing and advertising the infringing Internet fax services, has directly serviced customers of the infringing Internet fax services, and has analyzed web data relating to the Internet fax services. Defendant Elnaz Fani interacts with customers on a daily basis via social media accounts and email.

299.   Defendants One Voix, Ms. Yardan, Mr. Thong, Mr. Montgomery and Mr. Beaulieu make, sell, offer for sale and/or otherwise provide support for the infringing Internet fax services through the websites fax87.com, onlinefaxes.com, solidfax.com, faxvision.com, efax4less.com, resellfax.com, wiredfax.com, faxeightyseven.com, fax87.net, enterprise.fax87.com, myphonefax.com, phonefax87.com and other sites.

300.   According to information provided on the website fax87.com, sales and support for Fax87 can be accessed by calling (866) 698-4068 from the United States, including from this District.   According to information provided on the website onlinefaxes.com, sales and support for OnlineFaxes can be accessed by calling (888) 201-4170 from the United States, including from this District.   According to information provided on the website solidfax.com, sales and support for SolidFax can be accessed by calling (866) 637-1840 from the United States, including from this District.   All three

FIRST AMENDED AND SUPPLEMENTAL COMPLAINT

numbers are directed to the same call center in the Philippines operated by Defendants One Voix and Ms. Yardan.  The operating hours for the call center are tailored and customized to the business hours of customers in the United States.  Through these telephone numbers, Defendants One Voix and Mira Yardan sell, offer for sale and otherwise support the sales of infringing Internet fax services in the United States.

301.   The websites fax87.com, onlinefaxes.com and solidfax.com also include a link for "Live Chat."  On information and belief, Defendants One Voix and Mira Yardan operate the "Live Chats" for each of these services through facilities in the Philippines. Through these "Live Chat" sessions, Defendants One Voix and Mira Yardan sell, offer for sale and otherwise support the sales of infringing Internet fax services.

302. The websites wiredfax.com, faxeightyseven.com, fax87.net, enterprise.fax87.com and phonefax87.com also re-direct to the website fax87.com and, thus, are also involved in Defendants' scheme to sell or offer for sale infringing Internet fax services.

303.   On information and belief, Defendant Mira Yardan also directly sells and/or offers for sale infringing Internet fax services at least through the fax87.com website. Based upon reports of customer interactions through the Better Business Bureau, Defendant Mira Yardan interacts directly with customers through the email address mira@fax87.com.

304.   On information and belief, Defendants Mr. Thong, Mr. Montgomery and Mr. Beaulieu also assist with selling, offering for sale, operating and supporting infringing Internet fax products and services, including through the websites fax87.com, onlinefaxes.com, solidfax.com, faxvision.com, efax4less.com, resellfax.com, wiredfax.com, faxeightyseven.com, fax87.net, enterprise.fax87.com, myphonefax.com, phonefax87.com and other sites.

305.   The Internet fax products and services offered through Defendants Fax87, Onlinefaxes, Solidfax, FaxVision, eFax4less and ResellFax are substantially the same. Each of these products and services provides for a machine-implemented method for

providing an Internet fax service, comprising: (a) receiving messages through fax transmissions on a plurality of direct inward dialing (DID) lines assigned to a plurality of users of the service, respectively, and storing raw fax documents derived from the received fax transmissions, respectively; (b) retrieving the users' account information to determine each of the users' subscriber status or subscriber classification including whether or not the user is subscribed to the Internet service; (c) making the received messages available to the users, respectively, over an Internet and in accordance with the users' account information; (d) performing the following on a per user basis according to the user's subscriber status or classification: (i) processing the raw fax documents using digital character recognition to extract text therefrom, (ii) scanning the extracted text to find one or more specified keywords therein, wherein the found keywords are a subset of the extracted text, and (iii) storing the found keywords in association with their raw fax documents in a database; (e) receiving a plurality of requests for message searches, from two or more of said plurality of users, respectively, in accordance with each user's account information; (f) processing each one of the plurality of requests by searching amongst the found keywords that are stored in the database to find ones that satisfy search criteria designated by each one of the plurality of requests; and (g) making results of the searching available over the Internet to said two or more of the plurality of users, respectively, in accordance with each user's account information, as recited in claim 1 of the '220 patent.

306.   The infringement of the '220 Patent by each Defendant was and continues to be willful.  Each of the defendants has acted intentionally and recklessly, despite their knowledge that their conduct constitutes infringement of the '220 Patent.

307.   On information and belief, each of the defendants has had actual knowledge of the '220 Patent since the patent issued.  On information and belief, each of the Defendants was aware that the accused products and services have been covered by the '220 Patent since it issued.

308.   Defendants' infringements have been both direct and indirect, including contributory and inducement of infringement.  Defendants' infringing activities violate 35 U.S.C. §§ 271(a) through (c).

