O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| j2 GLOBAL, INC. and ADVANCED MESSAGING TECHNOLOGIES, INC., | ) ) ) | Case No. CV 13-05353 DDP (AJWx) |
| | ) ) | ORDER RE: DEFENDANTS FARJAD FANI, ELNAZ FANI, STEVEN THONG WAY SEN, |
| Plaintiff, | ) ) ) | AND CHARLES MONTGOMERY'S MOTIONS TO DISMISS |
| v. | ) ) | [Dkt. Nos. 55, 59, 66, 72] |
| FAX87.COM, FARJAD FANI, MATT JOHNSON FINANCE INC., | ) ) | |
| Defendants. | | |

Before the court is Defendant Farjad Fani's Motion to Dismiss for Insufficient Service of Process under Rule 12(b)(5); Defendant Elnaz Fani's Motion to Dismiss for Insufficient Service of Process and Lack of Personal Jurisdiction under Rule 12(b)(2) and (5); Defendant Steven Thong Way Sen's Motion to Dismiss for Insufficient Service of Process and Lack of Personal Jurisdiction under Rule 12(b)(2) and (5); and Defendant Charles Montgomery's Motion to Dismiss for Lack of Personal Jurisdiction Under Rule 12(b)(2). Having considered the submissions of the parties and heard oral argument, the court grants the motion in part, denies the motion in part, and adopts the following Order.

## I. BACKGROUND

This court has explained the factual background of this case in connection with a prior order regarding Defendant Farjad Fani's Motion to Dismiss. (Dkt. 32.) In brief, Plaintiff j2 Global, Inc. is the holder of two patents related to the transmission and storage of facsimile and audio messages. (First Amended and Supplemental Complaint ("FASC" or "Amended Complaint") ¶ 25, 29.) In a prior action, j2 Global, Inc. and Advanced Messaging Technologies, Inc. (collectively, "j2") brought suit against Defendants Fax87, Farjad Fani, and Matt Johnson Finance, Inc. ("MJF") for patent infringement. (Id. ¶ 45.) The parties ultimately settled the case and j2 entered into a patent license agreement with MJF (doing business as Fax87.com). (Id. ¶¶ 46-47.)

On July 24, 2013, Plaintiffs filed a new action against Mr. Fani, Fax87, and MJF asserting breach of contract in connection with the licensing agreement for, *inter alia*, failure to provide royalty reports, remit royalty payments, and selling the business without timely notice. (Complaint ¶ 42.) On February 5, 2014, this Court issued an order finding service of process insufficient and dismissing the Complaint against Mr. Fani. (Dkt. 32.)

On April 15, 2016, j2 filed the Amended Complaint reasserting breach of license agreement claims against Mr. Fani and MJF and raising, for the first time, claims for patent infringement, trademark infringement, and unfair competition against Mr. Fani, his sister, Elnaz Fani, Steven Thong, Charles Montgomery, and other individuals and corporate entities. (Dkt. 43.) j2 included the various entities--OnlineFaxes, FaxVision, eFax4Less, MyPhone Fax, ResellFax, OneVoix--as defendants on the theory that they are

2

either alter egos or affiliates of one another working in concert to disguise the licensing breach and infringement from j2. (FASC ¶¶ 81, 84.) j2 added the individual defendants alleging that they were affiliated with the various entities. (FASC ¶¶ 125, 130, 135.)

Now before the court are Defendants Farjad Fani, Elnaz Fani, Steven Thong, and Charles Montgomery's individual Motions to Dismiss. Mr. Fani moves to dismiss for insufficient process. (Dkt. 55.) Ms. Fani and Mr. Thong move to dismiss for insufficient process and lack of personal jurisdiction. (Dkt. 59, 66.) Mr. Montgomery moves to dismiss for lack of personal jurisdiction. (Dkt. 72.) Rather than recount here the allegations concerning each individual Defendant's association with various entities and the efforts to serve them, the Court will state the facts as needed to address each issue.

## II. LEGAL STANDARD

### A. Motion to Dismiss Under Rule 12(b)(5)

"[S]ervice of summons is the procedure by which a court having venue and jurisdiction of the subject matter of the suit asserts jurisdiction over the person of the party served." Mississippi Publ'g Corp. v. Murphree, 326 U.S. 438, 444-445 (1946). "Before a federal court may exercise personal jurisdiction over a defendant, the procedural requirement of service of summons must be satisfied." Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co., 484 U.S. 97, 104 (1987). Accordingly, Federal Rule of Civil Procedure 12(b)(5) provides that insufficient service may be a basis for dismissal of a complaint. Once service is challenged, the plaintiff bears the burden of establishing that service was valid. Brockmeyer v. May, 383 F.3d 798, 801 (9th Cir. 2004).

Requirements for the contents and manner of service are established by Rule 4. Under Rule 4(e)(2)(B), a person may be served by "leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there."  Rule 4(e)(1) further provides that process may be served in accordance with "state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made." The applicable state law is described below, as necessary.

