O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| J2 CLOUD SERVICES, INC., et al., | Case No.  13-05353 DDP (AJWx) |
| Plaintiff, | **ORDER DENYING DEFENDANT FANI'S MOTION TO DISMISS PLAINTIFFS' CLAIM FOR PROMISSORY FRAUD** |
| v. | |
| FAX87, et al., | |
| Defendants. | [Dkt. 114] |

Presently before the court is Defendant Farjad Fani's Motion to Dismiss Plaintiffs' Claim for Promissory Fraud for failure to state a claim. (Dkt. 114.) After considering the parties' submissions, the court denies the motion and adopts the following Order.

**I. BACKGROUND**

This case arises out of a dispute between Plaintiffs j2 Cloud Services ("j2") and Advanced Messaging Technologies, Inc. ("AMT") and Defendants Farjad Fani, Matt Johnson Finance, Inc. ("MJF"), and Fax87.com ("Fax87") over the use of patents for methods of conveying messages and communications electronically. (First Amended

1   Complaint ("FAC") ¶ 45.) An earlier version of this case dates back to 2011 when

2   Plaintiffs first sued Defendants for operating an Internet-based fax service, which

3   allegedly infringed upon Plaintiffs' patents. (*Id.*) According to Plaintiffs, Defendant Fani

4   was offering online fax services at the time under the Fax87 brand. (*Id.* ¶ 88.) In 2011, Fani

5   transferred the Fax87 operation to MJF, which was a company controlled by Fani. During

6   this period, Plaintiffs allege that both Fax87 and MJF were alter egos of Defendant Fani.

7   (*Id.* ¶¶ 90-99.) On April 10, 2012, the parties entered into two agreements to resolve their

8   disputes. (*See* Dkts. 43-15; 43-16.) The first was a settlement agreement signed by Fani,

9   MJF, and Plaintiffs where each party agreed to release and dismiss all claims that had

10  accrued to date with prejudice. (Dkt. 43-15.) The second was a licensing agreement

11  signed by MJF d/b/a Fax87 and Plaintiffs, which established a worldwide, non-exclusive,

12  non-divisible license to certain patents owned by Plaintiffs. (Dkt. 43-16.)[1] In exchange,

13  MJF agreed, *inter alia*, to make a lump sum payment, provide regular royalty reports,

14  make regular royalty payments, permit Plaintiffs to conduct audits, and notify Plaintiffs

15  of any changes in ownership or control. (*See* Dkt. 43-16.)

16      From July 2012 until January 2013, MJF provided royalty reports and paid royalty

17  fees in accordance with the agreement. (FAC ¶¶ 61-63.) Plaintiffs allege, however, that

18  MJF did not permit audits to verify the royalty amounts. (*Id.* ¶¶ 76-77.) In January 2013,

19  Plaintiffs allege that they stopped receiving any royalty payments. (*Id.* ¶ 63, 65.) In May

20  2013, Plaintiffs were informed by Fani that he sold the Fax87 business but allegedly

21  refused to disclose the new owner. (*Id.* ¶¶ 70-73.) Since then, Plaintiffs assert that the

22  website continues to operate and offer Internet fax services and that Plaintiffs still have

23  not received any additional royalty reports or payments. (*Id.* ¶¶ 64, 74, 80, 102.)

24      On July 24, 2013, Plaintiffs filed a complaint against Fani, MJF, and Fax87 for

25  breach of the licensing agreement and patent infringement (Dkt. 1.) MJF and Fax87 have

26  failed to respond and the Clerk has entered a default against them in this action. (Dkt.

27  _____

28  [1] Although MJF is the only Defendant that was a listed party to the licensing agreement, the actual document was signed by Fani in his capacity as an MJF officer. (*See* Dkt. 43-16.)

76.) The court dismissed the action against Fani, however, for improper service. (Dkt. 32.) Plaintiffs then attempted to locate and reserve Fani. During that time, Plaintiffs allege that MJF was dissolved and Fani transferred the online fax operation to various other companies, also named as Defendants in this action. (FAC ¶ 101.) On April 15, 2016, Plaintiffs filed their First Amended and Supplemental Complaint, which added both new defendants and additional causes of action, including a claim for promissory fraud. (FAC ¶¶ 220-244.) The court again dismissed the claims against Fani for improper service. (Dkt. 103.) However, Fani has since agreed to waive service and now moves to dismiss the claim for promissory fraud. (*See* Dkts 111; 114.)

