1    KASOWITZ, BENSON, TORRES &
     FRIEDMAN LLP
2    DAVID A. THOMAS (State Bar No. 215367)
     2029 Century Park East, Suite 2000
3    Los Angeles, CA  90067
     Telephone:  (424) 288-7900
4    Facsimile:   (424) 288-7901
     dthomas@kasowitz.com
5
     STEVEN C. CARLSON (State Bar No. 206451)
6    333 Twin Dolphin Dr # 200
     Redwood City, CA 94065
7    Telephone:  (650) 453-5170
     Facsimile:  (650) 453-5171
8    scarlson@kasowitz.com
9    Attorneys for
     MYPHONEFAX.COM, LLC
10

11

12                  UNITED STATES DISTRICT COURT

13                CENTRAL DISTRICT OF CALIFORNIA

14

15   j2 CLOUD SERVICES, INC., AND          Case No. 13-cv-05353-DDP
     ADVANCED MESSAGING
16   TECHNOLOGIES, INC.,                   **MYPHONEFAX.COM, LLC'S *EX
                                           PARTE* APPLICATION FOR AN
                                           ORDER STAYING THE
17                         Plaintiffs,     DEFAULT JUDGMENT**

18   v.

19   FAX87, FARJAD FANI, MATT
     JOHNSON FINANCE, INC.,
20   ELNAZ FANI, ONE VOIX,
     MIRALUNA CABERTE YARDAN,
21   STEVEN THONG WAY SEN,
     ROBERT BEAULIEU, CHARLES
22   MONTGOMERY, ONLINEFAXES,
     SOLIDFAX, FAXVISION,
23   EFAX4LESS, MYPHONEFAX,
     RESELLFAX, AND DOES 1-10,
24
                           Defendants.
25

26

27

28

─────────────────────────────────────────────
             EX PARTE APPLICATION FOR STAY

MYPHONEFAX.COM, LLC ("MPF") hereby applies to this court *ex parte* for an Order staying execution of the Default Judgment and Order, including the injunctive relief contained therein, entered on December 15, 2016, Dkt. Nos. 196-97.

The undersigned has advised counsel for j2 Cloud Services, Inc. and Advanced Messaging Technologies, Inc. (collectively, "plaintiffs"), Guy Ruttenberg of Ruttenberg IP Law, 1801 Century Park East, Suite 1920, Los Angeles, California 90067, (310) 627-2270, guy@ruttenbergiplaw.com, that this *ex parte* application is being made and has advised him of the grounds of this application. *See* Declaration of David A. Thomas at ¶ 3. As of the filing of this application, Mr. Ruttenberg has not advised whether plaintiffs oppose this application, though in a prior conversation he advised that plaintiffs would oppose the relief that MPF is seeking herein. *Id.* at ¶ 2.

This request is timely and necessary to prevent irreparable harm to MPF and its customers, as the injunction will shutter its websites, terminate its business and stop all fax services to its approximately 80,000 customers.

MPF therefore respectfully requests that this Court order that enforcement of the default order, and in particular its injunctive relief provisions, be stayed pending the adjudication of MPF's forthcoming motion to vacate the default judgment, which will be filed on December 28, 2016 subsequent to the expiration of the meet and confer requirement, or, in the alternative, that enforcement of the injunctive relief provisions in the default order be stayed pending this Court's issuance of an order to show cause as to why such a stay should not be effective until final adjudication of MPF's motion to vacate. MPF further requests clarification from the Court that the Default Judgment and Order does not prohibit MPF from paying its legal fees.

This application is based on the attached Memorandum of Points of Authorities, the Declaration of David A. Thomas filed concurrently herewith, the

Declaration of Steven Thong filed concurrently herewith, the Declaration of Don Joffe filed concurrently herewith, and the Declaration of Erick Howard filed concurrently herewith.

Dated:  December 21, 2016          Kasowitz, Benson, Torres & Friedman LLP


By: /s/ David A. Thomas
      David A. Thomas

Attorneys for Defendant
MYPHONEFAX.COM, LLC

2

EX PARTE APPLICATION FOR STAY

1    KASOWITZ, BENSON, TORRES &
     FRIEDMAN LLP
2    DAVID A. THOMAS (State Bar No. 215367)
     2029 Century Park East, Suite 2000
3    Los Angeles, CA 90067
     Telephone: (424) 288-7900
4    Facsimile: (424) 288-7901
     dthomas@kasowitz.com
5
     STEVEN C. CARLSON (State Bar No. 206451)
6    333 Twin Dolphin Dr # 200
     Redwood City, CA 94065
7    Telephone: (650) 453-5170
     Facsimile: (650) 453-5171
8    scarlson@kasowitz.com

9    Attorneys for
     MYPHONEFAX.COM, LLC
10

11

12             UNITED STATES DISTRICT COURT

13             CENTRAL DISTRICT OF CALIFORNIA

14

15    j2 CLOUD SERVICES, INC., AND      Case No. 13-cv-05353-DDP
     ADVANCED MESSAGING
16    TECHNOLOGIES, INC.,           **MYPHONEFAX.COM, LLC'S**
                                   **MEMORANDUM IN**
17                 Plaintiffs,     **SUPPORT OF *EX PARTE***
                                   **APPLICATION**
18    v.

