O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| j2 CLOUD SERVICES, INC., et al.,<br><br>              Plaintiff,<br><br>   v.<br><br>FAX87, et al.,<br><br>              Defendants. | Case No. 13-05353 DDP (AJWx)<br><br>**ORDER DENYING DEFENDANT STEVEN THONG WAY SEN'S RENEWED MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION**<br><br>[Dkts. 66, 201] |

Presently before the court is Defendant Steven Thong Way Sen ("Thong")'s renewed Motion to Dismiss for lack of personal jurisdiction pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure. (Dkts. 66, 201.) Having considered the parties' submissions and heard oral argument, the court adopts the following Order.

**I. BACKGROUND**

The court assumes the parties' familiarity with the facts giving rise to this action, which have been set forth more fully in several prior Orders. (*See* Dkts. 32, 106, 167, 197.) Accordingly, the court will limit its discussion to the background necessary for resolving the pending Motion.

**A. Procedural Background**

j2 is the owner of two patents concerning the transmission and storage of facsimile and audio messages. (First Amended and Supplemental Complaint ("FASC") ¶¶ 25, 29.) In a prior action, j2 sued Defendants Farjad Fani, Fax 87, and Matt Johnson Finance, Inc. ("MJF") for patent infringement. (*Id.* ¶ 45.) The parties settled the case, and j2 entered into a patent licensing agreement. (*Id.* ¶¶ 46-47.)

On July 24, 2013, Plaintiffs filed a new action asserting, *inter alia*, that Fani, Fax87, and MJF breached the settlement agreement, violated the licensing agreement, and infringed j2's patents. (*See* Dkt. 1.) This Court dismissed the action for improper service. (Dkt. 32.) On April 15, 2016, Plaintiffs filed an Amended Complaint with leave from the court. (Dkt. 43.) This Complaint reasserted the claims against Fani, Fax87, and MJF, but also added claims for conspiracy, fraud, patent infringement, and unfair competition against Thong and other individual defendants. (*See e.g.*, FASC ¶¶ 16, 125, 126, 129, 252, and 257 (detailing allegations against Thong specifically).)

On May 11, 2016, Thong moved to dismiss the suit against him on the basis of improper service and lack of personal jurisdiction. (Dkt. 66). The court ruled that service was proper but deferred ruling on the personal jurisdiction issue pending a period of jurisdictional discovery. (Dkt. 103 at 20–24.) While conducting jurisdictional discovery, Plaintiffs issued a notice of deposition to Thong. (Decl. Guy Ruttenberg, Ex. 1 (Thong Depo.) 25:4-11.) Although the deposition was initially noticed to take place in Denver, Colorado, it ultimately took place in San Francisco, California at Thong's request. (*Id.* at 26:20-27:8.) At the conclusion of the deposition, which took place on October 21, 2016, counsel for Plaintiffs attempted to "re-serve" Thong with a summons and Amended Complaint. (Dkt. 117 at ¶ 4.)

Pursuant to the purported "re-service," Plaintiffs attempted to file an Application for Entry of Default against Thong, arguing that he had failed to timely respond to both the initial service in June and the re-service in October. (Dkt. 170.) The Clerk of the Court issued a deficiency notice. (Dkt. 171.) After that dispute, the court set a briefing schedule

for the renewed motion to dismiss. (Dkt. 186.) Pursuant to that briefing schedule, Thong has timely renewed the motion to dismiss. (Dkt. 202.)

**B. Factual Background**

Defendant Thong is a resident of Colorado who has never resided in California nor maintained an office or place of business in California. (Dkt. 68 ¶ 2.) For the past seven years, Thong has been a full-time employee for a software company called FaxCore. (*Id.* ¶ 5; Thong Depo. 22:6-13.) FaxCore is located in Parker, Colorado and its primary business is selling software that can be installed on a server to allow a business to send or receive faxes. (Thong Depo. 34:14-35:19.) FaxCore is affiliated with a Malaysian company called FaxCore Asia, which develops the software that FaxCore sells. (*Id.* at 35:20-25.) Thong is a partial owner of FaxCore Asia. (*Id.* 36:12-16.)