309.   On information and belief, Defendants Mr. Fani, MJF, Fax87, Ms. Yardan and One Voix also induced others to infringe.  Defendants Mr. Fani, MJF, Fax87, Ms. Yardan and One Voix knew or should have known that their actions would induce actual infringement.

310.   On information and belief, Defendants Mr. Fani, MJF, Fax87, Ms. Yardan and One Voix contributorily infringed at least claim 1 of the '220 Patent.  Defendants Mr. Fani, MJF, Fax87, Ms. Yardan and One Voix provided and supported services that, when sold and offered for sale by the other defendants in the United States, directly infringe at least claim 1 of the '220 Patent.  Defendants Mr. Fani, MJF, Fax87, Ms. Yardan and One Voix know that their Internet fax products and services are used for practicing the methods covered by the '220 Patent.  The infringing products and services embody a material part of the claimed invention of the '220 Patent, and Defendants know that these products and services are especially designed and/or adapted for such uses that infringe the '220 Patent.  The accused Internet fax products and services, including those offered by Fax87, Onlinefaxes, Solidfax, FaxVision, eFax4less and ResellFax, are not suitable for substantial non-infringing uses.  Defendants intend that the accused products and services be used in a manner that infringes the '220 Patent.  Further, on information and belief, Defendants Mr. Fani, MJF, Fax87, Ms. Yardan, and One Voix provided components constituting a material part of the infringing products and services in the United States.

311.  Plaintiffs have been damaged by Defendants' direct and indirect infringement in an amount to be determined at trial but no less than the reasonable royalty and late payments that would be due to Plaintiffs under the License Agreement.

312.   This is an exceptional case under 35 U.S.C. § 285.  Plaintiffs are entitled to an award of treble damages and attorneys' fees for Defendants' willful infringement.

313.   In light of the shell games and disappearance of Defendants, Plaintiffs are now, and will continue to be, irreparably harmed by the Defendants' aforementioned acts of infringement, and Plaintiffs will continue to suffer irreparable harm absent an injunction.   Plaintiffs have no adequate remedy at law.   Accordingly, Plaintiffs seek a preliminary and permanent injunction barring future infringement.

## COUNT 7

### Trademark Infringement Under 15 U.S.C. § 1114(1)

### (Against Defendants Farjad Fani, Fax87, MJF, Ms. Yardan,

### One Voix, Onlinefaxes, eFax4less and Mr. Beaulieu)

314.   Plaintiffs restate and incorporate by reference their previous allegations above, as if fully set forth herein.

315.   j2's EFAX® and E-FAX® marks are valid, protectable marks duly registered with the PTO, holding Registration Nos. 3930343 and 3930341, respectively.

316.   j2 owns EFAX® and E-FAX® as trademarks/service marks, as well as other trademarks that include the EFAX® and E-FAX® marks.

317.   j2 uses its EFAX®, E-FAX® and related marks in conjunction with the promotion and sales of Internet fax goods and services throughout the United States.

318.   Defendants Farjad Fani, Fax87, MJF, Mira Yardan, One Voix, Onlinefaxes, eFax4less, Mr. Beaulieu and other related entities' use of virtually identical "efax" marks to promote and sell similar Internet fax products and services in the United States, including California, constitutes trademark infringement in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114(1).

319.   The defendants' use of the "efax" marks in interstate commerce confuses the relevant consumers and irreparably injures the value and goodwill associated with j2's EFAX®, E-FAX® and related marks.   The defendants' infringing conduct also injures j2's business, goodwill and reputation.

320.   j2 has no adequate remedy at law.   j2 is now, and will continue to be, irreparable harmed by Defendants' aforementioned acts of infringement, and unless

FIRST AMENDED AND SUPPLEMENTAL COMPLAINT

59

enjoined or otherwise restrained by the Court, Defendants will continue to infringe upon j2's FAX® and EFAX® marks, and j2 will continue to suffer irreparable harm absent an injunction.

321.   Pursuant to 15 U.S.C. § 1117, j2 is also entitled to damages for Defendants' Lanham Act violations, an accounting for profits made by Defendants on sales of the relevant products and services using the "efax" marks, as well as recovery of the costs of this action.

322.   Defendants' actions were undertaken willfully and with the intention of causing confusion, mistake or deception, making this an exceptional case entitling j2 to recover additional damages and reasonable attorneys' fees pursuant to 15 U.S.C. § 1117.