**B. Motion to Dismiss Under Rule 12(b)(2)**

Federal Rule of Civil Procedure 12(b)(2) provides that a court may dismiss a suit for lack of personal jurisdiction.  The plaintiff has the burden of establishing that jurisdiction exists, but need only make "a prima facie showing of jurisdictional facts to withstand the motion to dismiss." Pebble Beach Co. v. Caddy, 453 F.3d 1151, 1154 (9th Cir. 2006). "Although the plaintiff cannot simply rest on the bare allegations of its complaint, uncontroverted allegations in the complaint must be taken as true." Schwarzenegger v. Fred Martin Motor Co., 374 F.3d 797, 797 (9th Cir. 2004) (internal quotations and citation omitted).  Conflicts between parties over statements contained in affidavits must be resolved in the plaintiff's favor.  Id.

**III. INSUFFICIENT PROCESS CLAIMS**

**A. Farjad Fani**

**1. Relevant Facts**

After this Court issued its prior order granting Mr. Fani's first Motion to Dismiss on February 5, 2014, j2 renewed its effort to serve Mr. Fani. (Declaration of Agostino von Hassell ¶ 6.) In

2013 and 2014, j2 employed investigators who were unable to
conclusively determine Mr. Fani's whereabouts. (Id.) Around this
time, from January 2014 to August 2015, Mr. Fani reports residing
in Bellevue, Washington, where he had returned from overseas in
order to care for his terminally ill father. (Declaration of Farjad
Fani ("Farjad Decl.") ¶ 4.) In August 2015, Mr. Fani moved back
overseas after his father passed away. (Id.) In 2015, j2's
investigator reports connecting Mr. Fani with an apartment in Kuala
Lampur but states that Mr. Fani had already left for India by the
time process servers arrived. (von Hassell Decl. ¶¶ 14-15.)

On February 3, 2016, j2's process server attempted to serve
Mr. Fani at 12707 NE 120th St., Unit B11, Kirkland, WA 98033
("12707 Residence"). (Dkt. 36.) It is undisputed that Mr. Fani's
brother Sarfaraz Fani resides at this address. (Declaration of
Sarfaraz Fani in Support of Farjad Fani's Motion to Dismiss
("Sarfaraz First Decl.") ¶ 4.) j2 contends that Mr. Fani also
resided at this address. (Plaintiffs' Omnibus Opposition to
Defendants' Motion to Dismiss ("Opp'n") at 9).

On April 15, 2016, j2 filed its Amended Complaint with the
court. (Dkt. 43.) On April 19, 2015, j2's process server
purportedly served Mr. Fani in the same manner by leaving a Summons
and the Amended Complaint with his brother Sarfaraz at the 12707
Residence. (Dkt. 46.)

### 2. 12(b)(5) Claim

As noted above, a plaintiff is allowed to utilize the service
procedures of the state in which the district court is located
(California) or where service is made (Washington). Fed. R. Civ. P.
4(e)(1). Washington law echoes the federal rules and provides that

1  an individual may be served by "leaving a copy of the summons at

2  the house of his or her usual abode with some person of suitable

3  age and discretion then resident therein." Wash. Rev. Code §

4  4.28.080(16). California law provides that "a summons may be served

5  by leaving a copy of the summons and complaint at the person's

6  dwelling house, usual place of abode, usual place of business, or

7  usual mailing address." Cal. Code Civ. P. § 415.20(b). While

8  California law allows service at an individual's mailing address,

9  in addition to usual place of abode, it also requires that a

10  plaintiff attempt personal service "with reasonable diligence"

11  before utilizing substituted service. Id. "Two or three attempts to

12  personally serve a defendant at a proper place ordinarily qualifies

13  as 'reasonably diligence.'" Am. Express Centurion Bank v. Zara, 199

14  Cal. App. 4th 383, 389 (2011). A copy of the summons and complaint

15  must also be mailed to the person to be served at the place where

16  the summons and complaint were left. Cal. Code Civ. P. § 415.20(b).

17  The parties disagree about whether Mr. Fani's service should

18  be evaluated with reference to Washington's rule for serving

19  someone at their "usual abode" or California's rule for serving

20  someone at their "usual place of abode . . . or usual mailing

21  address" with its additional diligence requirements. Regardless of

22  which law we apply, the case must be dismissed if j2 cannot make a

23  prima facie case that 12707 NE 120th St., Unit B11, Kirkland, WA

24  98033 is either Mr. Fani's "place of abode" or his "usual mailing

25  address."

26  Under Washington law, the term "'usual abode' . . . is to be

27  liberally construed to effectuate service and uphold jurisdiction

28  of the court." Sheldon v. Fettig, 129 Wash. 2d 601, 609 (1996) (en

1    banc). Washington has elaborated on this definition by explaining

2    that place of abode "must be taken to mean such center of one's

3    domestic activity that service left with a family member is

4    reasonably calculated to come to one's attention within the

5    statutory period for defendant to appear." Id. at 610 (internal

6    quotations and citations omitted). Likewise, in California, "[t]he

7    critical question is whether a place . . . has 'sufficient indicia

8    of permanence' – i.e., it is not a temporary residence." United

9    States v. Wen-Bing Soong, No. C-13-4088, 2014 WL 988632, at *2

10   (N.D. Cal. Mar. 10, 2014).