**II. LEGAL STANDARD**

A complaint will survive a motion to dismiss when it contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  When considering a Rule 12(b)(6) motion, a court must "accept as true all allegations of material fact and must construe those facts in the light most favorable to the plaintiff." *Resnick v. Hayes*, 213 F.3d 443, 447 (9th Cir. 2000). Although a complaint need not include "detailed factual allegations," it must offer "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. Conclusory allegations or allegations that are no more than a statement of a legal conclusion "are not entitled to the assumption of truth." *Id*. at 679.  In other words, a pleading that merely offers "labels and conclusions," a "formulaic recitation of the elements," or "naked assertions" will not be sufficient to state a claim upon which relief can be granted. *Id*. at 678 (citations and internal quotation marks omitted).

"When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement of relief." *Id*. at 679. Plaintiff must allege "plausible grounds to infer" that their claims rise "above the speculative level." *Twombly*, 550 U.S. at 555. "Determining whether a complaint states

1   a plausible claim for relief" is a "context-specific task that requires the reviewing court to

2   draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

3   **III. DISCUSSION**

4   Count 3 of Plaintiffs' Complaint asserts a cause of action for promissory fraud.

5   (FAC ¶¶ 220-244.) The basis of this claim is that "[o]n or about April 10, 2012, Defendants

6   Mr. Fani, MJF and Fax87 promised to perform their obligations and abide by the terms of

7   the Settlement Agreement and License Agreement." (*Id.* ¶ 221.) The Complaint then

8   specifies that Defendants promised:

9
10         to make quarterly royalty payments for their Internet fax products and services, to submit quarterly royalty reports for their Internet fax products services, to make late-payment fees if their payments are late, to permanently mark with the licensed patent numbers, to notify j2 of any "Change of Control" event within 14 days, to allow j2 to conduct an audit of their records, to notify j2 of any change of address related to MJF's or Fax87's business location, to do any and all acts and things reasonably necessary in connection with the performance of their obligations, to refrain from selling the licensed services to third party re-sellers, and to refraining from using the eFax® mark in connection with their products and services.
11
12
13
14

15   (*Id.* ¶ 222.) Plaintiffs further allege that Defendants did not intend to perform these

16   promises and made them "with the intention of inducing reliance by Plaintiffs j2 and

17   AMT for the purposes of obtaining a dismissal and settlement of the previous litigation."

18   (*Id.* ¶ 225.) Plaintiffs state that they "reasonably relied on each of the promises . . . to

19   [their] detriment" because they "released their earlier claims for patent infringement and

20   willful patent infringement against Defendants . . ., dismissed the earlier litigation and

21   granted a license." (*Id.* ¶¶ 228, 234.) Plaintiffs also claim additional harms, including

22   having "to spend additional time, money and effort filing a new litigation, tracking down

23   Defendants and their various alter egos, and identifying and locating their new

24   accomplices." (*Id.* ¶ 234.) Fani contends that these allegations fail to state a claim for

25   promissory fraud and are barred by the economic loss rule.

26   **A. Promissory Fraud Claim**

27   "'Promissory fraud' is a subspecies of fraud and deceit. A promise to do

28   something necessarily implies the intention to perform; hence, where a promise is made

without such intention, there is an implied misrepresentation of fact that may be actionable fraud." *Lazar v. Superior Court*, 12 Cal. 4th 631, 638 (1996). "An action for promissory fraud may lie where a defendant fraudulently induces the plaintiff to enter into a contract." *Id.* The elements that give rise to the tort of promissory fraud are: "(1) a promise made regarding a material fact without any intention of performing it; (2) the existence of the intent not to perform at the time the promise was made; (3) intent to deceive or induce the promisee to enter into a transaction; (4) reasonable reliance by the promisee; (5) nonperformance by the party making the promise; and (6) resulting damage to the promise[e]." *Behnke v. State Farm General Ins. Co.*, 196 Cal. App. 4th 1443, 1453 (Cal. App. 2011).