19    FAX87, FARJAD FANI, MATT
     JOHNSON FINANCE, INC.,
20    ELNAZ FANI, ONE VOIX,
     MIRALUNA CABERTE YARDAN,
21    STEVEN THONG WAY SEN,
     ROBERT BEAULIEU, CHARLES
22    MONTGOMERY, ONLINEFAXES,
     SOLIDFAX, FAXVISION,
23    EFAX4LESS, MYPHONEFAX,
     RESELLFAX, AND DOES 1-10,
24
                Defendants.
25

26

27

28

      MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF EX
                         PARTE APPLICATION FOR STAY

# TABLE OF CONTENTS

**Page**

I.    PRELIMINARY STATEMENT ...................................................1

II.   STATEMENT OF FACTS ........................................................2

    A.    Myphonefax.com...........................................................2

    B.    Nature of the Action/Purported Service of Process ............3

    C.    The Default Judgment and Permanent Injunction................5

    D.    The Court-Imposed Permanent Injunction Creates Irreparable
        Harm to MPF and its Customers ........................................5

III.  LEGAL STANDARD ...............................................................7

IV.   ARGUMENT..........................................................................7

    A.    MPF Is Likely to Succeed on the Merits of Its Motion to Vacate .......8

        1.    Service of Process Under Rule 4................................9

        2.    MPF Was Not Properly Served Under Rule 4 ...........9

        3.    MPF Can Show "Good Cause" for Vacating the Default........11

            a.    Plaintiff Will Not Be Prejudiced By Litigating the
                Issues on the Merits .....................................12

            b.    Defendant Has Several Meritorious Defenses to
                each of Plaintiffs' Claims ..............................12

                (1)    U.S. Patent No. 8,675,220 ..................13

                (2)    U.S. Patent No. 6,208,638 ..................13

                (3)    U.S. Patent No. 8,310,699 ..................13

            c.    Defendant's Conduct was not Culpable ........13

    B.    MPF Will Be Irreparably Harmed Absent Temporary Relief...........14

    C.    The Balance of the Harms Tips Sharply Towards MPF ...................14

    D.    A Stay of Enforcement is in the Public Interest.................15

V.    CLARIFICATION REQUEST CONCERNING LEGAL FEES.................15

VI.   CONCLUSION.......................................................................16

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Falk v. Allen*,
   739 F.2d 461 (9th Cir.1984) ........................................................................14, 17

*Hilton v. Braunskill*,
   481 U.S. 770 (1987) ....................................................................................9

*Kexuan Yao v. Crisnic Fund, S.A.*,
   No. SACV 10-1299 ...................................................................................13

*Landis v. North American Co.*,
   299 U.S. 248 (1936) ..................................................................................8

*Lerma v. Stylistics Los Angeles Car Club, Inc.*,
   No. CV 12-06704 DDP ............................................................................12

*Lopez v. Heckler*,
   713 F.2d 1432 (9th Cir. 1983) ................................................................10

*Pena v. Seguros La Comercial, S.A.*,
   770 F.2d 811 (9th Cir. 1985) ..................................................................10

*S.E.C. v. Internet Solutions for Bus. Inc.*,
   509 F.3d 1161 (9th Cir. 2007) ...........................................................11, 14

*TCI Group Life Ins. Plan v. Knoebber*,
   244 F.3d 691 (9th Cir. 2001) ..............................................................15, 17

*Thomas P. Gonzalez Corp. v. Consejo Nacional de Produccion de Costa Rica*,
   614 F.2d 1247 (9th Cir. 1980) ................................................................11

*U.S. for Use and Benefit of Larkin v. Platt Contracting Co.*,
   324 F.2d 95 (1st Cir. 1963) ......................................................................8

*United States v. Signed Personal Check No. 730 of Yubran S. Mesle*,
   615 F.3d 1085 (9th Cir. 2010) ................................................................15

*Vazquez-Robles v. CommoLoCo, Inc.*,
   757 F.3d 1 (1st Cir. 2014)...................................................................................13

**Rules**

Phillipines Civil Procedure Rule 7, Section 11.......................................................11

Fed. R. Civ. P. 4.....................................................................................4, 11, 12, 13

Fed. R. Civ. P. 60...................................................................................2, 3 8, 9, 10

Fed. R. Civ. P. 62...............................................................................................8

  MYPHONEFAX.COM, LLC ("MPF") submits this memorandum of points and authorities in support of its application for an ex parte order staying enforcement of the default judgment and order entered against it in favor of j2 Cloud Services, Inc. and Advanced Messaging Technologies, Inc. (collectively, "plaintiffs") on December 15, 2016.