In late 2011 or early 2012, Farjad Fani reached out to FaxCore about using its software on the fax87.com website. (*Id.* 31:4-33:10; 60:2-19.) Thong was brought into the conversation to explain technical aspects of the FaxCore software. (*Id.*) Thong was then tasked by his supervisor to install and configure the FaxCore software on a server provided by Fani. (*Id.* 31:4-15.) Subsequent to this work, Fani reached out to Thong in January 2012 to customize the software solution that Thong had installed. (*Id.* at 31:4-22.) After receiving approval from his supervisor, Thong performed this work an independent basis for Fani. (*Id.*) Thong also installed the FaxCore software in the myphonefax.com companies. (*Id.* at 177:6-14.)

Initially, Thong performed work for Fani on an ad-hoc basis but later received a regular monthly payment. (*Id.* 186:19-23; 274:25-275:5.) The work performed by Thong involved servicing and updating the interface he developed, providing integration of the website processing vendors, and managing data files on the server that hosts the websites. (Mauch Decl. ¶ 3, Ex. A; Ruttenberg Decl., Ex. 19.) As part of his work, Thong was authorized to hire a support team to assist him. (Thong Depo. 111:19-25.) These workers were hired in Malaysia. According to Thong, he had trouble getting people to work for him without a title so he held himself out as the "CTO" or "Chief Technology

Officer" in order to establish "credibility." (*Id.* 161:23-162:8.) Defendants note that, in addition holding himself out as CTO, internal communications between Thong and Fani reveal that Fani called Thong a "manager" as early as 2013 (Ruttenberg Decl., Ex. 5) and referred to him as a CTO by 2015 (Ruttenberg Decl., Ex. 2.) Thong notes, however, that he does not have any ownership interest in the websites at issue or the entities that have owned them. (Thong Decl. ¶ 4.)

Although the parties dispute Thong's title, there is substantial agreement about his activities for the various Defendant companies. Thong performed services for Fax87, OnlineFaxes, and other domain names that OneVoix directed him to work on, including solidfax, faxvision, resellfax, and myphonefax. (Thong Depo. 40:20-44:24; Ruttenberg Decl., Ex. 19.) Communications from 2014 between Thong and Fani show that Thong was responsible for issuing "weekly engineering updates." (Thong Depo. 249:1-15; Ruttenberg Decl., Ex. 9.) Thong also worked with Fani to create "milestone plans" for the "Fax Enterprise." (Ruttenberg Decl., Ex. 7.). In March 2015, Thong was directed by Fani to "take the lead on the mobile site" for OnlineFaxes. (*Id.*, Ex. 10.)

The parties dispute the extent to which Thong directed his specific activities towards California. (*Compare* Mot. 8-9 *with* Opp'n 4-5.) Although Thong denies having any specific knowledge of customers in California, he acknowledges understanding that the websites in question were accessible across the United States and had customers across the nation, which "most likely" included California. (Thong Depo. 162:22-163:6.) Mr. Thong also concedes that one feature of the websites he set up was enabling customers to select direct local numbers for managing their online fax accounts, which included allowing customers to select local California area codes. (*Id.* 247:7-248:14.)

The parties agree that the Thong's technical activities were conducted in Colorado, where he lives and where FaxCore is located, Germany, where the servers are located, or Malaysia, where the other developers are located. (*See id.* at 22:2-13, 111:19-25, 188:1-189:6.) Plaintiffs have submitted evidence, however, that Thong has traveled to California

4

for conferences and training sessions, including sessions paid for by OneVoix. (*Id.* 163:24-164:25.)

**II. LEGAL STANDARD**

Federal Rule of Civil Procedure 12(b)(2) provides that a court may dismiss a suit for lack of personal jurisdiction. The plaintiff has the burden of establishing that jurisdiction exists, but need only make "a prima facie showing of jurisdictional facts to withstand the motion to dismiss." *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1154 (9th Cir. 2006). "Although the plaintiff cannot simply rest on the bare allegations of its complaint, uncontroverted allegations in the complaint must be taken as true." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 797 (9th Cir. 2004) (internal quotations and citation omitted). Conflicts between parties over statements contained in affidavits must be resolved in the plaintiff's favor. *Id.*

**III. DISCUSSION**

District courts have the power to exercise personal jurisdiction to the extent authorized by the law of the state in which they sit. Fed. R. Civ. P. 4(k)(1)(A); *Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1320 (9th Cir. 1998). Because California's long-arm statute authorizes personal jurisdiction coextensive with the Due Process Clause of the United States Constitution, *see* Cal. Code Civ. Proc. § 410.10, this Court may exercise personal jurisdiction over a nonresident defendant when that defendant has "at least 'minimum contacts' with the relevant forum such that the exercise of jurisdiction 'does not offend traditional notions of fair play and substantial justice.'" *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 801 (9th Cir. 2004) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). The defendant's contacts with the forum must be of such a quality and nature that the defendants could reasonably expect "being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980).