## COUNT 8
### Violation of Lanham Act, Section 43(a)
### (Unfair Competition Under 15 U.S.C. § 1125(a))
### (Against Defendants Farjad Fani, Fax87, MJF, Ms. Yardan,
### One Voix, Onlinefaxes, eFax4less and Mr. Beaulieu)

323.   Plaintiffs restate and incorporate by reference their previous allegations above, as if fully set forth herein.

324.   In light of j2's valid federal EFAX® and E-FAX® marks, which are used in conjunction with the promotion and sales of Internet facsimile goods and services, Defendants' unauthorized and infringing use of the "efax" mark in commerce to advertise and sell Internet facsimile goods and services throughout the United States, including California, constitutes unfair competition in violation of 15 U.S.C. § 1125(a).

325.   Defendants' unauthorized and infringing use of the "efax" mark is likely to deceive consumers into believing that its goods and services are those of, or associated with, j2.

326.   Defendants knew or should have known that use of the "efax" mark in commerce was likely to mislead consumers as to the origin of the parties' relevant goods and services.

---

FIRST AMENDED AND SUPPLEMENTAL COMPLAINT

60

327.   Defendants' unauthorized and infringing use of the "efax" mark in commerce to advertise, market and sell Internet facsimile products and services similar to those of j2 severely hinders fair competition.

328.   As an actual and proximate result of Defendants' willful and intentional actions, j2 has suffered damages in an amount to be determined at trial, and unless Defendants are enjoined, j2 will continue to suffer irreparable harm and damage to its business, reputation and goodwill, the purchasing public will continue to be confused and Defendants will continue to unfairly compete with j2.

329.   Pursuant to 15 U.S.C. § 1117, j2 is entitled to damages for Defendants' Lanham Act violations, an accounting for profits made by Defendants on sales of any products or services branded under and/or using the "efax" or related marks, as well as recovery of the costs of this action. Furthermore, j2 is informed and believes, and on that basis alleges, that Defendants' conduct was undertaken willfully and with the intention of causing confusion, mistake or deception, making this an exceptional case entitling j2 to recover additional damages and reasonable attorneys' fees pursuant to 15 U.S.C. § 1117.

## COUNT 9

### Unfair Competition under Cal. Bus. & Prof. Code § 17200

### (Against All Defendants)

330.   Plaintiffs restate and incorporate by reference their previous allegations above, as if fully set forth herein.

331.   Plaintiffs and Defendants are direct competitors in the Internet facsimile messaging services industry.

332.   Defendants have engaged in unfair and/or unlawful business practices within the meaning of California's Business and Professions Code § 17200 because, in California and throughout the country, and through various channels of interstate commerce, Defendants have engaged in trademark infringement and unfair competitive practices, which violate 15 U.S.C. § 1114 and 15 U.S.C. § 1125(a), respectively, and hinder fair competition, as described below.

FIRST AMENDED AND SUPPLEMENTAL COMPLAINT

333.  To evade the obligations under the Settlement Agreement and License Agreement, Defendant Fani Farjad, in collaboration with the other defendants, disguised the licensed services by offering them through other websites, including onlinefaxes.com, solidfax.com, faxvision.com, efax4less.com, resellfax.com, wiredfax.com, faxeightyseven.com, fax87.net, enterprise.fax87.com, myphonefax.com, phonefax87.com, as well as other related websites.

334.  To avoid the reporting and payment obligations under the License Agreement, Mr. Fani fled the country once this litigation was filed.  Mr. Fani has moved from country to country over the past two and a half years for the purpose of evading service and avoiding liability.  Mr. Fani has refused to provide material information required under the License Agreement, including information that would identify any purported third-party acquirer of the Fax87 business.

335.  As such, Mr. Fani and the other defendants' schemes damage fair competition within the Internet facsimile messaging services industry, and amount to unfair business practices under California law.

336.  Further, Defendants' use of the "efax" mark in conjunction with the promotion and sales of Internet facsimile products and services in California is likely to mislead or confuse consumers as to the origin of the parties' related goods and services.

337.  Defendants' infringement of j2's EFAX® and E-FAX® marks through use of the "efax" mark with closely related goods and services has damaged and continues to damage fair competition within the Internet facsimile messaging services industry, including in California.

338.  Defendants' conduct has been anticompetitive, as well as immoral, unethical, oppressive, unscrupulous and substantially injurious to consumers.

339.  Defendants' conduct is not beneficial, but in an event, the harm caused by Defendants' conduct outweighs any benefits.

340.  Pursuant to California Business and Professions Code §§ 17203 & 17206, j2 is entitled to injunctive relief, restitution and disgorgement of Defendants' profits

obtained through their unfair competitive practices, to the maximum extent permitted by law.

341.   Unless enjoined, Defendants will continue to unfairly compete with j2 in California, causing harm to the relevant consumers.

## COUNT 10

### Petition to Collect Amount of Claim

### (Against Defendants MJF and Fax87)

342.   Plaintiffs restate and incorporate by reference their previous allegations above, as if fully set forth herein.

343.   Defendant MJF appears to be an inactive corporation under Washington state law.

344.   Defendant MJF also previously purported to do business as Fax87.com.

345.   Plaintiffs seek to recover and collect the amount of their claims from any remaining undistributed assets of the corporation.