11       Mr. Fani argues he is entitled to dismissal because there is

12   no credible evidence he ever lived or received mail at his

13   brother's residence, even on a temporary basis. (Defendant Farjad

14   Fani's Motion to Dismiss ("Farjad Mot.") 8-9.) In support, Mr. Fani

15   submitted declarations by himself and his brother attesting that he

16   does not now nor has he ever lived at the residence. (Farjad Decl.

17   ¶ 3; Sarfaraz First Decl. ¶ 3.) Mr. Fani further states that he has

18   only visited the residence "once or twice since they have lived

19   there." (Farjard Decl. ¶ 3.) Finally, Mr. Fani notes that the

20   process server never reported seeing Mr. Fani at the residence and

21   that process server admits that he was informed by Sarfaraz Fani

22   that Mr. Fani does not reside at the address.(See Dkt. 36.)

23       In their opposition, j2 argues that there is sufficient

24   evidence to establish a prima facie case that the residence is

25   either Mr. Fani's usual abode or mailing address. (Opp'n 9-10.) As

26   evidence, j2 relies on a printout of a Westlaw PeopleMap report for

27   Farjad Fani that lists "12707 NE 120th St." as a reported address.

28   (Declaration of Guy Ruttenberg, Exhibit 14 at 3.) j2 also relies on

1  a report by the process server that he "spoke with the neighbor who
2  confirmed that Farjad Fani lives at this location." (Dkt. 46 at 6.)
3  The process server also took a photograph of a Maserati, which the
4  neighbor stated belongs to Mr. Fani. (Id. at 6, 8-10.) With regards
5  to the Maserati, j2 notes there is a picture on Mr. Fani's Facebook
6  page with an identical car and a "sold" sign. (Ruttenberg Decl.,
7  Ex. 16.)

8      j2 also raises two alternative arguments in favor of denying
9  Mr. Fani's Motion to Dismiss. First, relying on Travelers Cas. &
10  Sur. Co. Of Am. V. Brenneke, 551 F.3d 1132, 1135-26 (9th Cir.
11  2009), j2 argues that it has "substantially complied" with the
12  rules of service and thus the court should assert jurisdiction.
13  (Opp'n 11-12.) Second, j2 argues that Mr. Fani was served through
14  his corporation, MJF d/b/a Fax87. (Id. at 12 (citing Certified
15  Bldg. Prods., Inc. v. N.L.R.B., 528 F.2d 968, 969 (9th Cir. 1976)
16  (holding that where a corporation is an alter ego of the individual
17  "service upon the corporation is the equivalent of service upon the
18  individual.")).) In support, j2 notes that Mr. Fani is the sole
19  member of MJF and that, at times, he has even operated his
20  businesses without corporate forms because they were suspended for
21  failing to meet minimal corporate formalities. (Opp'n 12.)

22      In his reply, Mr. Fani questions the credibility of the
23  statement by the unidentified neighbor. (Defendant Farjad Fani's
24  Reply in Support of Motion to Dismiss ("Farjad Reply") 7.) In an
25  earlier filing, Mr. Fani noted that his brother Farough lives at
26  the residence and suggested that the neighbor might have mistaken
27  the two individuals. (Farjad Mot. 9.) Mr. Fani also states that
28  although he contributed funds to the photographed Maserati, he is

1  not the registered owner and the car remains parked at Sarfaraz's

2  residence because it has a covered garage. (Farjad Reply 7;

3  Declaration of Farjad Fani in Support of Reply ¶ 9.)

4      Based on the evidence presented, the Court concludes that j2

5  has not made a prima facie case that the 12707 Residence was ever

6  Mr. Fani's usual abode or mailing address. Both j2's PeopleMap

7  evidence and the picture of the Maserati are, at best,

8  inconclusive. The PeopleMap printout lists the source of the

9  address as "People Find." (Ruttenberg Decl., Ex. 16.) It provides

10 no additional information about how this particular address was

11 identified. Furthermore, the printout notes over a dozen addresses

12 for Mr. Fani, some of which are reported at overlapping dates,

13 casting doubt on the reliability of information gleaned from the

14 report. Likewise, Mr. Fani has provided a plausible explanation for

15 the presence of the Maserati at the residence and j2 has not

16 provided any specific evidence of ownership. j2's strongest

17 evidence is the statement by a neighbor that Mr. Fani lives there.

18 This same neighbor stated, however, that Mr. Fani owns a car, which

19 the evidence suggests he may not own. Given the numerous

20 declarations filed stating that Mr. Fani does not live at the

21 residence, the absence of any other evidence indicating Mr. Fani

22 lives at the residence, and the lack of any other information about

23 how the neighbor knows that Mr. Fani lives there, the court cannot

24 conclude that Plaintiffs' have met their burden of establishing

25 that service is valid.