Fani raises three arguments in support of his contention that Plaintiffs have failed to state a claim for promissory fraud against him. First, Fani contends that all the promises Plaintiffs rely on are representations made in a license agreement to which Fani was not a party. (Mot. 10.) While Fani acknowledges that he signed the licensing agreement, he contends that he did so only as a representative of MJF, and thus any purported statements cannot be attributed to him personally. (*Id.*)

This argument is unconvincing for at least two reasons. First, Plaintiffs have alleged that MJF is an alter ego of Fani. (FAC ¶¶ 82-102.) Specifically, Plaintiffs contend that Fani did not maintain any practical or legal separation between himself and his corporate form and commingled finances. (*Id.* ¶¶ 90, 98.) Plaintiffs further allege that MJF and Fax87 did not file proper corporate records, pay corporate taxes, or have directors, board members or shareholders. (*Id.* ¶¶ 90, 91, 93, 95, 98.) If these allegations are borne out, Fani will not be able to maintain his claim that the corporation, rather than Fani, is responsible for the representations in the license agreement. Moreover, even if veil piercing and alter ego theories are proven to be inappropriate in this case, an agent can be personally liable for fraudulent statements. *See* Cal. Civ. Code § 2343 ("One who assumes to act as an agent is responsible to third persons as a principal for his acts in the course of his agency . . . [w]hen his acts are wrongful in their nature"); *see also Oncology*

1  *Therapeutics Network Connection v. Va. Hematology Oncology PLLC*, No. C 05-3033 WDB,

2  2006 WL 334532, at \*10 (N.D. Cal. Feb. 10, 2006) ("If an entity's representative committed

3  a tort, such as fraud, in connection with the contract, plaintiff could sue the signatory as

4  an individual for his tort."). Given that Plaintiffs allege Fani made these representations

5  with fraudulent intent, the statements can be attributed to Fani personally.

6  　　Second, Fani contends that the promissory fraud claim fails because the Complaint

7  does not plausibly allege that Fani had any fraudulent intent at the time he made the

8  alleged promises. (Mot. 11.) As Fani correctly notes, a claim for promissory fraud

9  "requires pleading facts from which it can be inferred that the promisor had no intention

10  of performing at the time the promise was made." *UMG Recordings, Inc. v. Glob. Eagle*

11  *Entm't, Inc.*, 117 F. Supp. 3d 1092, 1108 (C.D. Cal. 2015).  Moreover, mere nonperformance

12  of a promise is typically inadequate to demonstrate fraudulent intent. *See Tenzer v.*

13  *Superscope, Inc.*, 39 Cal. 3d 18, 30–31 (1985). According to Fani, the allegations in the

14  Complaint concerning fraudulent intent are conclusory and unsupported by adequate

15  factual allegations. (Mot. 12-13.) Moreover, Fani notes that Complaint acknowledges

16  MJF's compliance with a number of terms including making an initial lump sum

17  payment to Plaintiffs and providing royalty reports and payments for several months.

18  (*See* FAC ¶¶ 61-63, 70, 73.)

19  　　Although Federal Rule of Civil Procedure 9 requires that "a party must state with

20  particularity the circumstances constituting fraud or mistake," the rule also provides that

21  "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged

22  generally." Fed. R. Civ. P. 9(b). Here, Plaintiffs have met their burden of adequately

23  alleging intent. The Complaint does not only rely on Fani's nonperformance but also

24  alleges that Fani did not intend to comply with the terms of the parties' agreement from

25  the outset. (Compl. ¶¶ 221, 224.) Specifically, Plaintiffs allege that Fani made false

26  representations as part of a scheme to induce Plaintiffs to dismiss their prior action

27  against Fani before he left the jurisdiction and transferred his online fax business. (*Id.* ¶¶

28  224-226.) Plaintiffs also supplement the plausibility of their allegations by pointing to

6

1    Fani's actions after he entered into the licensing agreement which include allowing MJF
2    to dissolve, leaving the country, operating Fax87 abroad, and operating the same service
3    through alter ego entities. (*Id.* ¶¶ 101, 106, 226, 226, 334.) *See generally Lee v. Fed. St. L.A.*,
4    LLC, No. 2:14-CV-06264-CAS (SSx), 2016 WL 2354835, at *9 (C.D. Cal. May 3, 2016)
5    (noting that defendant's actions after entering into contract support conclusion that
6    promissory fraud claim survived a motion to dismiss). While Fani and MJF's initial
7    compliance may cut against an ultimate finding of fraudulent intent, that issue is not
8    suitable for resolution at the motion to dismiss stage.