## I. PRELIMINARY STATEMENT

  MPF, despite never having been served in this action, is now subject to a default judgment, which includes severe and extremely broad injunctive provisions that threaten MPF's very existence, and which, in enforced, will have a devastating impact on its clients.   MPF has just retained counsel and will file a motion to vacate the default judgement pursuant to Fed. R. Civ. P. 60(b) on December 28, 2016.   A stay of the injunction pending decision on the motion to vacate is necessary to ensure MPF is not put out of business by the injunctive provisions, which require, in essence, the complete cessation of all services to all of MPF's customers.  Further, efforts to collect on the monetary judgment awarded will also unduly interfere with MPF's operations.

  The harm absent a stay is manifest.  MPF provides services that enable its customers to send and receive facsimile ("fax") messages using their computers, smart phones and similar devices.  MPF believes that between 10,000 and 25,000 of its customers are medical professionals, such as doctors, medical offices, and pharmacists.  The impact of cutting off medical providers off from their fax services could be catastrophic.  In fact, interruptions in fax transmittal have resulted in patient deaths.  See *infra*.

  In addition to medical professionals, MPF provides services to numerous other businesses and professionals, including attorneys, mortgage loan officers and realtors.  *See* Declaration of Don Joffe (hereinafter "Joffe Decl.").   If the permanent injunction remains in place, MPF will no longer be able to remain

1

operational, resulting in MPF's approximately eighty-thousand (80,000) customers losing the ability to either send or receive any communications via facsimile. Those customers will not be able to transfer their fax numbers to other providers. Absent temporary relief, customers would be forced to incur significant costs related to potential business interruptions, lost opportunities and revising their business cards, brochures, websites, and other promotional materials.  MPF will be unable to provide more than $1.5M in prepaid services, resulting in further loss to its customers.

MPF's motion to vacate is meritorious.  Simply, MPF was never served. Rather, plaintiffs sent facially deficient substituted service, without the required return receipt, to a person who is neither employed by nor authorized to receive service for MPF.  A default judgment is void and must be set aside under FRCP Rule 60(b)(4) when the service of process was—as here—insufficient resulting in the court lacking personal jurisdiction over the defendant.[1]  Moreover, MPF has strong defenses to each and every cause of action asserted by plaintiffs.  Most importantly, MPF's services do not infringe plaintiffs' patents.  Accordingly, the default judgment should be stayed until MPF's motion to vacate is decided to maintain the status quo and to avoid irreversible damage to MPF and its customers.

## II.   STATEMENT OF FACTS

### A.   Myphonefax.com

MPF is a limited liability company organized and existing under the laws of the Cook Islands.  It was formed on November 29, 2012.  *See* Joffe Decl. at ¶ 2. MPF's principal place of business is in Colombia.  *See* Initial Disclosures of Defendant Farjad Fani, attached as Exhibit 1 hereto.  MPF has no place of business, assets, operations, agent or employees in the Philippines.  *See* Joffe Decl.

---

[1] Additionally, MPF has a ground for vacating the Default Judgment under Rule 60(b)(1) by virtue of mistake, which it will assert in its Rule 60 motion.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF EX PARTE APPLICATION FOR STAY

at ¶ 6.

MPF provides services that enable its customers to send and receive facsimile ("fax") messages using their computers, smart phones and similar devices. *Id.* at ¶ 4. A substantial portion of MPF's customer base is medical professionals – doctors, medical offices, pharmacists and the like. Although there is no way to know for sure how many medical professionals utilize MPF's services, the company estimates that its customer base includes between ten to twenty-five thousand (10,000 – 25,000) individual doctors, medical offices and pharmacists. *Id.* at ¶ 10. In addition to medical professionals, MPF provides services to thousands of lawyers, mortgage loan officers, truck drivers, realtors and other small businesses. The number of fax customers using MPF's services totals over 80,000 users with almost 100,000 fax numbers belonging to those customers. *Id.* at ¶ 12. MPF has been paid over $1.5M in prepaid fax services. *Id.* at ¶ 9.