Personal jurisdiction may be either general or specific. *See Schwarzenegger*, 374 F.3d at 801. In this case, Plaintiffs only contend that this Court has specific jurisdiction over Defendants. (Dkt. 78 at 17.)

The Ninth Circuit analyzes specific jurisdiction according to a three-prong test:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
>
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
>
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Id*. at 802. "If the plaintiff succeeds in satisfying both of the first two prongs, the burden then shifts to the defendant to 'present a compelling case' that the exercise of jurisdiction would not be reasonable." *Id*. at 802 (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 452, 476-78 (1985)).

## A. First Prong: Purposeful Availment or Direction

To satisfy the first prong of the specific jurisdiction inquiry, courts examine whether a defendant "either purposefully availed itself of the privilege of conducting activities in [the forum state], or purposefully directed its activities toward [the forum state]." *Schwarzenegger*, 374 F.3d at 802. Different tests are applied depending on whether the case is based on contract or tort, with "availment" generally used for contracts and "direction" generally used for torts. *Id.* Given that the primary allegations against Thong sound in tort and that the parties' primarily focus on purposeful direction, the court shall focus its analysis on that element.

"A showing that a defendant purposefully directed his conduct toward a forum state . . . usually consists of evidence of the defendant's actions outside the forum state that are directed at the forum, such as the distribution in the forum state of goods originating elsewhere"; this includes situations where activities are directed at residents of the forum even if there are no physical contacts with the forum. *Id.* at 803; *see also World-Wide Volkswagen*, 444 U.S. at 297-98 ("The forum State does not exceed its powers under the Due Process Clause if it asserts personal jurisdiction over a corporation that

6

delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum State.").

The Ninth Circuit evaluates purposeful direction using a three-part "effects test" taken from the Supreme Court's decision in *Calder v. Jones*, 465 U.S. 783 (1984). *See Schwarzenegger*, 374 F.3d at 803. "The effects test is satisfied if (1) the defendant committed an intentional act; (2) the act was expressly aimed at the forum state; and (3) the act caused harm that the defendant knew was likely to be suffered in the forum state." *Love v. Associated Newspapers, Ltd.*, 611 F.3d 601, 609 (9th Cir. 2010)

Thong's threshold challenge to the assertion of personal jurisdiction is that his activities do not constitute "intentional acts" because of the "corporate shield" or "fiduciary shield" doctrine. (Mot. 11-12.) Under the "fiduciary shield" doctrine, a court cannot exercise personal jurisdiction over a non-resident corporate officer of a corporation, even if the court has jurisdiction over the corporation, if the officer's activities were performed solely in his corporate or employment capacity. *See Calder v. Jones*, 465 U.S. 783, 790 (1984); *Davis v. Metro Productions, Inc.*, 885 F.2d 515, 520 (9th Cir. 1989); *Forsythe v. Overmyer*, 576 F.2d 779, 783 (9th Cir. 1978). The doctrine acts to shield an individual from being haled into court merely due to that person's association with a corporation that has caused injury in the forum state. Instead, a plaintiff bringing a claim against an individual officer must prove that the court has an independent basis to exercise jurisdiction over the officer. *Davis*, 885 F.2d at 520. Thus, a court cannot find purposeful availment exists unless the plaintiff establishes that: (1) the corporation is the agent or alter ego of the individual; or (2) the individual had control of, and directly participated in, the alleged activities. *Wolf Designs, Inc. v. DHR Co.*, 322 F.Supp.2d 1065, 1072 (C.D. Cal. 2004). In the latter case, the primary inquiry is whether the individual was a "primary participant" or "guiding spirit" in the alleged wrongdoing directed at the forum state. *Id*. (finding purposeful availment when the President and sole owner of a company had "final say" with respect to the company's policies); *see also Advanced Skin and Hair, Inc. v. Bancroft*, 858 F.Supp.2d 1084, 1090 (C.D. Cal. 2012) (finding purposeful

7

availment where defendant, the founder and CEO of a company, did not explicitly deny that she directed the sales, manufacturing, marketing, advertising, and distribution of the alleged infringing products); *Allstar Marketing Group, LLC v. Your Store Online, LLC*, 666 F.Supp.2d 1109, 1120 (C.D. Cal. 2009) (finding purposeful availment where the two managing members and only employees of a company did not offer evidence to rebut plaintiffs' allegations that the defendants participated in and encouraged the alleged activities).