346.   If the undistributed assets of the corporation are not or may not be sufficient to satisfy the amount of the unpaid claim, and there have been distributions to shareholders, Plaintiffs seek to compel MJF and/or Fax87 to collect any amounts owing to it by directors or shareholders and to apply the collections toward payment of the claim.

### Demand for Jury Trial

347.   Plaintiffs hereby demand a jury trial on all claims, damages and any other issues presented herein that are triable to a jury.

### Relief Requested

WHEREFORE, Plaintiffs pray that the Court enter judgment against defendants and in favor of Plaintiffs as follows:

A.   Judgment that Defendants Farjad Fani, MJF, Fax87, OnlineFaxes, SolidFax, FaxVision, eFax4less, MyPhoneFax and ResellFax breached the Settlement

---

Agreement and License Agreement and the implied covenant of good faith and fair dealing;

B.    Judgment that Defendants conspired to commit and/or committed the promissory fraud described herein;

C.    Judgment that each of the Defendants has infringed the '638, '699 and '220 Patents;

D.    Judgment that each of Defendants Mr. Fani, Fax87, MJF, Ms. Yardan, One Voix, OnlineFaxes, eFax4Less and Mr. Beaulieu has infringed j2's U.S. Trademark Registration Numbers 3930341 and 3930343 and related marks;

E.    Judgment that each of Defendants Mr. Fani, Fax87, MJF, Ms. Yardan, One Voix, OnlineFaxes, eFax4Less and Mr. Beaulieu has violated Section 43(a) of the Lanham Act;

F.    Judgment that all Defendants have violated Section 17200 of California's Business and Professions Code;

G.    A preliminarily and permanent injunction forbidding the defendants and their officers, directors, agents, servants, employees, affiliates, attorneys, and all others acting in privity or in concert with them, and their parents, subsidiaries, divisions, successors and assigns from further acts of patent infringement, trademark infringement and unfair competition, including without limitation those akin to the specific infringing uses and unfair competitive practices identified herein.

H.    A judgment awarding Plaintiffs all damages adequate to compensate for the defendants' breach of contract, promissory fraud, patent infringement, trademark infringement and unfair competition, including all pre-judgment and post-judgment interest at the maximum rate permitted by law;

I.    An award of punitive damages against Defendants;

J.    A judgment awarding, pursuant to 15 U.S.C. § 1117, an accounting for profits made by the relevant defendants on sales of any products or services branded under and/or using the "efax" marks, as well as recovery of the costs of this action.

FIRST AMENDED AND SUPPLEMENTAL COMPLAINT

K.     Judgment that the case is exceptional and an award of reasonable attorneys' fees, expenses, expert fees and other costs incurred in this action under 15 U.S.C. § 1117 and 35 U.S.C. § 285;

L.     An order and judgment for disgorgement of Defendants' profits obtained through its unfair competitive practices, to the maximum extent permitted by law;

M.     An award of reasonable attorneys' fees incurred in this action under California Code of Civil Procedure § 1021.5;

N.     An order granting Plaintiffs' petition to collect the amount of their claims from any remaining undistributed assets of MJF, a purportedly inactive corporation;

O.     Judgment awarding costs of suit;

P.     Such other relief as the Court determines to be just and proper.

DATED:  April 15, 2016          By:     */s/ Guy Ruttenberg*

Guy Ruttenberg
RUTTENBERG IP LAW, A
PROFESSIONAL CORPORATION

*Attorney for Plaintiffs j2 Cloud Services, Inc. and Advanced Messaging Technologies, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 15, 2016, I authorized the electronic filing of the foregoing FIRST AMENDED AND SUPPLEMENTAL COMPLAINT FOR: (1) BREACH OF CONTRACT; (2) BREACH OF IMPLIED COVENANT OF GOOD FAITH & FAIR DEALING; (3) PROMISSORY FRAUD; (4) INFRINGEMENT OF U.S. PATENT NO. 6,208,638; (5) INFRINGEMENT OF U.S. PATENT NO. 8,310,699; (6) INFRINGEMENT OF U.S. PATENT NO. 8,675,220; (7) TRADEMARK INFRINGEMENT; (8) UNFAIR COMPETITION UNDER LANHAM ACT; (9) UNFAIR COMPETITION UNDER CAL. BUS. AND PROF. CODE § 17200; AND (10) PETITION TO COLLECT CLAIM FROM INACTIVE CORPORATION with the Clerk of the Court using the CM/ECF system.

Executed on April 15, 2016 in Los Angeles, California.

By:      */s/ Guy Ruttenberg*

GUY RUTTENBERG

CERTIFICATE OF SERVICE