26     With regard to j2's alternative arguments, the claim that it

27 has "substantially complied" is inapposite. Brenneke was a case

28 where an individual was properly visually identified at home but

1  refused to open the door to accept service. 551 F.3d at 1134. In

2  such a circumstance, the court declined to require in-hand service

3  but expressly distinguished a case where service was left with a

4  defendant's mother at a house that was not the defendant's house as

5  an example of insufficient service. Id. at 1137 (discussing Levens

6  v. Koser, 126 Or. App. 399 (1994).)

7      Turning to the alter ego argument, a plaintiff must assert (1)

8  that there is such a unity of interest and ownership between the

9  corporation and its equitable owner that the separate personalities

10 of the corporation and the shareholder do not in reality exist; and

11 (2) that there would be an inequitable result if the acts in

12 question are treated as those of the corporation alone.

13 Neilson v. Union Bank of California, N.A., 290 F. Supp. 2d 1101,

14 1115 (C.D. Cal. 2003). "Conclusory allegations of 'alter ego'

15 status are insufficient to state a claim. Rather, a plaintiff must

16 allege specifically both of the elements of alter ego liability, as

17 well as facts supporting each." Id. (citing In re Currency

18 Conversion Fee Antitrust Litigation, 265 F.Supp.2d 385, 426

19 (S.D.N.Y. 2003)). "Factors that courts have found militated towards

20 finding alter ego liability include commingling of assets,

21 treatment of the assets of the corporation as the individual's own,

22 failure to maintain corporate records, employment of the same

23 employees and attorneys, undercapitalization, and use of the

24 corporation as a shell for the individual." Ontiveros v. Zamora,

25 2009 WL 425962, at *7 (E.D. Cal. Feb 20, 2009).

26      Here, j2's allegations cannot support the application of the

27 alter ego doctrine. See Calista Enterprises Ltd. v. Tenza Trading

28 Ltd., No. 3:13-cv-01045-SI, 2014 WL 3670856, at *3 (D. Or. July 23,

2014) (finding that mere allegations of alter ego liability are insufficient to demonstrate effective service on the individual). Aside from asserting that Mr. Fani is the sole member of MJF, j2's only other evidence is that Mr. Fani registered two corporate entities that were later dissolved for failure to comply with certain regulatory requirements. (Shuettinger Decl., Exs. 1-2.) Notably, one of these entities is MJF, which was dissolved on February 1, 2010 for failure "to file an annual list of officers/license renewal within the time set forth by law." (Id., Ex. 2.) Mr. Fani did, however, file to have the corporation reinstated the following month. (Id.) MJF was dissolved for the same reason in 2014 but Mr. Fani actually relies on this fact to argue that service on a defunct corporation is inadequate to serve its alleged alter ego. These allegations alone do not satisfy the test for alter ego liability, nor has j2 demonstrated that there would be an inequitable result if MJF is not treated as Fani's alter ego.

### 3. E-mail Service

Given that this Court has concluded Mr. Fani was not properly served, it turns to j2's alternative request, raised in its opposition papers, seeking leave to re-serve Mr. Fani via e-mail.

California Code of Civil Procedure section 413.30 provides that "the court in which the action is pending may direct that summons be served in a manner which is reasonably calculated to give actual notice to the party to be served." Cal. Civ. Pro. Code § 413.30; see also Fed. R. Civ. P. 4(f)(3) (permitting service on an individual in a foreign country by "other means not prohibited by international agreement"). The only textual requirements for

11

service under Rule 4(f)(3) is that it "must be (1) directed by the court; and (2) not prohibited by international agreement." <u>Rio Props. v. Rio Int'l Interlink</u>, 284 F.3d 1007, 1014 (9th Cir. 2002). Courts are also, as always, limited by the requirement that service must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objection." <u>Mullane v. Cent. Hanover Bank & Trust Co.</u>, 339 U.S. 306, 214 (1950). Precedent on the subject is limited and the Ninth Circuit has left "it to the discretion of the district court to balance the limitations of e-mail service against its benefits in any particular case." <u>Rio Props.</u>, 284 F.3d at 1018.

j2 argues that e-mail service is justified because Mr. Fani has been evading service for three years, several private investigators have been unsuccessful at tracking Mr. Fani, and j2 has communicated with Mr. Fani through a valid e-mail address. (Opp'n at 15.) Mr. Fani responds that, far from evading service, he spent seventeen months in the United States taking care of his father and that he regularly updates his social media accounts to reveal his whereabouts (Fani Decl. ¶¶ 4, 6.) Mr. Fani also contends that the email address j2 wants to serve process on is not his "active, preferred email address." (Farjad Reply 10.)

On the present record, the court declines to authorize alternative service by e-mail. j2 may, however, file a separate motion seeking leave from this Court to serve Mr. Fani by e-mail.