9        Finally, Fani contends that the promissory fraud claim cannot survive because
10   Plaintiffs cannot plausibly allege reliance on any of Fani's alleged promises. Fani's
11   argument on this point turns on the fact that Plaintiffs signed the Licensing Agreement
12   on April 9, 2012 and Fani did not sign the agreement until the next day. Thus, Fani states
13   that Plaintiffs could not have relied on any promises made by Fani. This argument,
14   however, takes far too narrow a view of the concept of reliance. In the context of fraud or
15   promissory fraud, "reliance means that plaintiff acted or refrained from acting as a result
16   of the promise." *Grant v. Aurora Loan Servs., Inc.*, 736 F. Supp. 2d 1257, 1272 (C.D. Cal.
17   2010) (citing *Engalla v. Permanente Med. Grp., Inc.*, 15 Cal. 4th 951, 976 (1997), as modified
18   (July 30, 1997)). In this case, the relevant question is not when Plaintiffs executed the
19   agreement but why. Here, Plaintiffs have alleged that their assent to the licensing
20   agreement was induced by Fani's representation that he would comply with the terms of
21   the agreement. Plaintiffs further allege that they released existing claims against Fani in
22   reliance on his representations. Thus, Plaintiffs have met their burden by plausibly
23   alleging at least two separate instances of reliance on Fani's promises.

24       **B. Economic Loss Rule**

25       Fani's alternate argument in support of the instant motion to dismiss is that the
26   promissory fraud claim is barred by the economic loss rule. "The economic loss doctrine
27   provides that certain economic losses are properly remediable only in contract" and
28   serves to "maintain a distinction between damage remedies for breach of contract and for

1  tort." *UMG Recordings, Inc. v. Glob. Eagle Entm't, Inc.*, 117 F. Supp. 3d 1092, 1103-06 (C.D.

2  Cal. 2015) (internal quotation omitted). As one court has explained, "the fundamental

3  rule in California is that no tort cause of action will lie where the breach of duty is

4  nothing more than a violation of a promise which undermines the expectations of the

5  parties to an agreement." *Oracle USA, Inc. v. XL Glob. Servs., Inc.*, No. C 09-00537 MHP,

6  2009 WL 2084154, at *4 (N.D. Cal. July 13, 2009). Courts have applied the economic loss

7  rule to bar promissory fraud claims. *See, e.g.*, *UMG Recordings*, 117 F. Supp. 3d at 1106-06;

8  *Oracle*, 2009 WL 2084154, at *6-*7. However, there are several exceptions to the economic

9  loss rule. S*ee Oracle*, 2009 WL 2084154, at *4 ("Exceptions have been permitted only

10  where: a breach of duty causes a physical injury; the covenant of good faith and fair

11  dealing is breached in an insurance contract; an employee was wrongfully discharged in

12  violation of a fundamental public policy; or a contract was fraudulently induced.")

13       In this case, Plaintiffs invoke the exception for fraudulent inducement. *See NuCal*

14  *Foods, Inc. v. Quality Egg LLC*, 918 F. Supp. 2d 1023, 1033 ("In short, the 'economic loss

15  rule is designed to limit liability in commercial activities that negligently or inadvertently

16  go awry, not to reward malefactors who affirmatively misrepresent and put people at

17  risk.'") (quoting *Robinson Helicopter Co. v. Dana Corp.*, 34 Cal. 4th 979, 991 n.7); Lazar, 12

18  Cal. 4th at 638 ("An action for promissory fraud may lie where a defendant fraudulently

19  induces the plaintiff to enter into a contract."). Having concluded that Plaintiffs plausibly

20  allege they were induced to enter the licensing agreement on the basis of fraudulent

21  statements, the economic loss rule cannot preclude Plaintiffs' promissory fraud claim at

22  this stage of the litigation.

23  //

24  //

25  //

26  //

27  //

28  //

**IV. CONCLUSION**

   For the reasons stated above, the court DENIES Defendant Farjad Fani's Motion to Dismiss Plaintiffs' Claim for Promissory Fraud.

**IT IS SO ORDERED.**

Dated: November 18, 2016

_____
DEAN D. PREGERSON
UNITED STATES DISTRICT JUDGE