**B.**   **Nature of the Action/Purported Service of Process**

Plaintiffs initiated this action with the filing of a summons and complaint on July 24, 2013. *See* Dkt. No. 1. On April 15, 2016, plaintiffs filed their First Amended Complaint, which for the first time named "Myphonefax" – and were given 60 days to complete service on all newly added parties. *See* Dkt No. 43. On or about May 9, 2016, plaintiffs transmitted a letter to the Clerk of Court requesting service on several defendants, including "Myphonefax," be effectuated pursuant to Fed. R. Civ. P. 4(f)(2)(c)(ii). In that letter, plaintiffs alleged that all those defendants were residents of the Philippines and could be served at a business park in Muntinlupa, Republic of the Philippines *See* Dkt. No. 80. According to a delivery printout attached to the proof of service, the Clerk sent the complaint via Federal Express to Miralana Caberte Yarden on behalf of One Voix – not MPF – at the designated address in the Republic of the Philippines, where it was signed for by an individual named S. Sherry Galvez. *Id.* The Federal Express package did not include

3

a return receipt request.  Plaintiffs have alleged that service on MPF in the Philippines was proper due to the presence of Miraluna Yardan ("Ms. Yardan") stating that "Miraluna Yardan holds herself out to be the CEO, COO, and/or managing member of each of Defendants …." *Id*.  Plaintiffs have not alleged that S. Sherry Galvez, the individual who received the package, is connected in any way to MPF.

The person plaintiffs tried to serve, Ms. Yardan, is not an employee of MPF, much less an officer in the company, and is not authorized to accept service on behalf of MPF.  *See* Joffe Decl. at ¶ 6. Rather, Ms. Yardan is a principal at ONE VOIX, which provides customer service functions for MPF on a contract basis. *Id*. MPF does not maintain any offices or other facilities in the Philippines and has no employees or other assets located in that country.  *Id*.

No authorized agent of MPF was served with *any* legal process in this case. *Id*. at ¶ 7.  A now *former* MPF employee, Farjad Fani ("Mr. Fani"), who served as Manager of MPF from its formation until his resignation on September 9, 2016, reported to Don Joffe, the head of MPF's management team ("Mr. Joffe"), that he was personally engaged in litigation but that MPF had not yet been properly served.[2] As a result, Mr. Joffe concluded that MPF did not need to hire counsel or take any other action unless and until the appropriate documents were correctly served on MPF.

MPF did not and has not filed a responsive pleading, as it has no presence in the Philippines and thus has not been properly served with process in this action. Nevertheless, on October 31, 2016 – apparently as a result of a routinized clerk notice – plaintiffs moved for a default judgment against MPF.  This Court granted plaintiffs application, and entered an order for a default judgment on December 15,

---

[2] Mr. Fani's counsel, Erick Howard, had concluded that service on MPF through Ms. Yardan, was defective.  *See* Howard Decl. at ¶¶ 2-3.

4

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF EX PARTE APPLICATION FOR STAY

2016.  *See* Dkt. No. 196  MPF's new counsel filed a Special Appearance on behalf of MPF on December 20, 2016.  *See* Dkt. No. 198.

### C.     The Default Judgment and Permanent Injunction

On December 15, 2016, the Court issued a Default Judgment and Order against the allegedly defaulting defendants, ostensibly including MPF (though it is erroneously named by its website, myphonefax.com).  The Court granted judgment in favor of plaintiffs against MPF on counts one through nine of the First Amended Complaint.  In so doing, the court awarded plaintiffs $17,020,758 in compensatory damages, $336,389 in attorney's fees, and $8,788,550 in enhanced damages for a total monetary award of $26,145,697.  MPF was found to be jointly and severally liable with all other defaulting defendants for the full amount of the award.

In addition to awarding monetary damages, the court entered permanent injunctive relief against all defaulting defendants, including MPF.  MPF is permanently enjoined from selling or offering for sale any fax services in the United States, using the EFAX, E-FAX, or similar trademarks at issue in this action, and from providing services or any support to any person or entity selling or providing internet fax services.  As discussed *infra*, this overly broad and vague permanent injunction essentially serves to shutter MPF's business.

### D.     The Court-Imposed Permanent Injunction Creates Irreparable Harm to MPF and its Customers

The permanent injunction issued in connection with the default order against MPF requires, in essence, the complete cessation of all services to all of MPF's customers, including the aforementioned medical professionals.  The impact of cutting medical providers off from their fax services could be catastrophic. Interruptions in fax transmittal have resulted in patient deaths.  *See* Joffe Decl. at ¶ 11.  In fact, plaintiffs recognize the prevalence and importance of fax usage by the medical profession on their own website, which states that "[f]ax remains the

dominant method of communicating with colleagues, patients, insurance companies and pharmacies." *Id*.