Thong's primary argument on the "corporate shield" issue is that Plaintiffs have not shown that Thong was a "guiding spirit" or primary participant in the alleged torts. (Mot. 14-15.) (Mot. 11-12.) In particular, Thong emphasizes that his alleged activities were all conducted in the course of his work as an employee for FaxCore and, later, as a contractor for MPF and OneVoix. Thus, Thong argues that his acts are not "intentional acts" for jurisdictional purposes and cannot be the basis for holding him personally liable in this action. (*Id.*) Thong's emphasis on his role as an employee, however, misunderstands the way the shield functions. The premise of the shield is that "mere knowledge of tortious conduct by the corporation is not enough to hold a director or officer liable for the torts of the corporation absent other 'unreasonable participation' in the unlawful conduct by the individual." *Wolf Designs*, 322 F. Supp. 2d at 1072 (C.D. Cal. 2004) (citing *PMC, Inc. v. Kadisha*, 78 Cal. App. 4th 1368, 1389 (2d Dist. 2000)). Thus, the operative question is not whether Thong is properly classified as an employee, an officer, or something else altogether. Instead, it is whether Thong directly participated in, and had adequate control of, the torts alleged against him in the Complaint: promissory fraud (Count 3), patent infringement (Count 4, 5, 6), and unfair competition (Count 9). (Dkt. 43.)

Having reviewed the parties' evidence, and resolving conflicting evidence in favor of the Plaintiffs, as the court must, the court finds that Thong cannot invoke the protection of corporate shield doctrine. As an initial matter, Plaintiffs have submitted evidence that Thong held himself out as the Chief Technology Officer for several of the

8

allegedly infringing companies. (*See* Thong Depo. 161:23-162:8.) Thong responds that this title was self-designated and did not comply with the requirements of relevant state corporations law. As noted above, however, the relevant inquiry is not Thong's official title or whether that title was formalized under relevant state law but whether Thong's role allowed him to have control of, and directly participate in, the allegedly tortious activities. The evidence submitted by Plaintiffs indicates that Thong had a managerial role and was empowered to hire a team of employee to build and maintain the websites at issue in this case. (Thong Depo. 162:9-163:6.) Moreover, Plaintiffs have submitted evidence that, even if the CTO role was self-designated, Fani recognized Thong as a manager of the company on multiple occasions. (*See* Ruttenberg Decl., Exs. 2, 5.) Likewise, Thong reinforced the view that he would take a leading role in designing the allegedly infringing websites when he told Fani about the "dream team" he had hired and stated that "with them I know we can build great products together." (*Id.* Ex. 18.)

Of course, as the corporate shield doctrine recognizes, not every corporate officer is liable for his company's torts. Thong, however, had the role of Chief Technology Officer, or at a minimum head technologist, in a company accused of engaging in tortious activity through its websites. As noted above, the primary claims against Thong pertain to operating a website that allegedly infringes on j2's patents for online fax services and running a website that unfairly competes with j2's business. These are activities directly under the purview of the head technological officer. Moreover, by Thong's own acknowledgement, he had primary responsibility for creating, operating, and maintaining the accused websites. (Thong Depo. 40:20-44:24, 249:1-15; Ruttenberg Decl., Exs. 7, 9, 10, & 19.) Specifically, he stated that he installed, serviced, and updated the software that runs on several of the infringing websites, produced weekly engineering updates, and had a leading role in directing his team to manage other technical operations. (Thong Depo. 248:21-249:15.) Moreover, Plaintiffs have submitted evidence suggesting that Thong knew there was a possibility he was engaging in fraudulent conduct. Specifically, Plaintiffs note that Thong was aware Fax87 had

9

previously been sued and Plaintiffs provided email communication from Fani to Thong directing Thong to deny a relationship between Fax87 and OnlineFaxes so as to obscure who owned which company. (Ruttenberg Decl., Ex. 6; Thong Depo. 235:12-16.) Plaintiffs allege that Thong's activities, designing multiple websites and obscuring who owns what operation, were done in furtherance of the overall fraud in this case. Thong offers no response on this point other than his general contention that the "overall direction came from above him." Considering Thong's role as a whole, including the fact that Thong is the leading technological officer of a company accused of engaging in technological torts, and given that the court must resolve conflicting claims in favor of Plaintiff, the court finds that Thong engaged in "intentional acts" for the purposes of asserting personal jurisdiction and concludes that the corporate shield doctrine does not preclude liability.