**B. Elnaz Fani**

**1. Relevant Facts**

12

j2's efforts to serve Elnaz Fani, Farjad Fani's sister, began after j2 filed its Amended Complaint on April 15, 2016. The Amended Complaint included Ms. Fani in this action for the first time on the grounds that she provided marketing and operational support to Fax87 and the other corporate defendants. (FASC ¶¶ 13, 135.) The basis of this allegation is Ms. Fani's LinkedIn profile where she states that she was employed by Fax87, though she now denies having done any actual work for her brother's company. (FASC ¶ 136; Declaration of Elnaz Fani ("Elnaz Decl." ¶ 7.)

As with Mr. Fani, j2 purportedly served Ms. Fani at the residence at 12707 NE 120th St., Unit B11, Kirkland, WA 98033 (Dkt. 47.) Likewise, Ms. Fani denies residing at the address except for approximately a ten-day stay in July 2015 when Ms. Fani and her mother stayed with Sarfaraz Fani while they were in the process of moving between homes after her father passed away. (Elnaz Decl. ¶3; Declaration of Sarfaraz Fani in Support of Elnaz Fani's Motion to Dismiss ("Sarfarz Second Decl.") ¶3).

### 2. 12(b)(5) Claim

Because j2 attempted to serve Ms. Fani in Washington in the same manner as Mr. Fani, the court relies on the same legal standards to guide its analysis. See supra Part III.A.2. Here, again, the sufficiency of process turns on whether Ms. Fani was served at a location that constitutes her "place of abode" or "usual mailing address."

Ms. Fani argues that the Amended Complaint should be dismissed because the 12707 Residence is not her place of abode. Although Ms. Fani admits that she stayed at the residence for ten days in July 2015, she contends that stay did not have any "indicia of

permanence." <u>United States v. Wen-Bing Soong</u>, No. C-13-4088, 2014
WL 988632, at *2 (N.D. Cal. Mar. 10, 2014). Ms. Fani also admits
that she temporarily listed the 12707 Residence as her mailing
address while her family moved to a new apartment complex called
Piedmont but argues that does not make the place her "usual mailing
address." (Elnaz Fani's Motion to Dismiss ("Elnaz Mot." 9 (citing
<u>Zirbes v. Stratton</u>, 187 Cal. App. 3d 1407, 1416-17 (1986) (holding
a defendant's use of a particular address to renew her driver's
license is insufficient to find it was a usual mailing address)).)

In its response, j2 notes that Ms. Fani has admitted to
listing the 12707 Residence as a mailing address and submits
another PeopleMap printout showing the 12707 Residence is
associated with her name. (Elnaz Decl. ¶4; Ruttenberg Decl., Ex.
22.) j2 also challenges Ms. Fani's claim to have moved to the
Piedmont after staying with her brother, noting that its
investigator was unable to verify the claim with an employee at the
Piedmont leasing office. (Ruttenberg Decl., Ex. 22.) The employee
was only able to confirm that someone with the last name "Fani"
came as a prospective renter in 2014. (<u>Id.</u>) Finally, j2 states that
the same unidentified neighbor who reported that Mr. Fani resided
at the 12707 Residence also reported that Ms. Fani lived there.
(Dkt. 46 at 6.)

In her reply, Ms. Fani contests the claims of the unidentified
Piedmont employee and reiterates that she lived at the Piedmont
from July 10, 2015 until approximately May 2016. In support, her
brother Farzam Fani provided lease documents showing that he began
a lease at the Piedmont on July 10, 2015 and correspondence from
the Piedmont on May 23, 2016 confirming his move-out. (Declaration

14

1  of Farzam Fani, Exs. A, B.) He also stated that Ms. Fani, along

2  with their mother, lived with him at the Piedmont and that they now

3  all live together in Redmond, Washington. (Farzam Decl. ¶ 2,3.)

4         On the present record, the court concludes that j2 has not

5  established that the 12707 Residence was either Ms. Fani's place of

6  abode or usual mailing address. In addition to the PeopleMap

7  printout and the single statement of a neighbor, which the court

8  concluded was insufficient in Mr. Fani's case, j2 has only offered

9  Ms. Fani's own admission that she temporarily listed Mr. Fani's

10 residence as a mailing address. This instance, in light of other

11 evidence that Ms. Fani resided elsewhere with her parents and her

12 brother Farzam Fani, does not substantiate j2's contention that the

13 12707 Residence was her "usual mailing address."

14        Because the court finds j2 has not carried its burden to show

15 that service of process upon Ms. Fani was sufficient, the court

16 does not reach Ms. Fani's motion to dismiss under Rule 12(b)(2).

17 See Omni Capital, 484 U.S. at 104.

18             **3. E-mail Service**

19        The court declines to grant leave to serve Ms. Fani by e-mail.

20 See supra Part III.A.3. Ms. Fani's brother Farzam Fani has filed a

21 declaration that, as of June 6, 2016, Ms. Fani, Farzam, and their

22 mother live in Redmond, Washington. (Farzam Decl. ¶ 3.) Further,

23 the record contains no evidence that Ms. Fani has not lived

24 continuously in Washington. j2's inability to identify Ms. Fani's

25 precise address does not give rise to the inference that she is

26 attempting to evade service nor does it justify authorizing

27 alternate service in this case.