In addition to medical professionals, MPF provides services to countless other businesses and professionals, including attorneys, mortgage loan officers and realtors. *Id* at ¶ 12.   If the permanent injunction remains in place, MPF will no longer be able to remain operational, resulting in MPF's approximately eighty-thousand (80,000) customers losing the ability to either send or receive any communications via facsimile.  Additionally, MPF's customers would not be able to port and otherwise transfer their fax numbers to other providers.  *Id*. at ¶ 12.  The majority of MPF's customers have retained the same fax number for years.  Absent temporary relief, these customers would be forced to get new fax numbers and incur significant costs related to revising their business cards, brochures, websites, and other promotional materials.  In addition, the unexpected loss of fax capabilities will likely result in customers losing sales and opportunities, and have countless unforeseeable additional effects.  *Id*. at ¶ 12.

A substantial percentage of MPF's customer base pre-pays for future fax services.  The total amount of money pre-paid by customers for services not yet utilized totals approximately $1,521,131.85.  *Id*. at ¶ 8.  If MPF is forced to shut down through enforcement of the permanent injunction, MPF would be unable to fulfill its service agreements with customers utilizing its pre-paid services, potentially resulting in significant losses for those customers.  Finally, absent a stay, MPF will be unjustly deprived of revenue from its operations.

Absent the granting of temporary relief pending the adjudication of MPF's forthcoming motion to vacate the default judgment, MPF will be irreparably harmed as it will have no choice but to cease all operations, which, in turn, will cause great and immediate harm to its customers.  Of course, all of this will be manifestly unjust when MPF demonstrates that its services do not infringe any of Plaintiffs' patents.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF EX
PARTE APPLICATION FOR STAY

## III.   <u>LEGAL STANDARD</u>

Fed. R. Civ. P. 62(b) states in part that "... the court may stay the execution of a judgment - or any proceedings to enforce it - pending disposition of any of the following motions:... (4) under Rule 60, for relief from a judgment or order."  The decision whether to grant a stay or not under Rule 62 is within the Court's discretion.  *See U.S. for Use and Benefit of Larkin v. Platt Contracting Co.*, 324 F.2d 95 (1st Cir. 1963); *see also Landis v. North American Co.*, 299 U.S. 248, 254 (1936) (the ability to stay proceedings "is incidental to the power inherent in every court to control the disposition of the cases on its docket with economy of time and effort for itself, for counsel, and for the litigants.").

Under Fed. R. Civ. P. 62(b) and as set forth by the Supreme Court in *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987), a court looks to the balance the equities when granting a stay.  The accepted standards that courts use for discretionary stays are: (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.  *See id.* Analysis of those factors clearly demonstrates that the Default Judgment against MPF should be stayed by this Court.

## IV.   <u>ARGUMENT</u>

The balance of the equities are in MPF's favor.  As demonstrated below, MPF is likely to succeed on the merits of its application to vacate the Default Judgment, which is void due to improper service.  MPF also would experience massive and irreparable harm absent the stay of enforcement of the permanent injunction pending the final adjudication of its motion to vacate.  Not only will MPF be forced to go out of business, its customers will be irreparably damaged and countless medical professionals will be without the use of critical fax services.

7

Given the use of MPF's services by medical professionals, there also is a risk of death or injury arising from cessation of fax services. Other customers will lose prepaid services and likely will never recover such funds.

Unable to port over their fax numbers, all of MPF's customers will be forced, at the holiday, to contact clients, customers, and other business contacts to advise of new fax numbers, be forced to change all their business materials that contains their fax numbers, and otherwise be subjected to serious disruption of their fax-dependent businesses.  Joffe Decl. at ¶ 12.

There is no remotely comparable harm to plaintiffs, in that in the wholly unlikely event they prevail on the motion to vacate, the Default Judgment would remain intact and, in any event, they would still have an enforceable judgment and injunctive relief against several additional defaulting defendants.  MPF simply seeks the ability to continue operations and litigate the issues implicated in this dispute on the merits.  At a minimum, there are clearly "serious questions" on the merits and the balance of harms "tips sharply" in favor of a stay.  *See Lopez v. Heckler*, 713 F.2d 1432, 1435 (9th Cir. 1983).