Even if his activities count as "intentional acts," Thong also contends that operating and maintaining the allegedly infringing websites does not satisfy the effects test because his actions were not expressly aimed at California. Thong notes that there is no evidence he personally sold fax services in California and argues that his only contact with the state was his general understanding that websites had customers across the county, which "most likely" included consumers in California. (Mot. 17.) Plaintiffs respond that maintaining an interactive website which is accessible in California and has customers from California satisfies the express aiming factor and supports a finding of personal jurisdiction (Opp'n 12 (citing Ruttenberg Decl., Ex. 19 [Thong's Supp. Response to RFA] at No. 3).)

Two independent reasons demonstrate that Thong's activities were expressly aimed at the forum state. First, as a general matter, the Ninth Circuit has held that "the 'express aiming' requirement . . . is satisfied when the defendant is alleged to have engaged in wrongful conduct targeted at a plaintiff whom the defendant knows to be a resident of the forum state." *Dole Food Co. v. Watts*, 303 F.3d 1104, 1111 (9th Cir. 2002) (internal quotations and citations omitted). Particularly relevant here, the Ninth Circuit has further explained that the "'expressly aimed' prong of the purposeful direction test

10

can be met where a plaintiff alleges that the defendant individually targeted him by misusing his intellectual property on the defendant's website for the purpose of competing with the plaintiff in the forum." *Love v. Associated Newspapers, Ltd.*, 611 F.3d 601, 609 n. 4. This is precisely what Plaintiffs have alleged here. Specifically, Plaintiffs Amended Complaint includes allegations that Thong was an active participant in building fax services that infringed on j2's patents and in concealing the identities of those individuals and entities that were operating the infringing fax services. (*See, e.g.*, FAC ¶ 242.) This alone can satisfy the express aiming prong. *See, e.g., CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066, 1077–78 (9th Cir. 2011) (holding that the express aiming prong is met where a website operator harmed an in-forum plaintiff).

Thong's activities also satisfy the express aiming prong under the Ninth Circuit's test for analyzing when websites have sufficient contacts in the forum state. "In the internet context, the Ninth Circuit utilizes a sliding scale analysis under which 'passive' websites do not create sufficient contacts to establish purposeful availment, whereas interactive websites may create sufficient contacts, depending on how interactive the website is." *Jeske v. Fenmore*, No. 08–1015 DOC (MLGx), 2008 WL 5101808, *4 (C.D. Cal. Dec. 1, 2008) (citing *Boschetto v. Hansing*, 539 F.3d 1011, 1018 (9th Cir. 2008)). As one district court succinctly explained:

> At one end of the scale are 'passive' websites which merely display information, such as an advertisement. Personal jurisdiction is not appropriate when a website is merely . . . passive. At the other end of the scale are 'interactive' websites which function for commercial purposes and where users exchange information. Personal jurisdiction is appropriate when an entity is conducting business over the internet. Where a website is somewhere between the two extremes, the likelihood that personal jurisdiction can be constitutionally exercised is directly proportionate to the nature and quality of commercial activity that an entity conducts over the internet.

*American Auto. Ass'n, Inc. v. Darba Enterprises Inc.*, No. C 09–510 SI, 2009 WL 1066506, *4 (N.D. Cal. Apr. 21, 2009) (citing *Cybersell, Inc. v. Cybersell, Inc.*, 130 F.3d 414, 418 (9th Cir. 1997) (internal quotations and citations omitted).

Applying this standard, Plaintiffs have alleged and submitted evidence that the websites designed by Thong are adequately interactive to support an exercise of personal

jurisdiction. The websites in questions are designed to enable users in California to exchange information and purchase allegedly infringing fax services directly from defendants. Thong argues that, although his websites have an interactive element, they are distinguishable from the ordinary case where courts find that a website creates sufficient contacts with a forum state for at least two reasons. First, Thong notes that other cases involve websites that marketed physical products that were eventually delivered to the forum state and second those cases typically addressed the liability of the "owner/operators of the websites." (Reply 8-9.) Neither of these distinctions precludes a finding of jurisdiction over Thong in this case. As to the former, the plain language of the Ninth Circuit's sliding scale standard does not distinguish interactive websites that market tangible products from interactive websites that market intangible services. Moreover, there is at least a colorable claim that the product of "a mechanism for delivering faxes" is actually being physically provided on computers in California. As to the latter, Plaintiffs have submitted evidence that Thong was a primary operator of these websites even if he did not necessarily have an ownership stake in any of the relevant companies.