28        **C. Steven Thong**

15

1        **1. Relevant Facts**

2    Defendant Steven Thong has been a full-time employee for Faxcore,

3    where he now works as Vice-President of product development.

4    (Declaration Steven Thong Way Sen ("Thong Decl.") ¶ 5.) j2 first

5    attempted to serve Mr. Thong after filing its Amended Complaint on

6    April 15, 2016. The Amended Complaint included Mr. Thong in this

7    action for the first time on the grounds that he offered

8    operational support for Fax87, OnlineFaxes, and other corporate

9    Defendants. (FASC ¶ 125.)

10        On April 20, 2016, j2 purportedly served Mr. Thong by leaving

11   a copy of the Amended Complain and Summons at the office of his

12   employer, Faxcore, located at 19590 East Main Street, Suite 207,

13   Parker, Colorado (the "Faxcore Office."). (Dkt. 53.) The proof of

14   service states that the documents were left with the office manager

15   at Faxcore, Janine Ackerson. (Id.)

16       **2. 12(b)(5) Claim**

17        As noted above, the Federal Rules of Civil Procedure allow a

18   plaintiff to serve process according to specified federal

19   procedures as well as by the procedures of the state in which the

20   district court is located (California) or where service is made

21   (Colorado). Fed. R. Civ. P. 4(e) The court previously stated the

22   standards governing service under California law at a "person's

23   dwelling house, usual place of abode, usual place of business, or

24   usual mailing address." Cal. Code Civ. P. § 415.20(b). Under

25   Colorado law, personal service upon an individual can also be

26   accomplished by leaving a copy of the Summons and Complaint "at the

27   person's usual workplace, with the person's supervisor, secretary,

28   administrative assistant, bookkeeper, human resources

representative or managing agent." Colo. R. Civ. P. 4(e)(1). Under Colorado, there is no additional diligence or mailing requirement if personal service is accomplished at a person's workplace in the described manner. See id.

As an initial matter, Mr. Thong contends that the sufficiency of his service can only be evaluated under either federal or California law but not Colorado law. First, he argues that "Colorado law does not provide for service to the authorized agent of an individual person or for substituted service on an individual absent a court order." (Steven Thong's Motion to Dismiss ("Thong Mot." 5 n.1) (citing Col. R. Civ. P. 4(e), (f)).) Because there was no court order here, Mr. Thong asserts service under Colorado law is invalid. Second, Mr. Thong argues that because j2's Proof of Service states that he was served by "substituted service," j2 cannot now claim that he was served according to Colorado's rules for personal service. (Steven Thong's Reply in Support of Motion to Dismiss ("Thong Reply") 3-4.) Both arguments are unavailing.

First, Mr. Thong's argument that serving an individual at their "usual workplace" requires a court order relies on a misreading of the Colorado Rules of Civil Procedure. While Colorado Rule of Civil Procedure 4(f) states that a party must obtain a court order before attempting substituted service, the rule expressly begins by stating that the provision only comes into effect "[i]n the event that a party attempting service of process by personal service under section (e) is unable to accomplish service . . . ." Turning to Rule 4(e), the rule clearly states: "Personal service shall be as follows . . . (1) Upon a natural person whose age is eighteen years or older by delivering a copy

1   thereof to the person . . . or by leaving a copy thereof . . . at

2   the person's usual workplace . . . ." Colo R. Civ. P. 4(e). Thus,

3   in Colorado, service at a person's usual workplace is defined as a

4   form of personal service not as a form of substituted service

5   requiring a court order. Likewise, Colorado Supreme Court cases

6   discussing service at one's "usual workplace" make no mention of a

7   the substituted service requirements. See. e.q., Goodman

8   Associates, LLC v. WP Mountain Properties, LLC, 222 P.3d 310, 316

9   (Colo. 2010).

10      Mr. Thong's second argument also finds no support in either

11  case law or the relevant rules of civil procedure. Mr. Thong is

12  correct to note that the Proof of Service form j2 filed in the

13  record states that he was served "by substituted service." (Dkt.

14  53.) But the form does not specify which state law was invoked.

15  Moreover, the only case Mr. Thong cites in support of his argument

16  is a case addressing whether a plaintiff who attempted service by

17  federal waiver could later claim to have attempted service under

18  state law. Because the waiver request expressly included language

19  stating "this is not a formal summons or notification from the

20  Court" and because "[w]aiving service under the federal rules is a

21  uniquely federal method of serving process," the court concluded

22  that service was invalid in that case. Gonzales v. Thomas Built

23  Buses, Inc., 268 F.R.D. 521, 525 (M.D. Penn. 2010). Here, j2's only

24  error was to state that it had made service by "substituted

25  service" even though the actual service made constitutes "personal

26  service" under Colorado law. Even the fullest reading of Mr.

27  Thong's argument would not require j2 to newly serve Mr. Thong but

28  instead only to file a new piece of paper with the correct

1   designation. To dismiss on this basis "would further the kind of

2   unnecessary . . . disputes over legal technicalities" that would

3   only frustrate the aims of the Colorado rules of service. Falco v.