### A.   MPF Is Likely to Succeed on the Merits of Its Motion to Vacate

MPF is likely to succeed on its forthcoming motion to vacate the default judgment and order against it.  Default judgments are generally disfavored, as public policy dictates cases be adjudicated on the merits wherever possible.  *See Pena v. Seguros La Comercial, S.A.*, 770 F.2d 811, 814 (9th Cir. 1985).  Fed. R. Civ. P. 60(b)(4) provides that a party may set aside a default judgment on the grounds that it is void based upon insufficient service of process.  If the court deems that process was not sufficient, the judgment is void and must be vacated:

There is no question of discretion on the part of the court when a motion is under Rule 60(b)(4).  Nor is there any requirement, as there usually is when default judgments are attached under Rule 60(b), that

8

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF EX PARTE APPLICATION FOR STAY

the moving party show that he has a meritorious defense. Either a judgment is void or it is valid.  Determining which it is may well present a difficult question, but when that question is resolved, the court must act accordingly.

*Thomas P. Gonzalez Corp. v. Consejo Nacional de Produccion de Costa Rica*, 614 F.2d 1247, 1256 (9th Cir. 1980); *see also S.E.C. v. Internet Solutions for Bus. Inc.*, 509 F.3d 1161, 1165 (9th Cir. 2007).

### 1.    Service of Process Under Rule 4

Plaintiffs purported to serve MPF in the Philippines under Fed. R. Civ. P. 4(f)(2)(c)(ii).  According to Rule 4(f)(2)(C)(ii), service by "mail that the clerk addresses and sends to the individual and that requires a signed receipt," is allowed "unless prohibited by the foreign country's law."  The laws and rules of the Philippines have specific requirements for serving a summons and for service by mail, including a requirement that the reasons personal service could not be made be set out in the service documentation.  *See* Philippines Code of Civil Procedure Rule 7, Section 11.  It appears mail service was the one and only attempt at service here.

Additionally, for service under Fed. R. Civ. P. 4(f)(2)(C)(ii) to be effective, the plaintiff must submit proof of use of a "form of mail that the clerk addresses and sends to the individual and that requires a signed receipt."  Under Fed. R. Civ. P. 4(l), service outside of a United States judicial district under 4(f)(2) or (f)(3) must be proved "by a receipt signed by the addressee, or by other evidence satisfying the court that the summons and complaint were delivered to the addressee." Fed. R. Civ. P. 4(l)(2)(B).  This did not occur.

### 2.    MPF Was Not Properly Served Under Rule 4

The most glaringly obvious deficiency revealed by plaintiffs' alleged proof of service of summons (the "proof of service") with respect to MPF is that nothing

9

reflected in the proof of service has anything to do with MPF.  *See* Dkt. No. 80. Plaintiffs allege that MPF, along with other defendants, was properly served per Federal Rule of Civil Procedure 4(f)(2)(C)(ii), citing to Dkt. No. 77 (a Federal Express purchase receipt) in support of their assertion.  *Id*.  However, Rule 4(f)(2)(C)(ii) requires service by "mail that the clerk addresses and sends to the individual and that requires a *signed receipt*." (emphasis added).   Contrary to plaintiffs' assertion, the Federal Express printout merely shows that a package was sent to Miralana Caberte Yarden on behalf of One Voix at an address in the Republic of the Philippines. As it was not addressed to MPF nor sent to MPF, plaintiffs' alleged service on MPF failed to comply with the requirement that it be addressed and sent *to MPF*. *See* Dkt. No. 77; *see also Lerma v. Stylistics Los Angeles Car Club, Inc.*, No. CV 12-06704 DDP JEMX, 2015 WL 349310, at *2 (C.D. Cal. Jan. 23, 2015), aff'd, No. 15-55270, 2016 WL 6803737 (9th Cir. Nov. 17, 2016) ("Service is proper when a copy of the summons and complaint are delivered 'to the individual personally' in the case of an individual defendant, or delivered 'to an agent authorized by appointment or by law to receive service of process,' in the case of a corporate defendant."), citing Fed. R. Civ. P. 4.  Service directed to an entity other than MPF cannot possibly meet that standard.

In addition, plaintiffs have offered no evidence or explanation in support of their assertion that Ms. Yardan held herself out as the "CEO, COO, and/or managing member" of MPF at the time of the alleged service. *See Kexuan Yao v. Crisnic Fund, S.A.*, No. SACV 10-1299 AG JCGX, 2011 WL 3818406, at *7 (C.D. Cal. Aug. 29, 2011) ("Courts have found that Rule 4(h)(2) allows for service of a corporation through service of its officers, managers, or authorized agents…But Plaintiff has submitted no evidence that Cruz is an officer, managing agent, general agent, or otherwise authorized agent of Defendant Crisnic. Therefore, the Court concludes that Plaintiff has not satisfied service of Defendant Crisnic under Rule 4(h)(2) or any

10

other provision of Rule 4(h)").   Further, the person served must be an *actual* officer, manager or authorized agent of the party – apparent authority will not suffice.  *See Vazquez-Robles v. CommoLoCo, Inc.*, 757 F.3d 1, 6 (1st Cir. 2014).  Regardless, Ms. Yardan's status is completely irrelevant given the facially defective means of service employed.