On the final factor of whether harm was knowingly caused in California, Thong argues that, because he did not expressly aim his activities at California, he could not have knowingly caused harm in the forum state. (Mot. 18-19.) However, given the court's determination that Thong's actions were expressly aimed at California, this contention is unavailing. Thong also suggests that the Ninth Circuit requires "something more than just a foreseeable effect to conclude that personal jurisdiction is proper." *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1158 (9th Cir. 2006). However, Plaintiffs have submitted evidence that Thong did not only establish a website accessible from California but actually set up an interface the enables users to select local California numbers to send and receive faxes. (Mot. 13 (citing Thong Depo. 319:23-321:14).) While Thong is correct that the ability to select a California number does not mean that the user must be in California, Plaintiffs have adequately alleged that this facilitates use of the

software in California. In light of the foregoing, the court finds that Plaintiffs have shown that Thong's actions meet the purposeful direction prong of the test for personal jurisdiction.

**B. Second Prong: Relation to Forum**

"The second requirement for specific jurisdiction is that the contacts constituting purposeful availment must be the ones that give rise to the current suit. We measure this requirement in terms of 'but for' causation." *Bancroft*, 223 F.3d at 1088.

On this prong, Thong repeats his assertion that he did not engage in any individual activities directed at the forum state aside from what he did in the course of his employment. However, as discussed above, the court finds that Plaintiffs have adequately shown that Thong was a primary participant in creating and maintaining the infringing websites that are at issue in this action. But for Thong's activities, there would be no websites where users in California could purchase allegedly infringing online faxing services. Even if his alleged actions can be tied to the patent infringement, Thong separately contends that they bear no connection to the fraud claims also at issue in this action. However, Plaintiffs have submitted evidence the Thong conspired with Fani to obscure the true ownership of the websites at issue, thus potentially making him a participant to the fraud. (*See* Ruttenberg Decl., Ex. 6.)

**C. Third Prong: Reasonableness of Jurisdiction**

To determine reasonableness, courts look to seven fairness factors from the Supreme Court's *Burger King* decision:

> (1) the extent of a defendant's purposeful interjection [into the forum]; (2) the burden on the defendant in defending in the forum; (3) the extent of conflict with the sovereignty of the defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum. No one factor is dispositive; a court must balance all seven.

*Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1323 (9th Cir. 1998) (citing *Burger King*, 471 U.S. at 476-77.) On this factor, the burden is on the defendant to "present a compelling case that the exercise of jurisdiction would not be reasonable." *Id*. at 802.

13

Without citation to any evidence, Thong asserts that defending the lawsuit in California would be "extremely burdensome for him in terms of time and expense as he reside in Colorado." (Mot. 21.) Thong also notes that California is not an efficient forum for resolution because the specific conduct at issue took place outside of the jurisdiction and the evidence is presumably located outside the jurisdiction (*Id.*) These conclusory allegations are inadequate to defeat an otherwise valid exercise of personal jurisdiction. Indeed, Thong's contention that litigating this action in California is an inconvenience is undermined by the fact that Thong requested his jurisdictional discovery deposition, originally noticed to take place in Colorado, be held in California for his own convenience. (Thong Depo. at 28:1-7.) Although the parties do not address the remaining factors, they also weigh in favor of exercise personal jurisdiction. First, Thong admits that he was aware of a prior lawsuit between Plaintiffs and MJF. (Dkt. 68 at ¶ 7.) Moreover, California has an interest in ensuring that j2, a California resident, can enforce its alleged patent rights. Indeed, with or without Thong, this case will continue to be litigated in California and the most efficient course would be to resolve his claims in this single action.

**IV. CONCLUSION**

For the reasons stated above, the court DENIES Defendant Steven Thong's Renewed Motion to Dismiss for Lack of Personal Jurisdiction.

**IT IS SO ORDERED.**

Dated: April 27, 2017

_____
DEAN D. PREGERSON
UNITED STATES DISTRICT JUDGE