4   Nissan N. Am. Inc., 987 F. Supp. 2d 1071, 1080 (C.D. Cal. 2013)

5   (discussing California service process statutes).

6       Given that it is permissible to serve Mr. Thong under Colorado

7   law, the only remaining question is whether the requirements of

8   Rule 4(e) were met. There is no dispute in the record that the

9   Faxcore Office is Mr. Thong's "usual workplace" or that the

10  documents were actually left with Janine Ackerson, an office

11  manager at Faxcore. (Thong Decl. ¶¶ 3, 5.) Plaintiff's only

12  contention is that Ms. Ackerson was not authorized to receive

13  service on Mr. Thong's behalf. (Thong Mot. 7-8.) Under Colorado

14  Rule 4(e), however, there is no requirement that when service is

15  delivered at a person's usual work place it has to be left with an

16  authorized agent. See Colo. R. Civ. P. 4(e)(1). To the contrary,

17  service can either be delivered "at the person's usual workplace

18  with the person's supervisor, secretary, administrative assistant,

19  bookkeeper, human resources representative or managing agent; or by

20  delivering a copy to a person authorized by appointment . . . ."

21  Id. (emphasis added). The only question is whether an office

22  manager qualifies as an employee that can receive service at

23  someone's usual workplace. The Colorado Supreme Court has explained

24  that the employee does not need a title from the enumerated list

25  but instead the relevant inquiry is whether "service is made upon

26  an employee whose position presumptively includes delivery of

27  papers to the relevant party." Goodman Associates, LLC v. WP

28  Mountain Properties, LLC, 222 P.3d 310, 317 (Colo. 2010). There is

1  no evidence in the record, nor does Mr. Thong argue, that an office

2  manager's duties would not presumptively include delivery of papers

3  to a Vice-President at an office. Thus, the court concludes that

4  Mr. Thong was validly served under Colorado law and denies Mr.

5  Thong's Motion to Dismiss under Rule 12(b)(5).

6  **IV. PERSONAL JURISDICTION CLAIMS**

7      **A. Relevant Factual Background**

8      Until filing its Amended Complaint, j2 had focused primarily

9  on the actions of Farjad Fani and MJF. In its Amended Complaint, j2

10  raises for the first time claims against other individual

11  defendants, including Steven Thong and Charles Montgomery for

12  fraud, patent infringement, trademark infringement, and unfair

13  competition. (Dkt. 43; Opp'n 21.) The accusations against Thong and

14  Montgomery revolve primarily around their alleged involvement with

15  the websites MyPhoneFax and OnlineFaxes.

16      According to j2, MyPhoneFax and OnlineFaxes are either alter

17  egos and/or affiliates of MJF and Fax87 established to obscure

18  unlawful infringing activities. (FASC ¶¶7, 11; Opp'n 4.) j2 notes

19  that the phone numbers associated with the various entities connect

20  to the same call center in the Philippines, the companies offer the

21  same services, share the same offices, and are owned by an unnamed

22  individual in Washington. (Ruttenberg Decl. ¶ 2.)

23      Mr. Thong is a resident of Castle Rock, Colorado who works for

24  Faxcore, a company not named in this action. (Thong Decl. ¶ 2, 5.)

25  Mr. Montgomery is a resident of Fairhope, Alabama. (Montgomery

26  Decl. ¶ 2.) According to j2, until July 2015, "Steven Thong" was

27  identified as the Chief Technology Officer (CTO) on the

28  onlinefaxes.com website and "Charles Montgomery" was identified as

the Chief Marketing Officer (CMO). (FASC ¶¶ 126, 131.) On or about July 25, 2015, j2 alleges that the websites were updated to delete Steven Thong and Charles Montgomery's names and instead list "Steven Arasu" as the CTO and "Charles Newsom" as the CMO. (Id.) According to a cached version of the website, "Steven Arasu" joined OnlineFaxes in October 2012 and "is directly responsible for innovation while ensuring overall scalability and availability." (FASC ¶127; FASC, Ex. 21.) j2 also submits a LinkedIn page where Mr. Thong lists himself as the CTO of MyPhoneFax from August 2013. (FASC, Ex. 27.) As for "Charles Newsom," the website states that his "current role as a Director of Marketing, allows him the opportunity to work hands on with SEO, PPC, Feed management, and all Digital Marketplaces." (FASC ¶132, FASC, Ex. 21.)

Mr. Thong admits to once listing himself as the CTO of MyPhoneFax and concedes doing work as an independent contractor for onlinefaxes.com but denies that he was ever an employee of onlinefaxes.com or that he ever used the name Steven Arasu. (Thong Decl. ¶ 5.) Mr. Montgomery also admits to working for an onlinefaxes.com as an independent contractor but states that his duties were limited to improving the search engine ranking of the website. (Declaration of Charles Montgomery ¶ 3.) He further states that he was terminated as of August 2015 because he did not do enough work, he was never an employee of onlinefaxes.com, and he has never used the name "Charles Newsom" or requested it be used on the onlinefaxes.com website. (Montgomery Decl. ¶4, 5.)