Plaintiffs offered no evidence that the federal express package required a signed receipt—another fatal flaw.  *See* Fed. R. Civ. P. 4(f)(2)(C)(ii); s*ee also Kexuan Yao v. Crisnic Fund, S.A.*, No. SACV 10-1299 AG JCGX, 2011 WL 3818406, at *7 (C.D. Cal. Aug. 29, 2011) ("The evidence of service by United States Postal Service is insufficient because Plaintiff has submitted no evidence of a signed receipt.").  Of course, no signed receipt was ever produced.  A Federal Express printout showing delivery to a receptionist at a different company is neither a signed receipt nor any proof of service on MPF.

In sum, plaintiffs offered no credible proof or explanation demonstrating how a FedEx slip addressed to Miralana Caberte Yarden on behalf of One Voix with a Philippine address was proof of service on or has any connection to MPF. However, to be clear, (i) MPF is a Cook Islands company, (ii) does not maintain a business, have an office, or own property in the Philippines, and (iii) Miralana Caberte Yardan is not a MPF officer, manager, or authorized agent.  *See* Joffe Decl. at ¶¶ 2, 6.  These critical facts, in addition to the fatal flaws in the method of service, leave no doubt that service was not properly effectuated on MPF.  Accordingly, MPF is likely to prevail on the merits of its motion to vacate the default judgment on the grounds that it is void.  *See S.E.C. v. Internet Sols. for Bus. Inc.*, 509 F.3d 1161, 1165 (9th Cir. 2007).

### 3.    MPF Can Show "Good Cause" for Vacating the Default

As stated *supra,* the court need not proceed any further given that the default is a legal nullity.  However, even if the court applies a "good cause" threshold,

11

MPF's conduct and actions still meet the standard for vacating the default. The good cause analysis considers three factors: (1) whether the plaintiff will be prejudiced, (2) whether the defendant has a meritorious defense, and (3) whether culpable conduct of the defendant led to the default. *Falk v. Allen*, 739 F.2d 461, 463 (9th Cir. 1984). As discussed below, MPF can meet all three *Falk* factors in its motion to vacate.

### a.   Plaintiff Will Not Be Prejudiced By Litigating the Issues on the Merits

Prejudice to a plaintiff in vacating a default typically occurs where a plaintiff's ability to pursue its claim will be hindered because evidence is lost, discovery becomes more difficult, or there is an opportunity for fraud or collusion. *See TCI Group Life Ins. Plan v. Knoebber*, 244 F.3d 691, 701 (9th Cir. 2001) (*overruled on other grounds by Egelhoff v. Egelhoff ex rel. Breiner*, 532 U.S. 141 (2001)). There is no evidence on the record even suggesting that vacating the default will lead to the loss of evidence, onerous discovery, or fraud or collusion.

### b.   Defendant Has Several Meritorious Defenses to each of Plaintiffs' Claims

While a defendant moving to vacate a default judgment must present a meritorious defense to the action, the "burden on a party seeking to vacate a default judgment is not extraordinarily heavy" in this regard. *United States v. Signed Personal Check No. 730 of Yubran S. Mesle*, 615 F.3d 1085, 1094 (9th Cir. 2010). MPF has several meritorious defenses to plaintiffs' claims.

First, as detailed above, MPF possesses several jurisdictional defenses predicated on insufficient service of process. Second, the majority of plaintiffs' claims against MPF are grounded in the theory that MPF was an alter ego of several other defendants. Simply put, this assertion is not true -- MPF is an independent entity based in the Cook Islands. MPF is not an affiliate or alter ego

12

to any of the parties which negotiated and executed the agreements at issue in the case.  Third, MPF has meritorious defenses to plaintiffs' claims grounded in unfair business practices, as plaintiffs' First Amended Complaint fails to identify any injury to customers, let alone a "substantial" injury.

MPF also has several meritorious defenses to plaintiffs' patent claims.

### (1)     U.S. Patent No. 8,675,220

The '220 patent concerns searching on keywords digitally extracted from faxes.  MPF's services do not use digital character recognition to extract text, and do not run keyword searches on extracted text. The limited search capability on MPF's sites only searches on separately input fields, like sender and recipient, not on extracted text.  Thong Decl. at ¶ 13.

### (2)     U.S. Patent No. 6,208,638

The '638 patent covers receiving a fax, converting the fax into a digital representation, and emailing it.  In MPF's network, an independent company, EtherFax, is the entity that receives a fax message and converts the message to digital format. EtherFax does not email the converted text.  Instead, it uses a batch transfer protocol that is not email.  Thong Decl. at ¶ 8.