On the basis of this association, j2 alleges that Thong and Montgomery "provide[] operational support for Fax87, OnlineFaxes, SolidFax, FaxVision, eFax4less, Myphonefax and ResellFax." (FASC

¶125, 130.) j2 also alleges they "make, sell, offer for sale and/or
otherwise provide support for the infringing Internet fax
services." (Id. ¶ 252.) And finally j2 alleges they also "assist
with selling, offering for sale, operation and/or supporting
infringing Internet fax products and services." (Id. ¶ 257.)

**B. Legal Standard**

District courts have the power to exercise personal
jurisdiction to the extent authorized by the law of the state in
which they sit.  Fed. R. Civ. P. 4(k)(1)(A); Panavision Int'l, L.P.
v. Toeppen, 141 F.3d 1316, 1320 (9th Cir. 1998). Because
California's long-arm statute authorizes personal jurisdiction
coextensive with the Due Process Clause of the United States
Constitution, see Cal. Code Civ. Proc. § 410.10, this Court may
exercise personal jurisdiction over a nonresident defendant when
that defendant has "at least 'minimum contacts' with the relevant
forum such that the exercise of jurisdiction 'does not offend
traditional notions of fair play and substantial justice.'"
Schwarzenegger v. Fred Martin Motor Co., 374 F.3d 797, 801 (9th
Cir. 2004) (quoting Int'l Shoe Co. v. Washington, 326 U.S. 310, 316
(1945)).  The defendant's contacts with the forum must be of such a
quality and nature that the defendants could reasonably expect
"being haled into court there." World-Wide Volkswagen Corp. v.
Woodson, 444 U.S. 286, 297 (1980).

Personal jurisdiction may be either general or specific.  See
Schwarzenegger, 374 F.3d at 801. In this case, Plaintiffs only
contend that this Court has specific jurisdiction over Defendants.
(Opp'n at 17.)

1    The Ninth Circuit analyzes specific jurisdiction according to

2  a three-prong test:

3        (1) The non-resident defendant must purposefully direct his
         activities or consummate some transaction with the forum or
4        resident thereof; or perform some act by which he purposefully
         avails himself of the privilege of conducting activities in
5        the forum, thereby invoking the benefits and protections of
         its laws;
6        (2) the claim must be one which arises out of or relates to
         the defendant's forum-related activities; and
7        (3) the exercise of jurisdiction must comport with fair play
         and substantial justice, i.e. it must be reasonable.
8
   Id. at 802.   "If the plaintiff succeeds in satisfying both of the
9
   first two prongs, the burden then shifts to the defendant to
10
   'present a compelling case' that the exercise of jurisdiction would
11
   not be reasonable."   Id. at 802 (citing Burger King Corp. v.
12
   Rudzewicz, 471 U.S. 452, 476-78 (1985)).
13
        **C. Analysis**
14
        Both parties have made strong arguments in support of their
15
   positions on the question of whether this court may exercise
16
   personal jurisdiction over Defendants Thong and Montgomery. The
17
   court concludes, however, that the record is not sufficiently
18
   developed to enable the court to reach a finding on the issue. In
19
   circumstances where "pertinent facts bearing on the question of
20
   jurisdiction are controverted or where a more satisfactory showing
21
   of the facts is necessary," a district court may grant
22
   jurisdictional discovery.   Borschetto v. Hansing, 539 F.3d 1011,
23
   1020 (9th Cir.2008). That is, if more facts are needed to determine
24
   jurisdiction, a granting of jurisdictional discovery is proper.
25
   Laub v. U.S. Dep't of the Interior, 343 F.3d 1080, 1093 (9th Cir.
26
   2003). Accordingly, the court will grant Plaintiffs' request to
27
   conduct jurisdictional discovery. (Opposition at 24.)
28

1    Discovery shall be limited to information relevant to the

2    extent of Defendants Thong and Montgomery's contacts with

3    California and the nature of their relationship with other named

4    individual and corporate Defendants. Such discovery may also

5    include the whereabouts and contact information of other

6    Defendants. The discovery shall conclude 90 days from the date of

7    this Order.

8    **V. CONCLUSION**

9    For the reasons set forth above, Defendant Farjad Fani's and

10   Defendant Elnaz Fani's Motions to Dismiss under Rule 12(b)(5) are

11   GRANTED. Defendants Farjad Fani and Elnaz Fani are dismissed as

12   defendants in this action, without prejudice. Defendant Steven

13   Thong's Motion to Dismiss under Rule 12(b)(5) is DENIED. The Court

14   DEFERS ruling on Defendant Steven Thong's and Defendant Charles

15   Montgomery's Motion to Dismiss for lack of personal jurisdiction

16   pending jurisdictional discovery. Defendants can renew their motion

17   after jurisdictional discovery is completed if they believe there

18   remains a basis for doing so.

19

20   IT IS SO ORDERED.

21   Dated: June 24, 2016

22                          DEAN D. PREGERSON
                            United States District Judge

23

24

25

26

27

28