### (3)     U.S. Patent No. 8,310,699

This patent covers counting the number of fax pages received, and then based on that page count, determining a "measure" of the total number of pages transmitted, such as the number of trees saved by not printing faxes, or a number of carbon credits earned.  There is no such "measure" of a page count in MPF's services. Thong Decl. at ¶ 15.

### c.     Defendant's Conduct was Not Culpable

Finally, MPF was not "culpable" under the third *Falk* prong.  *See TCI Group Life,* 244 F.3d at 697–98 (holding that situations where the moving defendant offers a credible, good faith explanation negating any "intention to take advantage

13

of the opposing party, interfere with judicial decision making, or otherwise manipulate the legal process" are generally not considered "culpable," even if the moving defendant had actual notice of the pending action).

Here, MPF received notice of a pending suit in which it had been named in (albeit improperly), but not served with process.  MPF had a good faith belief that it had not been properly served and thus had no obligation to take any action.  *See* Joffe Decl. at ¶¶ 6-7; Decl. of Erick Howard at ¶¶ 2-3.  The failure of a Cook Islands domiciliary, purportedly (and ineffectively) served in the Philippines, to appear in an action pending in the United States could hardly be construed as a "devious, deliberate, willful" attempt to "manipulate the legal process." *See TCI Group Life*.

## B.    MPF Will Be Irreparably Harmed Absent Temporary Relief

It is difficult to imagine a clearer case of irreparable harm than the one presented here.  As set forth above (*supra* § II) and in the accompanying declarations, MPF and its customers will incur significant and irreparable harm absent the granting of temporary injunctive relief.

The overly broad and vague nature of the permanent injunction entered in connection with the default order is such that MPF will have no choice but to cease operations if the injunction remains in effect.  Not only will this affect MPF's successful business, it will have a disastrous effect on MPF's 80,000 customer base, which includes up to twenty-five thousand (25,000) medical professionals. *See* Joffe Decl. at ¶ 10.  MPF's customers will lose more than $1.5 million in pre-paid fees, and will be forced to incur significant expenses related to changing fax numbers.

## C.    The Balance of the Harms Tips Sharply Towards MPF

The judgment should be stayed because there is little possible harm to plaintiffs that may result from the Court granting the ex parte application for a stay

14

of the injunctive relief.  Plaintiffs have an enforceable money judgment and injunctive relief against several additional defaulting defendants.  Additionally, plaintiffs are entitled to post-judgment interest.  In the extremely unlikely event the Court denies the motion to vacate, plaintiffs can be compensated with interest and the injunction will then go into effect.  Conversely, permitting the imposition of the injunctive relief contained in the default order on MPF now will cripple its business and cause irreparable harm on its business, customers, and third parties.

### D.    A Stay of Enforcement is in the Public Interest

As detailed above, some 80,000 of MPF's customers, including medical professionals and their patients, will be adversely impacted absent a stay of the permanent injunction.  *See* Joffe Decl. at ¶ 9.  Simply put, MPF will go out of business without a stay—an inequitable result given that it has not been afforded an opportunity to defend the claims asserted against it on the merits, and given that MPF has complete defenses to this action.

## V.    CLARIFICATION REQUEST CONCERNING LEGAL FEES

In an abundance of caution, MPF seeks clarification from the Court that the Default Judgment and order do not prohibit MPF from paying counsel in this litigation. The Court's order provides that "Defendants MJF and Fax87 shall use any undistributed assets to pay the judgment in this case," and "MJF and Fax87 are further ordered to collect assets distributed to any shareholders, officers or directors in order to pay the judgment." ¶¶ 29-30.  MPF understands this provision to be specific to the assets of MJF and Fax87, and not a constraint on MPF's ability to pay its counsel.  Nor does MPF read these provisions as restricting the payment of fees for counsel to represent a party in this litigation. Any such restriction would unfairly impair MPF's right to counsel and due process, including to pursue its rights under Rule 60 and its right to appeal.  In the interim, fees are being paid into an isolated bank account at Citibank, # 9250402260.

15

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF EX
PARTE APPLICATION FOR STAY

## VI.    **CONCLUSION**

For these reasons, MPF respectfully requests that the Court GRANT its application and stay enforcement of the December 15, 2016 default judgment and order pending adjudication of its motion to vacate the default judgment.

Dated:  December 21, 2016          Kasowitz, Benson, Torres & Friedman LLP


By: /s/ David A. Thomas
David A. Thomas

Attorneys for Defendant
MYPHONEFAX.COM, LLC

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF EX
PARTE APPLICATION FOR STAY